Andrew Schwartz (State Bar No. 100210)
Frank Sommers (State Bar No. 109012)
**SOMMERS & SCHWARTZ LLP**
550 California Street
Sacramento Tower, Suite 700
San Francisco, CA 94104
Telephone: (415) 955-0925
Facsimile: (415) 955-0927

Attorneys for Plaintiff
NACIO SYSTEMS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NACIO SYSTEMS, INC. <br><br> Plaintiff, <br><br> vs. <br><br> HERBERT GOTTLIEB and SWIdent, INC., a California LLC <br><br> Defendants. | Case No.  C 07 3481 PJH <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF:** <br><br> **1) PLAINTIFF'S APPLICATION WITHOUT NOTICE FOR TEMPORARY RESTRAINING ORDER RE PRESERVING EVIDENCE ; AND** <br><br> **2) PLAINTIFF'S SECOND APPLICATION FOR TEMPORARY RESTRAINING ORDER RE COPYRIGHT INFRINGEMENT AND SHORTENING TIME FOR LIMITED DISCOVERY** |

1 | •                                                              TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

II. RELIEF REQUESTED WITHOUT NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

III. GROUNDS FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

IV. RELIEF REQUESTED AFTER NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

V. SUPPORTING MATERIALS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

VI. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
          1. Nacio's GASP Audit Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
          2. Nacio and Gottlieb's Attest Systems . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
          3. Gottlieb's Transfer of SID Information to PS'Soft . . . . . . . . . . . . . . . . . . . . . . -8-
          4. GASP's Value to SWIdent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-
          5. Gottlieb's Theft of Nacio Trade Secrets & Destruction of Evidence . . . . . . . . . . -10-

VII. ARGUMENT - **EX PARTE APPLICATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
     A.   *Ex Parte* Relief Is Justified Pursuant to Rule 65(b) and the Real Danger of
          Destruction of Evidence If Defendants Receive Notice. . . . . . . . . . . . . . . . . . -11-
     B.   No Prejudice to Defendants From Relief Sought . . . . . . . . . . . . . . . . . . . . . . . -12-
     C.   **A Preservation Order Is Necessary To Prevent Destruction Of Evidence**
          **Discoverable Under Fed. R. Civ. P. 34(a)** . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
          1.   Preservation Orders are Properly Issued as to Electronic Evidence That is
               Easily Destroyed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
          2.   Electronic Evidence and Information Stored In Computer Format Is
               Discoverable Under Fed. R. Civ. P. 34(a) . . . . . . . . . . . . . . . . . . . . . . -14-
          3.   The Preservation Order Should Encompass All Relevant Evidence
               Including Specified Items . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
     D.   Nacio Has a Reasonable Probability of Success on the Merits . . . . . . . . . . . . -15-

VIII. LEGAL ARGUMENT II - COPYRIGHT INFRINGEMENT . . . . . . . . . . . . . . . . . . . -15-
     A.   The Time for the Taking of Depositions and the Production of Documents Must
          Be Shortened to Protect Nacio Rights Against Further infringement. . . . . . . . -16-
     B.   TRO Should Issue To Enjoin Gottlieb and SWIdent From Continuing To Infringe
          On Nacio's Copyrights in GASP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
          1.   Ninth Circuit Standard for TRO and Preliminary Injunctive Relief . . -17-
          2.   Nacio Systems Has Shown That Its Copyright Infringement Claims Have
               A Reasonable Likelihood of Success on the Merits Against Gottlieb and
               SWIdent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
     C.   TRO Should Issue To Enjoin Gottlieb and SWIdent From Continuing To
          Misappropriate Nacio Systems's Trade Secrets . . . . . . . . . . . . . . . . . . . . . . . -19-
          1.   Nacio Systems Has Shown Probable Success On The Merits That Gottlieb
               and SWIdent Have Misappropriated Nacio Systems's Trade Secrets and
               that Gottlieb Has Breached His Fiduciary Duty . . . . . . . . . . . . . . . . . -19-
     D.   **Nacio Systems Has Shown Probable Success On The Merits That Gottlieb**

**and SWIdent Have Engaged In Unfair Competition, And Threaten To Do So In the Future.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

E.    Nacio Systems Has Shown Probable Success On The Merits That Gottlieb and SWIdent Is Likely to Engage In Multiple Thefts Of Nacio Systems's Corporate Opportunities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

F.    Nacio Systems Has Shown Probable Success On The Merits That Gottlieb and SWIdent Have Already Engaged In Conversion and Threaten To Do So In The Future. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

G .    Nacio Systems Will Suffer Irreparable Harm Unless The Court Orders Immediate Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

H.    The Balance of Hardships Weighs Heavily In Favor Of Granting Injunctive Relief to Nacio Systems . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

**TABLE OF AUTHORITIES**

*Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1065 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . -23-

*Kelegian v. Mgrdichian*, 33 Cal. App. 4th 982, 988 (1995) . . . . . . . . . . . . . . . . . . . . . . . -22-

*Aba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 17 (1991 . . . . . . . . . . . . . . . . . . . . . . . -24-

*Air Products & Chemicals, Inc. V. Johnson*, 296 PA Super 405, 415, 442 A.2d 1114, 1119 (PA Super 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

*American Paper & Packaging Products, Inc. v. Afton Kirgan*, 183 Cal.App.3d 1318, 1322-23 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-, -21-

*Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1995 U.S. Dist. LEXIS 16355, at 4 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Bernhardt v. Los Angeles County*, 339 F.3d 920, 934 (9th Cir. 2003) . . . . . . . . . . . . . . . . . -18-

*Cadence Design Systems, Inc. V. Avant! Corp.*, 29 Cal. 4th 215, 221 (2002) . . . . . . . . . . . -20-

*Capricorn Power Co., Inc.*, 220 F.R.D. at 432-433 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

*Crown Life In. Co. v. Craig*, 995 F.2d 1376, 1382-83 (7th Cir. 1993) . . . . . . . . . . . . . . . -14-

*Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1397, n.1 (9th Cir. 1997) . . . . . . . -17-

*Farmers Ins. Exch. v. Sup. Ct.*, 2 Cal. 4th 377, 383 (1992 . . . . . . . . . . . . . . . . . . . . . . . . . -21-

*First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993) . . . -11--13-

*GAB Bus. Serv., Inc. v. Lindsey & Newsom Claim Serv., Inc.*, 83 Cal.App. 4th 409, 417 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

*Gladstone v. Hillel*, 203 Cal. App. 3d 977, 988-89 (1988) . . . . . . . . . . . . . . . . . . . . . . . -23-

*Heller v. New York*, 413 U.S. 483, 492 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-

*Immigrant Assistance Project of Los Angeles County v. INS*, 306 F.3d 842, 873 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*Johnson v. Cal. State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995) . . . . . -15-, -18-

*Lamb-Weston Inc. v. McCain Foods Ltd*, 941 F.2d 970, 974 (9th Cir. 1991) . . . . . . . . . . . -24-

*Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514, 1520-21 (1997) . . . . . . . . . . . . . . . . . . . -20-, -21-

*Optinrealbig.com, LLC v. Ironport Sys.*, 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004) . . -18-

*Oracle USA v. Graphnet Inc.,* 2007 U.S. Dist. LEXIS 13147, *9 - * 12 (N. D. Cal., 2007)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*People v. EWAP, Inc.,* 106 Cal. App. 3d 315, 319 (1980 . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

*Playboy Enter., Inc. V. Welles,* 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999) . . . . . . . . . . -14-

*Pueblo of Laguna v. United States,* 60 Fed. Cl. at 138 n. 8 . . . . . . . . . . . . . . . . . . . . . . . . -13-

*ReadyLinkHealthcare v. Cotton,* 126 Cal. App. 4th 1006, 1023 (2005) . . . . . . . . . . . . . . . -24-

*Shering Corp. v. First Databank Inc.,* 2007 U.S. Dist. LEIS 29433, *11 - *12 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*Stanley v. Univ. of Southern California,* 13 F.3d 1313, 1326 (9th Cir. 1994) . . . . . . . . . . . -16-

*Stokes v. Dole Nut Co.,* 41 Cal. App. 4th 285 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

*Stuhlbarg International Sales Company, Inc. v. Brush,* 240 F.3d 832, 839-840 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Triad Systems Corp. v. Southeastern Express Co.,* 64 F. Ed 1330, 1335 (9th Cir. 1995) . . -18-

# I. INTRODUCTION

Defendant Herb Gottlieb is the former founder of Attest Systems who bankrupted the company and sold its assets to Plaintiff Nacio Systems, Inc. ("Nacio"). Mr. Gottlieb has stolen software, software enabling keys and customer lists from Nacio, tried to destroy evidence of his theft, and has transferred portions of the software to a competitor of Nacio's. Defendant Gottlieb has subsequently founded defendant SWIdent LLC, a competing business to which the stolen information would be critically important. In addition, Gottlieb, because of his contacts with Nacio resellers, could be distributing Nacio's intellectual property, to Nacio's irreparable harm.

# II. RELIEF REQUESTED WITHOUT NOTICE

Nacio accordingly requests that this Court order, without notice to defendants, the immediate copying of all of defendants' computer hard drives to prevent the destruction of evidence. In addition, Plaintiff requests that the Court issue an evidence preservation order covering both defendants and third parties, particularly defendants' Internet Service Providers, which will have copies of emails. This order is requested whether or not the Court determines to issue the copying order.

Finally, Plaintiff's request that the Court set a hearing date for Plaintiff's request for a further temporary restraining order enjoining the use of plaintiff's trade secrets or copyrighted materials, and permitting expedited discovery on the issue of the transmission of such material to third parties. In the event that the copying order is not issued *ex parte*, the Court is requested to order that it shall be argued at the hearing ordered by the Court.

# III.  GROUNDS FOR RELIEF

Plaintiff's accompanying declarations demonstrate that Defendant Herb Gottlieb, who is the founder of Defendant SWIdent, has already tried to conceal evidence of his improper removal of trade secrets and computer programs from plaintiff, where he was formerly employed. Allowing defendant any notice of the proposed order would allow him to delete any trace from his computers of third parties to whom he has transferred it.  Plaintiff is willing to have the copies held by the third party data preservation service pending further review by the Court, after notice to defendants, of the proper scope of discovery.

# IV.  RELIEF REQUESTED AFTER NOTICE

Plaintiff will serve the complaint and moving papers with the order regarding the copying of computer drives, if one is granted. Plaintiff therefore requests that the Court set a hearing for a second temporary restraining order, at which plaintiff will request the following relief:

1) a temporary restraining order prohibiting defendants from using, in whole or in part, any copyrighted material or trade secrets taken from plaintiffs, or from transferring any such material to third parties;

2) a temporary restraining order requiring defendants to submit to limited discovery aimed at identifying the extent to which they have transferred Plaintiff's trade secrets or copyrighted material to third parties, to permit plaintiff to enjoin such parties from use of the material; and

3) an order that defendants disclose the identity of the Internet Service Providers(s) ("ISPs") through which they have email accounts, along with such information as to permit those ISPs to be served with subpoenas for emails covered by the limited discovery order.

4) the copying order, if not already issued in connection with the *ex parte* application.

## V.  SUPPORTING MATERIALS

This Memorandum is based on the facts set out in the following declarations:

1 Declaration of Carey Daly, Nacio Senior Vice President ("*Daly Dec.*");

2.  Declaration of Murray Goldenberg, Nacio CFO ("*Goldenberg Dec*")

3. Declaration of Mikol Westling, Nacio Director of Operations ("*Westling Dec.*");

4. Declaration of Betz Burkart, Nacio GASP Project Lead Engineer ("*Burkart Dec.*");

5. Declaration of Dominic Finn, Nacio Facilities Engineer ("*Finn Dec.*");

6.  Declaration of Peter Garza, Evident Data, Inc. (*"Garza Dec."*)

7. Declaration of Frank Sommers, Nacio counsel("*Sommers Dec.*");

## VI.  FACTS

Defendant Herb Gottlieb is the founder of Attest Systems, Inc, the developer of the GASP audit software in issue here. Gottlieb sold the Attest name and the company's assets, including GASP, to Nacio Systems, Inc. (*Goldenberg Dec.,* ¶ 2*)* Nacio has duly registered the copyrights to GASP and owns all intellectual property rights in the Software. (*Daly Dec.,* ¶ 10) When Attest sold its name and assets to Nacio, Gottlieb started working for Nacio, managing the GASP customer-related business taken on by Nacio.  (*Goldenberg Dec.,* ¶ 3*)*

Defendant SWIdent LLC ("SWIdent") is a company that Gottlieb started after leaving Nacio.  It lists as its corporate headquarters Gottlieb's home address, 10 Indian Trail Court, Novato, California. (*Sommers Dec.,* ¶ ).  It's website describes its business as identifying the unidentified programs that other audit software cannot. (*Burkart Dec.,* ¶ 12)  It requests customers to send it information about the programs on their networks to assist in the creation of a database to assist in such identification. (*Burkart Dec.,* ¶ 12)  The copies of Nacio's GASP software and its SID database would be directly relevant to both functions, and, particularly

1    given the evidence of Gottlieb's improper conduct identified below, Nacio is exceedingly

2    concerned that SWIdent is using the GASP software stolen by its founder, Mr. Gottlieb. (*Burkart*

3    *Dec.*, ¶ 10); (*Daly Dec.*, ¶18)

4                        **1. Nacio's GASP Audit Application**

5        GASP allows users to automatically scan their computer networks to determine if all the

6    programs found there are properly licensed. which incorporates the database it uses to assure

7    clients that the software systems they are using in their businesses are  properly licensed and does

8    not infringe on any third party's intellectual property rights. (*Burkart Dec.*, ¶ 3) Nacio has

9    copyrighted the most recent versions of GASP published, version 7.0, of its various component

10   parts.

11       GASP works by automatically reviewing a computer on network for copies of

12   'executables,' machine language programs that can be run by the system.  GASP checks these

13   executable files to determine whether they have been validly licensed by one of the sometimes

14   various publishers authorized to issue the software.  GASP can be used either by software issuers

15   searching for illegal copies, or by users concerned that no illegal copies are resident on their

16   networks.

17       GASP performs its function by comparing the executables to its SID.  Since executable

18   files contain only machine language strings of "1"s and "0"s, GASP's programmers have

19   developed a over 80,000 database records, each of which contains a unique string of characters

20   that GASP checks to identify 1) the program, 2) the version number, and 3) the issuer.  The SID

21   is one of the key parts of the intellectual property embodied in GASP, and has taken thousands of

22   hours or effort to create. (*Burkart Dec.*, ¶ 13)

23       GASP users have the opportunity to send the output field created by GASP to Nacio, so

24   that the 'unidentified' programs listed on the user's system can be researched an identified.

25

26

1    Nacio programmers such as declarant Betz Burkart examine the GASP audit field sent in to

2    determine whether new identification records need to be added to the SID. (*Burkart Dec.,* ¶¶ 3-5)

3    Customers can download new copies of the SID as part of their maintenance contract.

4    Customers can also send information about programs they have written to Nacio, which adds

5    them to the SID.  Each subsequent use fo the new SID therefore scans other computes to see if

6    bootleg copies fo the customers new software are appearing in the marketplace.

7    **2. Nacio and Gottlieb's Attest Systems**

8    GASP was developed by Attest Systems, Inc, of which Gottlieb was the founder.  When

9    Gottlieb ran short of funds, he sold the Attest name and assets to Nacio. (*Goldenberg Dec.,* ¶ 2*)*

10    He also joined Nacio to continue working with GASP. (*Goldenberg Dec.,* ¶ 3*)* In 2006, with

11    Nacio itself in dire financial straights, he left, contending he had been constructively terminated.

12    Nacio later learned, however, that immediately prior to his departure in March 2006,

13    Gottlieb had removed from Nacio's computer system the complete list of Nacio's customers and

14    international partners.  He also took with him the safe containing the GASP source code and

15    Registration Key Generator.(*Westling Dec.,* ¶3-4); (*Finn Dec*., ¶ 4) (*Goldenberg Dec.,* ¶ 9*)*.

16    Despite being asked to return the software and state that he had not used or transferred it to

17    otheers, he failed to do so. (*Goldenberg Dec.,* ¶ 9*)*

18    **3. Gottlieb's Transfer of SID Information to PS'Soft**

19    In early 2006 Nacio itself was experiencing severe cash flow and management problems.

20    One of the options being considerd was the sale of GASP and its SID to PS'Soft, a company

21    based n Utah that competed with Nacio in the software audit field.  Ps'Soft had been negotiating

22    with Nacio before Ms.  Gottlieb left.  Safter he left, Nacio learned that he had taken a consulting'

23    role with Ps'Soft.  Nacio's CFO Murray Goldenberg immediately called both Gottlieb and

24    Ps'Soft management and informed them that he considered this role an inappropriate conflict of

25

1    interest. (*Goldenberg Dec.,* ¶ 7-8)  Almost immediately after these calls, PS'Soft dropped its

2    pursuit of GASP, without giving any reason. (*Goldenberg Dec.,* ¶¶ 7-8)

3         After his departure in March 2006, Gottlieb contacted Betz Burkart, the GASP Project

4    Lead Engineer at Nacio, with whom he had also worked while running Attest. (*Burkart Dec.,* ¶ 6)

5    Ms Burkart worked on the creation of validation records for the SID.  This involved identifying

6    unique information in the machine-language executable files that allow an application to run on a

7    system, and tying those 'signatures' to legitimate issues of the programs. (*Burkart Dec.,* ¶¶ 3-4)

8    A particular verison of Word, for example, could be acquired directly from Microsoft, or as part

9    of a computer sold by another vendor.  Each version of Word would have a different identifying

10   record in the SID.  As of early 2006, the SID had approximately 70,000 records in it.

11        Mr.  Gottlieb informed Ms.  Burkart that he had lined up a job for her working with him

12   at PS'Soft, a large competitor of Nacio's in the area of audit software.  He said he had plane

13   tickets to Salt Lake City, where PS'Soft was headquartered, and would 'only' take $20 of the $50

14   per hour salary he had negotiated for her.  She declined. (*Burkart Dec.,* ¶ 6)

15        Later, in August 2006, Ms.  Burkart was invited to Gottlieb's house (Gottlieb also lives at

16   10 Indian Trail Court) by Gottlieb's wife.  While she was there he took her up to his study and

17   showed her several computer systems running spreadsheets with file information listed in

18   alphabetical groups. (*Burkart Dec.,* ¶¶ 7-8)  While Ms.  Burkart worked with Mr. Gottlieb at

19   Attest and Nacio, it was his practice to request that she export to Excel spreadsheets the SQL

20   database content that SID was stored in. (*Burkart Dec.,* ¶¶ 5, 7-8) Each spreadsheet had

21   information grouped in fields, with the database content for a given program-issuer record listed

22   below the field names for the record content. (*Burkart Dec.,* ¶ 7) Ms.  Betz recognized the field

23   names on the screens as being identical to the Nacio SID database content. (*Burkart Dec.,* ¶ 10)

24        Mr.  Gottlieb told her he wanted her to help him finish the process of updating and

25

26

1  upgrading PS'Soft's database. (*Burkart Dec.,* ¶ 8) He said that he had tried to use Nacio's South

2  American programming shop, BIT, S.A., on the work, but they had been unable to meet

3  PS'Soft's deadline. (*Burkart Dec.,* ¶ 9)  He cautioned her not to tell anyone at Nacio what he had

4  just said, as he 'would get in a lot of trouble' if Nacio knew what he was doing.   (*Burkart Dec.,* ¶

5  9)

6  ### 4. GASP's Value to SWIdent

7  Gottlieb has started SWIdent LLC, a company headquartered in his home in Novato.

8  SWIdent markets a service to identify the unidentified program files not recognized by audit

9  software. (*Burkart Dec.,* ¶ 12) SWIdent requires its customers to send in electronic files of the

10  unidentified programs, so that SWIdent con create a master database of such information. Both

11  tasks, the manual identification of the unidentified files, and the creation of a master database,

12  would be greatly benefitted by SWIdent using GASP. (*Burkart Dec.,* ¶ 12-13) For any audit

13  software output other than GASP, running GASP against the unidentified program files sent in

14  would reduce SWIdent's manual labor tremendously, by making use of the huge investment of

15  time and expertise continued in the 70,000 records in GASP when Gottlieb left.  (*Burkart Dec.,*

16  ¶13)

17  In addition, having the SID as the core of its new database allows SWIdent to avoid the

18  tremendous cost of creating the database by hand- picking out unique identifying information for

19  each possible combination of program, issue and version number. Either of these uses is

20  prohibited by Nacio's intellectual property rights in GASP and the SID that is part of it.

21

22  ### 5. Gottlieb's Theft of Nacio Trade Secrets & Destruction of Evidence

23  Over and above the GASp software, Gottlieb has also taken Nacio's customer and

24  international partner list. (*Daly Dec.,* ¶¶ 12-14; *Burkart Dec.,* ¶ 11) After becoming involved in

25

1   dealing with the aftermath of lawsuit filed by Mr. Gottlieb after his departure, Mr. Daly asked his

2   staff to investigate Mr. Gottlieb's company email files. They reported the files were gone. (*Daly*

3   *Dec.,* ¶ 12). Ms. Burkart also reported that she had discovered systems evidence that Mr Gottlieb

4   had packaged the customer list into a 'zip file,' a compressed format used to transport larger

5   files. (*Burkart Dec.,* ¶ 11) Based on his systems background, Mr. Daly knew that the Outlook

6   email client used by Nacio kept backup information in files with the extension ".pst" (*Daly Dec.,*

7   ¶ 13). He located the pst files for the system on which Mr Gottlieb's emails had been located, and

8   unpacked them. They revealed that several days before his departure, Mr. Gottlieb had emailed to

9   his home email address the customer list and all of his company email files, then deleted the

10  evidence of that transaction, as well as the email files themselves. (*Daly Dec.,* ¶14).

11

12              **VII.  ARGUMENT - EX PARTE APPLICATION**

13          The following section is in support of plaintiff's first Application for TRO re Evidence.

14  Section IV below is in support of plaintiff's second Application for TRO re Copyright

15  Infringement and Limited Discovery

16

17  **A.    *Ex Parte* Relief Is Justified Pursuant to Rule 65(b) and the Real Danger of
       Destruction of Evidence If Defendants Receive Notice.**

18          Nacio is aware of the heavy burden facing a litigant seeking ex parte restraining orders

19  without notice to other parties. Nacio Systems brings this *ex parte* application pursuant to Federal

20  Rules of Civil Procedure 65(b) and Local Rules 7-10 and 65-231.    Nacio Systems brings this

21  application in an *ex parte* proceeding in order to protect Nacio Systems from the real threat that

22  Gottlieb and SWIdent will disregard a court order and destroy or alter evidence prior to a hearing

23  on the matter. *First Technology Safety Systems, Inc.  v.  Depinet,* 11 F.3d 641, 647 (6th Cir.

24  1993) (holding that an *ex parte* order is appropriate where there is evidence that "defendants

25

26

1    would have disregarded a direct court order and disposed of the goods within the time it would

2    take for a hearing").

3    Plaintiff here has presented evidence that Gottlieb not only copied customer lists and

4    email contacts and sent them to himself just before his departure in March, 2006, but tried to

5    delete evidence of those acts from Nacio's computer system. (*Daly Dec.*, ¶ 14; *BurkartDec.*, ¶

6    11) The *First Technology* court stated that such evidence was key to support an *ex parte* request.

7    *First Technology Safety Systems, supra,* 11 F.3d at 651. The court pointed out that to merit *ex*

8    *parte* relief, the moving party had to show that, absent such relief, further action would be

9    fruitless. *Id.* Such a showing can be made here. To the extent that evidence of communications

10   and dissemination of trade secrets between defendants here and unknown third parties is lost, it

11   cannot be located elsewhere, sinc ethe identity of the recipient will remain unknown.

12   Nor is data recovery technology good enough to allow for the recreation of data if

13   defendants ignore a preservation order issued absent the right to copy the hard drives. Current

14   technology is reasonably good at establishing that deletions have occurred, although an

15   experienced technical team can rebuild hard drives to cover up such activity. (*Garza Dec.,* ¶ 7)

16   The content of the deleted information, however - the identities of the third parties, for example -

17   is much more likely to be lost, particularly if the individual intent on deleting the information has

18   more time to work. (*Garza Dec.,* ¶ 7)

19   **B.    No Prejudice to Defendants From Relief Sought**

20   There is no prejudice to defendants from the relief sought. Copying the hard drive of a

21   given PC takes between 1-2 hours, depending on the size of the hard drive. SWIdent is not

22   running an application that requires 'real time' contact with clients, as the identification of

23   unidentified executable files requires manual intervention before an update of SWIdent's version

24   of the SID can be performed. (*Burkart Dec.,* ¶¶ 4-5) The proposed copying will therefore not

25

1  disrupt SWIdent's customer service.

2        In addition, plaintiff is not seeking anything more than copying- no seizure of goods in

3  defendants' hands is requested, in comparison to the seizure of goods and business records

4  criticized by the court objected to in *First Technology*, *supra*, 11 F.3d at 652.

5        Here, plaintiff has engaged an experienced data retrieval firm to make "mirror image"

6  copies of the hard drives used by Defendants. Plaintiff has instructed the firm  to hold the results

7  without disclosing them to plaintiff or its counsel pending further order of the Court (or

8  stipulation of the parties) regarding examination. (*Garza Dec.,*  ¶ 6) Plaintiff believes that the

9  parties will be able to negotiate an agreed protocol for the review of the material on the disks. In

10  the event that such cannot be accomplished, the parties will move the Court of an appropriate

11  order regarding balancing the review with privacy rights. The instant order, however, assumes

12  only the copying and preservation, not disclosure to plaintiff or its counsel.

13

14  **C.     A Preservation Order Is Necessary To Prevent Destruction Of Evidence
            Discoverable Under Fed.  R.  Civ.  P.  34(a)**

15
        **1.     Preservation Orders are Properly Issued as to Electronic Evidence That is
16               Easily Destroyed.**

17        Courts have the inherent power to order relevant evidence preserved.  *Capricorn Power*

18  *Co.  Inc.  V.  Siemens Westinghouse Power.  Corp.,* 60 Fed.  Cl.  133, 135 (2004).  While Rule 34

19  is silent as to any procedure or standard related to the preservation of documents from likely

20  damage or destruction, orders to preserve such evidence have become widely used and stem from

21  a court's equitable power to control both case management and the discovery process.  *See*

22  *Capricorn Power Co., Inc.*, 220 F.R.D.  at 432-433, *quoting Pueblo of Laguna v.  United States*,

23  60 Fed.  Cl.  at 138 n.  8.

24

25

26

1     Preservation orders are increasingly routine where the matter at issues involves electronic

2     evidence because such evidence is easily altered or destroyed.  *Id.*  at 136, 138.  Ordinarily,

3     courts require a proponent to demonstrate that a substantial risk exists that relevant evidence will

4     be lost or destroyed in an order to preserve is not issued.  *Id.*  at 138.

5

6     **2.    Electronic Evidence and Information Stored In Computer Format Is Discoverable Under Fed.  R.  Civ.  P.  34(a)**

7     Electronic evidence is discoverable under Fed.  R.  Civ.  P.  34(a) provided it is relevant.

8     *Playboy Enter., Inc.  V.  Welles,* 60 F.  Supp.  2d 1050, 1053 (S.D.  Cal.  1999) (requesting

9     "documents" under Fed.  R.  Civ.  P 34(a) was an effective request for information stored in

10    electronic form, and defendant's hard drive was discoverable because it was likely that relevant

11    information was stored on it).  Rule 34(a) was amended in 1970 to include the term "data

12    compilations" within the definition of the scope of discoverable "documents."  *See* Fed.  R.  Civ.

13    P.  34(a), Advisory Committee Notes to 1970 Amendments.  Courts have almost universally

14    interpreted the phrase "data compilations" as permitted a request for production of electronic

15    evidence.  *See, e.g., Anti-Monopoly, Inc.  v.  Hasbro, Inc.*, 1995 U.S.  Dist.  LEXIS 16355, at 4

16    (S.D.N.Y.  1995) ("today, it is black letter law that computerized data is discoverable if

17    relevant"); *Crown Life In.  Co.  v.  Craig,* 995 F.2d 1376, 1382-83 (7th Cir.  1993) (raw data

18    discoverable under Rule 34).

19

20    **3.    The Preservation Order Should Encompass All Relevant Evidence Including Specified Items**

21    Plaintiff requests that the court, in addition to issuing the order re copying requested

      above, order that defendants and their agents do nothing to destroy any of the following:

22    1) All documents, as that term is defined in the Federal Rules of Evidence, that evidence

23

24        or pertain to any infringement of plaintiff's Nacio's copyrights in GASP, including but

        not limited to any of the following:

25

26

a) Defendants' communications with any third parties that in any way pertain to GASP or the Software Information Database used therewith;

b) Defendants' possession, use or modification og GASP or any of its component parts;

c) Any of Defendant' emails or attachments thereto still located on computer systems of their respective Internet Service Provider(s);

d) Any communications between Defendants and any of nacio's customers;

e) defendants receipt, possession, use or transmission to any third parties of any list or Nacio's or Attest Systems' customers

**D.    Nacio Has a Reasonable Probability of Success on the Merits**

The relief requested in this first Application is intended to preserve evidence of copyright infringement and theft of trade secrets. The Court is directed to Section IV D. 1 below, which will not be repeated in detail here. Briefly put, the Ninth Circuit requires a 'fair chance of success' to be shown for a TRO to issue. *Johnson v. Cal. State Bd. Of Accountancy,* 72 F.3d 1427, 1430 (9th Cir. 1995). Not only has plaintiff shown that it is the sole owner of the copyrights in issue, but it has also put in evidence detailing its protection of its trade secrets, Gottlieb's theft of the software and attempt to destroy the evidence of that transfer. For purposes of this Application for copies and as preservation order, plaintiff has met its burden and the TRO should issue.

**VIII.   LEGAL ARGUMENT II - COPYRIGHT INFRINGEMENT**

This section is offered in support of the second application, seeking a restraining order regarding copyright infringement and the expedited discovery concerning the same.

**A.    The Time for the Taking of Depositions and the Production of Documents Must Be Shortened to Protect Nacio Rights Against Further infringement.**

Rules 26(d) and 30(a) of the Federal Rules of Civil Procedure require parties to seek leave of Court to take a deposition or request production of documents during the first 30 days after service of the summons and complaint. *See* Fed. R. Civ. P. 26(d), 30(a). Leave to conduct such discovery during the first thirty (30) days after service of the summons and complaint may be granted where good cause has been shown. *Stanley v. Univ. of Southern California*, 13 F.3d 1313, 1326 (9th Cir. 1994). In *Stanley,* the Court determined that good cause may be found where a party has presented an urgent need for discovery in connection with an application for a temporary restraining order or preliminary injunction. *Id.*

Nacio Systems is seeking expedited discovery narrowly limited to the following items:

> 1) Evidence of the possession, use, transfer, sale or licensing of GASP by defendants;
>
> 2) documents and emails showing all communications with third parties such as BIT, S.A., Attest Europe, PS'Soft or others concerning any potential use, modifications, transfer or sale or licensing of GASP or its component parts.

Nacio Systems is primarily entitled to this limited expedited discovery as a result of the substantial likelihood that Gottlieb and SWIdent will destroy evidence. In addition, Nacio Systems is entitled this expedited discovery to pursue its rights under the Copyright Act. The Copyright Act gives Nacio Systems the right to seize evidence to enjoin a Defendant's actions on any terms reasonable to prevent or restrain infringement of a copyright. 17 U.S.C. § 502(a) and (b). For these rights to have meaning, Nacio Systems must first discover where all of the infringing copies are located and understand more fully the extent of the infringement to properly

1    frame its application for a preliminary injunction under the Copyright Act, the California

2    Uniform Trade Secrets Act and the Unfair Business Practices Act.

3         Nacio Systems's motion for shortening time is supported by the facts showing Gottlieb

4    and SWIdent have unlawfully copied the GASP software and is currently engaged in unlawful

5    and ongoing distribution of portions of the software.  Nacio Systems incurring irreparable harm

6    as a result of defendants's actions, and has an urgent and immediate need for this expedited

7    discovery in connection with an application for a preliminary injunction pursuant to § 503(a) of

8    the Copyright Act, Cal.  Civ.  Code Sections 3426.2 and 3426.5 and Cal.  Bus.  & Prof.  Section

9    17200 et.  seq.

10        Nacio Systems respectfully requests that this Court grant its motion for expedited limited

11   discovery and order Gottlieb and SWIdent to permit experts retained by Nacio Systems to inspect

12   the Gottlieb and SWIdent computer networks in the limited manner described above, and make

13   Herbert Gottlieb, SWIdent's General Manager, available for deposition.

14

15   **B.    TRO Should Issue To Enjoin Gottlieb and SWIdent From Continuing To Infringe
        On Nacio's Copyrights in GASP**

16        **1.    Ninth Circuit Standard for TRO and Preliminary Injunctive Relief**

17        In the Courts of the Ninth Circuit, to obtain a TRO or preliminary injunction, "the

18   moving party must show either (1) a combination of probable success on the merits and the

19   possibility of irreparable injury, or (2) that serious questions are raised and the balance of

20   hardships tips sharply in favor of the moving party." *Stuhlbarg International Sales Company,*

21   *Inc.  v.  Brush*, 240 F.3d 832, 839-840 (9th Cir.  2001) and *Dr.  Seuss Enters.  v.  Penguin Books*

22   *USA, Inc.,* 109 F.3d 1397, n.1 (9th Cir.  1997).

23        Further, the Ninth Circuit has explained that "these two alternatives represent extremes of

24   a single continuum, rather than two separate tests.  Thus, the greater the relative hardship to the

25

26   MEMO OF Ps & As In Support of *EX PARTE* APPLICATION FOR ORDER PRESERVING EVIDENCE
     **Nacio Systems, Inc. v. Herbert Gottlieb et al  Case No.C 07 3481 PJH**

1  moving party, the less probability of success must be shown." *Bernhardt v. Los Angeles County,*

2  339 F.3d 920, 934 (9th Cir. 2003), and *Immigrant Assistance Project of Los Angeles County v.*

3  *INS,* 306 F.3d 842, 873 (9th Cir. 2002).

4      Importantly as well, the Ninth Circuit has explained that the term "probable success on

5  the merits" should be interpreted as meaning a "fair chance of success on the merits," as opposed

6  to some higher level of probability. *Johnson v. Cal. State Bd. Of Accountancy,* 72 F.3d 1427,

7  1430 (9th Cir. 1995); *Shering Corp. v. First Databank Inc.,* 2007 U.S. Dist. LEIS 29433, *11 -

8  *12 (N.D. Cal. 2007).

9      Finally, the requirement to show "the possibility of irreparable harm" has been essentially

10  done away with in the case of copyright actions, as the Courts have held that "A showing of a

11  reasonable likelihood of success on the merits raises a presumption of irreparable harm." *Triad*

12  *Systems Corp. v. Southeastern Express Co.*, 64 F. Ed 1330, 1335 (9th Cir. 1995); *Oracle USA*

13  *v. Graphnet Inc.,* 2007 U.S. Dist. LEXIS 13147, *9 - * 12 (N. D. Cal., 2007). "[A] party

14  showing a reasonable likelihood of success on the merits of a copyright infringement claim is

15  thus normally entitled to a preliminary injunction." *Optinrealbig.com, LLC v. Ironport Sys.*, 323

16  F. Supp. 2d 1037, 1050 (N.D. Cal. 2004), *Triad Systems, supra.*

17
18  **2.    Nacio Systems Has Shown That Its Copyright Infringement Claims Have A
        Reasonable Likelihood of Success on the Merits Against Gottlieb and
19      SWIdent**

20      Under 17 U.S.C. Section 106, Nacio Systems – having exclusive rights in GASP Version

21  7.0 at issue herein, has the "exclusive rights" ... (1) to reproduce the copyrighted work ...; (2) to

22  prepare derivative works based upon the copyrighted work; (and); (3) to distribute copies ... of

23  the copyrighted work to the public..." Under 17 U.S.C. Section 501 (a), "anyone who violates

24  any of the exclusive rights of the copyright owner as provided by sections 106 through 122 ... is

25  an infringer of the copyright." Finally, under 17 U.S.C. Section 502(b) – "The legal or

26

1   beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for

2   any infringement of that particular right committed while he or she is the owner of it."

3        As has been clearly and indisputably shown herein, Herbert Gottlieb wrongfully

4   reproduced and appropriated GASP Version 7.1 and the registration keys therefor and acted to

5   prepare a derivative work by combining GASP and its embedded software licensing database

6   (SID) with PS'Softs comparable database.  These facts alone prove serious copyright

7   infringements.  Moreover, the facts presented create a reasonable showing that Gottlieb also

8   distributed GASP Version 7.1 and the registration keys to both PS'Soft, with whom he was

9   collaborating as a consultant, and the competitor of Nacio Systems that he created, SWIdent.

10  Nacio Systems has thus made a reasonable showing of copyright infringement which brings with

11  it the presumption of irreparable harm and, in and of itself, supports the injunctive relief now

12  sought.

13
14  **C.    TRO Should Issue To Enjoin Gottlieb and SWIdent From Continuing To Misappropriate Nacio Systems's Trade Secrets**

15         **1.    Nacio Systems Has Shown Probable Success On The Merits That Gottlieb and SWIdent Have Misappropriated Nacio Systems's Trade Secrets and that Gottlieb Has Breached His Fiduciary Duty**
16

17        Under the Uniform Trade Secrets Act ("UTSA"), the acquisition of trade secret

18  information by improper means, which include through breach of an employee's fiduciary duties,

19  constitutes unlawful misappropriation.  Civil Code § 3426.1(b)(1).  The UTSA defines a "trade

20  secret" as "information, including a formula, pattern, compilation, program, device, method,

21  technique or process, that : (1) derives independent economic value, actual or potential, from not

22  being generally known to the public or to other persons who can obtain economic value from its

23  disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to

24  maintain its secrecy."  Cal. Civ. Code § 3426.1(d).  Customer lists (even those developed in

25

26

1   whole or in part by the misappropriating employee) can also constitute trade secrets of a

2   company, especially where they contain information that is not readily ascertainable through

3   public sources.  *See Morlife, Inc.  v.  Perry,* 56 Cal.App.4th 1514, 1520-21 (1997); *American*

4   *Paper & Packaging Products, Inc.  v.  Afton Kirgan***,** 183 Cal.App.3d 1318, 1322-23 (1986); *see*

5   *also* Cal.  Lab.  Code § 2860 ("Everything which an employee acquires by virtue of his

6   employment, except the compensation which is due to him from his employer, belongs to the

7   employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term

8   of his employment").

9         While an employee's further use and disclosure of the misappropriated trade secrets

10  increases the Company's damages, a cause of action for trade secret misappropriation exists at

11  the moment that the trade secrets are taken, regardless of whether use or disclosure has occurred.

12  *Cadence Design Systems, Inc.  V.  Avant! Corp.*, 29 Cal.  4th 215, 221 (2002).  Where evidence of

13  actual or threatened misappropriation exists, the Court has the authority to issue injunctive relief.

14  Cal.  Civ.  Code § 3426.2 (a).   Thus, as the above demonstrates, Nacio Systems has shown a

15  probable success of its claims against Gottlieb and SWIdent for misappropriated Nacio

16  Systems's trade secrets – and certainly that serious questions have been raised concerning such

17  misappropriation.

18        Moreover, as Nacio Systems's President Gottlieb owed fiduciary duties to Nacio

19  Systems, including a duty of loyalty.  *GAB Bus.  Serv., Inc.  v.  Lindsey & Newsom Claim Serv.,*

20  *Inc.,* 83 Cal.App.  4th 409, 417 (2000) (*rev's on other grounds*); *Stokes v.  Dole Nut Co.*, 41 Cal.

21  App.  4th 285 (1995) (employer entitled to the undivided loyalty of its employees).  As part of

22  these fiduciary duties, and consistent with his contractual obligations, Gottlieb is required at all

23  times to protect and not improperly use, disclose, or retain Nacio Systems's proprietary

24  information .( *Goldenberg Dec.,* ¶¶ 4-6, Ex.s A & B).  In clear violation of these obligations,

25

26

1    Gottlieb selectively targeted, accessed, and downloaded Nacio Systems's most highly sensitive

2    software and customer data – data that would enable a Nacio Systems competitor a dramatic

3    advantage and cripple Nacio Systems's business if it were used or disclosed outside of Nacio

4    Systems. (*Burkart Dec.*, ¶ 12-13).  Gottlieb also wrongfully misappropriated Nacio Systems's

5    entire customer list and other crucial information that Nacio Systems had compiled regarding its

6    actual and potential customers, including non-public information that Nacio Systems had

7    obtained about these customers.  This constitutes Nacio Systems's trade secret information.

8    *Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514 (1997), *American Paper & Packaging Products,*

9    *Inc. v. Afton Kirgan*, 183 Cal.App.3d 1318 (1986).  By accessing, downloading and retaining

10   and using this proprietary information of Nacio Systems after his departure from Nacio Systems,

11   Gottlieb has already misappropriated Nacio Systems's trade secrets in direct violation of both his

12   fiduciary duties to Nacio Systems and the Uniform Trade Secrets Act.  This showing meets both

13   the "probable success on the merits" and "serious question" tests.

14       Moreover, the circumstances surrounding Gottlieb's misappropriation, repeatedly set out

15   above, strongly suggest that Gottlieb will use and/or disclose Nacio Systems's trade secrets in the

16   near future.

17

18   **D.    Nacio Systems Has Shown Probable Success On The Merits That Gottlieb and**
19   **SWIdent Have Engaged In Unfair Competition, And Threaten To Do So In the**
     **Future.**

20       For the same reasons, Gottlieb's theft of Nacio Systems's most sensitive trade secret

21   information violates California's provisions against unfair competition.  California Business &

22   Professions Code § 17200.  Section 17200 is designed to "borrow" violations of other laws and

23   treat them independently as unlawful business practices.  *See Farmers Ins. Exch. v. Sup. Ct.*, 2

24   Cal. 4th 377, 383 (1992); *People v. EWAP, Inc.*, 106 Cal. App. 3d 315, 319 (1980).  Therefore,

25

26

1   as Gottlieb's conduct constitutes a direct violation of the Uniform Trade Secrets Act, Gottlieb

2   has also already engaged in unfair competition in direct violation of Section 17200.

3   **E.     Nacio Systems Has Shown Probable Success On The Merits That Gottlieb and**
4           **SWIdent Is Likely to Engage In Multiple Thefts Of Nacio Systems's Corporate**
            **Opportunities.**
5
6          A corporate opportunity exists where "a proposed activity is reasonably incident to the

7   corporation's present or prospective business advantage and is one in which the corporation has

8   the capacity to engage."  Under California law, a fiduciary unlawfully usurps this corporate

9   opportunity when he acquires, in opposition to his employer, "properly in which the corporation

10  has an interest or tangible expectancy, or which is essential to its existence."  *Kelegian v.*

11  *Mgrdichian*, 33 Cal.  App.  4th 982, 988 (1995); *see also* Cal Lab.  Code §2863 ("An employee

12  who has any business to transact on his own account, similar to that entrusted to him by his

13  employer, shall always give the preference to the business of the employer").

14         As explained above, immediately before resigning to work for a direct competitor of

15  Nacio Systems, PS'Soft, Gottlieb took Nacio Systems's GASP software – which, as noted above,

16  would be of tremendous value to Nacio Systems's competitors – and thereafter has established

17  and managed SWIdent as a direct competitor of Nacio Systems.  Gottlieb also downloaded Nacio

18  Systems's entire customer list and trade secret information concerning those customers and key

19  customer presentations.  The only purposes for which Gottlieb could have downloaded and

20  retained this list is to use the information contained therein to enable his new employer PS'Soft,

21  and SWIdent thereafter, to secure customers that Nacio Systems is directly competing to obtain.

22         As such, there is a strong likelihood that Gottlieb and SWIdent will repeatedly usurp

23  Nacio Systems's corporate opportunities in the coming weeks and months.  (*i.e.*  its sales

24  opportunities and the SID embedded in its GASP software to help SWIdent identify pirated

25  software on its customers' business computer systems).  Armed with these trade secrets, Gottlieb

26

1  and SWIdent will undoubtedly be successful in this theft of corporate opportunities, having

2  obtained Nacio Systems's data base of properly licensed software (the SID) and its customer list.

3  In order to prevent this unfair competition and outright theft of Nacio Systems's corporate

4  opportunities, immediate injunctive relief is required.

5

6  **F.    Nacio Systems Has Shown Probable Success On The Merits That Gottlieb and**

7  **SWIdent Have Already Engaged In Conversion and Threaten To Do So In The Future.**

8       Conversion is the wrongful exercise of dominion over the property of another.  In order to

9  prove conversion, the plaintiff need only show (1) its ownership or right to possession of the

10  property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and

11  (3) damages.  Conversion is a strict liability tort." *Burlesci v. Petersen*, 68 Cal. App. 4th 1062,

12  1065 (1998).  Where the plaintiff can demonstrate the elements of conversion, strict liability

13  attaches, and the court may immediately issue injunctive relief. *Id.; see also Gladstone v. Hillel*,

14  203 Cal. App. 3d 977, 988-89 (1988) (court has power to order injunctive relief relating to

15  conversion claim).

16

17  **G .    Nacio Systems Will Suffer Irreparable Harm Unless The Court Orders Immediate Injunctive Relief**

18       Over and beyond the automatic presumption of irreparable harm which comes with

19  copyright infringement, as discussed above, the facts set out herein clearly show the possibility of

20  irreparable harm that continued misuse of misappropriated trade secrets – both the software

21  components and Nacio Systems's customer lists and customer information.

22       Nacio Systems will suffer irreparable harm if Gottlieb is not immediately restrained from

23  accessing, using, or disclosing the Nacio Systems proprietary information that he retained after

24  his departure from Nacio Systems.  It is widely recognized that trade secret misappropriation can

25

26

1   result in irreparable harm to a corporation.  *See, e.g., Aba Rubber Co.  v.  Seaquist*, 235 Cal.

2   App. 3d 1, 17 (1991); *Lamb-Weston Inc.  v.  McCain Foods Ltd*, 941 F.2d 970, 974 (9th Cir.

3   1991); *see also Air Products & Chemicals, Inc.  v.  Johnson*, 296 PA Super 405, 415, 442 A.2d

4   1114, 1119 (PA Super 1982) ("to deny plaintiff a remedy until after disclosure of [trade secrets]

5   has been made would be to deny a remedy all together.  Equity will enjoin action when there is a

6   substantial threat of injury, without waiting for the injury to be inflicted").  Where the defendant

7   has already engaged in misconduct, courts are especially inclined to recognize the existence of a

8   threat of future misconduct and issue injunctive relief.  *See ReadyLinkHealthcare v.  Cotton*, 126

9   Cal.  App.  4th 1006, 1023 (2005).

10       The strong evidence of Gottlieb's theft of Nacio Systems's trade secrets mandates

11   immediate injunctive relief.  As described more fully above, Gottlieb has already stolen Nacio

12   Systems's most sensitive trade secret information.  The information that Gottlieb has already

13   misappropriated from Nacio Systems is highly sensitive and would be of significant competitive

14   value to other companies in the industry, including PS'Soft and/or SWIdent, direct competitors

15   of Nacio Systems..

16

**H.     The Balance of Hardships Weighs Heavily In Favor Of Granting Injunctive Relief**
17   **        to Nacio Systems**

18       Finally, the balance of hardships weighs heavily in favor of granting injunctive relief to

19   Nacio Systems.  Unlike Nacio Systems, Gottlieb and SWIdent have absolutely *no* ownership

20   interest, claim, or right to the information that Gottlieb surreptitiously stole from Nacio Systems.

21   As Gottlieb and SWIdent have no right to possess, much less use, this sensitive information of

22   Nacio Systems, he cannot be harmed by the issuance of a TRO.  Moreover, neither Gottlieb or

23   SWIdent requires continuous use of GASP or the software and database that Gottlieb, Gottlieb

24   and PS'Soft or Gottlieb and SWIdent have joined together with their own software and data

25

1  bases to support their service to their business customers of identifying pirated software.  Such

2  services are not instantaneous, but instead are completed after their business customers provide

3  the code of new software they want to check for legitimate licensed status.  The brief interruption

4  Nacio Systems seeks for its expert to make copies  simply will cause little or no hardship to

5  Gottlieb or SWIdent.

6         This inconvenience on Gottlieb's part is warranted in light of his outright theft of Nacio

7  Systems's trade secrets, copyright infringement, breach of fiduciary duty, and other related

8  wrongdoing.  *See Heller v.  New York,* 413 U.S.  483, 492 (1972) (Court permitted seizer of films

9  to preserve the evidence where there was no indication that such seizure would prevent the

10 continuing exhibition of the film).

11        For the reasons set out above, the Court is requested to issue the Temporary Restraining

12 Order prepared by Plaintiff, and to set a date for a hearing on a permanent injunction. Plaintiff

13 has applied for a bond and will cause one to be issued when the Court determines the appropriate

14 amount. In light of the facts set out above, including the low level of inconvenience posed by the

15 copying order, Plaintiff  respectfully suggests that a bond of no more than $10,000 be required.

16

17 DATED:       July 13, 2007            SOMMERS & SCHWARTZ LLP

18

19

20

21                                    By_____
                                          Frank F Sommers
22                                        Attorneys for Plaintiff Nacio Systems, Inc.

23

24

25 S:\Nacio\Pleadings\TRO ETC\Memo of P&A ISO Ex Parte Application.wpd WWW.sng1597:Pleadings:Not of SEttlement

26 MEMO OF Ps & As In Support of *EX PARTE* APPLICATION FOR ORDER PRESERVING EVIDENCE
   Nacio Systems, Inc. v. Herbert Gottlieb et al  Case No.C 07 3481 PJH