Comment [LT1]:

## NON-DISCLOSURE AGREEMENT

I.     PROPRIETARY INFORMATION AND TRADE SECRETS

The growth and success of Attest Systems, Inc. (Attest) which has employed you is a reflection of its special competence in software development, software services and other businesses that Attest addresses in the marketplace.  This special competence is a result of the development and application of Attest proprietary information and "trade secrets."  Accordingly, this Agreement was prepared to develop and ensure an understanding of mutual responsibilities and promote the common interest of Attest and yourself serving as an employee.

For the purposes of this Agreement, (i) "Attest" as used below includes all subsidiaries and affiliates of Attest Systems, Inc., and (ii) "Proprietary Information" of Attest includes, but is not limited to, the following confidential information and trade secrets:

     a)     Attest technical information, including  but not limited to computer programs and applications, database programs, source code, research, developments, inventions, processes, formulas, technology, know-how, drawings, and specifications;

     b)     Attest marketing information encompassed in plans, projections, contracts, computer programs and applications, procedures and policies, or other operating documents;

     c)     Financial information of Attest or any of its customers, investors, vendors, or resellers which is not public knowledge;

     d)     Information about transactions or negotiations between Attest and its customers, investors, vendors, resellers or any third party, including but not limited to each party's projects, computer programs and applications, inventions, technology and research activities, financial information, contracts, and business and marketing plans;

     e)     Information about Attest-owned products, services, software, source code or inventions under development or already developed including but not limited to all versions of GASP®;

     f)     The identity of Attest's customers or investors, vendors, or resellers, including but not limited to all lists of each such party and supporting documentation, including but not limited to documentation about preferences, patterns of buying, selling or investing, persons to contact and other information valuable in doing business with such parties;

     g)     Internal business procedures of Attest and the way Attest conducts its businesses;

     h)     Business plans, including but not limited to marketing, sales and development plans, research and development information, forecasts, forecast assumptions and potential strategies of Attest; and

     i)     Personal information of Attest employees.

In consideration of your new or continuing employment by Attest, Attest asks you to sign the following Agreement.  You agree that the terms and conditions of this Agreement shall be deemed effective as of the date you first became employed by Attest

I acknowledge that the Proprietary Information, as listed above, of Attest Systems, Inc. are unique assets of the Company. I agree that I will regard and preserve as confidential the Proprietary Information that has been or may be obtained by me by reason of my service with Attest.  During and after my employment with Attest, I will not, without written authority from Attest to do so, use for my own benefit or purposes, nor, except as required in the course of my service with Attest, disclose to any person, persons, or entities at any time, either during or subsequent to my service, any such trade secret or item or information.  I agree that all Proprietary Information prepared by me or that comes into my possession by reason of my services are the property of Attest and shall not be used by me in any way adverse to Attest's interests.  I agree to return to Attest all aforementioned Proprietary Information in my possession at the time of my termination of service.   I will not deliver, reproduce, or in any way allow such documents or things to be used by any third party without specific direction or consent of a duly authorized representative of Attest.  During or after termination of my service, I will not publish, release or otherwise make available to any third parties any information describing any Attest proprietary information without prior specific written authorization of Attest.

I acknowledge that any unauthorized disclosure of proprietary information and trade secrets may cause Attest irreparable injury which would not be adequately compensable in damages.  Accordingly, I agree that Attest may obtain an injunction to prevent a breach by me of this Agreement.

Rev. 07/13/07

1

II.    INVENTION ASSIGNMENT

a)    Disclosure of Inventions.  From and after the date I first become employed with Attest, I will promptly disclose in confidence to Attest in writing all inventions, improvements, designs, original works of authorship, formulas, processes, compositions of matter, computer software programs, databases, mask works, and trade secrets ("Inventions"), whether or not patentable, copyrightable or protectible as trade secrets, that are made or conceived or first reduced to practice or created by me, either alone or jointly with others, during the period of my employment, whether or not in the course of my employment.

I have attached, as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with Attest, which belong to me, and which are not assigned to Attest hereunder, or, if no such list is attached, I represent that there are no such Prior Inventions and the word "none" is written on such Exhibit A.

b)    Work for Hire; Assignment of Inventions.  I acknowledge that all work done by me for Attest relating in any way to the conception, design, development or support of products for Attest is the property of Attest.  I acknowledge that copyrightable works prepared by me within the scope of my employment are "works for hire" under the Copyright Act and that Attest will be considered the author thereof.  I agree that all Inventions that (a) are developed using equipment, supplies, facilities or trade secrets of the Company, (b) result from work performed by me for Attest, or (c) relate to Attest's business or including research and development, will be the sole and exclusive property of Attest and are hereby assigned by me to Attest.

c)    Labor Code 2870 Notice.  I have been notified and understand that the provisions of Section II (b) above and Section II (d) below do not apply to any Invention that qualifies fully under the provisions of Section 2870 of the California Labor Code, which states as follows:

**ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER:  (1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUALLY OR DEMONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER, OR (2) RESULT FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER. TO THE EXTENT A PROVISION IN AN EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.**

d)    Assignment of Other Rights.  I hereby irrevocably transfer and assign to Attest:  (a) all worldwide patents, patent applications, copyrights, mask works, trade secrets and other intellectual property rights in any Invention; and (b) any and all "Moral Rights" (as defined below) that I may have in or with respect to any Invention.  I also hereby forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Invention, even after termination of my work on behalf of Attest.  "Moral Rights" means any rights to claim authorship of an Invention, to object to or prevent the modification of any Invention, or to withdraw from circulation or control the publication or distribution of any Invention, and any similar right, existing under judicial or statutory law of any county in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right." To the extent such Moral Rights cannot be assigned under applicable law and to the extent the following is allowed by the laws in the various countries where Moral Rights exist, I hereby waive such Moral Rights and consent to any action of Attest that would violate such Moral Rights in the absence of such consents.

e)    Assistance.  I agree to assist Attest in every proper way to obtain for Attest and enforce patents, copyrights, mask work rights, trade secret rights, and other legal protections for Attest's Inventions in any and all countries.  I will execute any documents that Attest may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights, trade secrets and other legal protections.  My obligations under this paragraph will continue beyond the termination of my employment with Attest, provided that Attest will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at Attest's request on such assistance.  I hereby appoint the Corporate Secretary of Attest as my attorney-in-fact to execute documents or do any other lawful act on my behalf for this purpose.

III.    OTHER EMPLOYMENT

      a)    No Breach of Prior Agreement.  I represent that my performance of all the terms of this Agreement and my duties as an employee of Attest will not breach any invention assignment with any former employer or other party.  I represent that I will not bring with me to Attest or use in the performance of my duties for Attest any documents or materials of a former employer that are not generally available to the public or have not been legally transferred to Attest.

      b)    Duty Not to Compete.  I understand that my employment with Attest requires my undivided attention and effort.  As a result, during my employment, I will not, without Attest's express written consent, engage in any employment or business other than for Attest, or invest in or assist in any manner any business which directly or indirectly competes with the business or future business plans of Attest.  It is agreed that ownership of no more than one percent of the outstanding voting stock of a privately held corporation, ownership of no more than five percent of the outstanding voting stock of a privately held corporation or ownership of no more than ten percent of the limited partnership interests of a partnership shall not construe a violation of this provision.

      c)    Non-Solicitation.  During, and for a period of one year after termination of my employment with Attest, I will not directly or indirectly solicit to take away suppliers, customers, employees or consultants of the Company for my own benefit or for the benefit of any other party.

      d)    Notification.  I hereby authorize Attest to notify my actual or future employers of the terms of this Agreement and my responsibilities hereunder.

IV.    AT WILL

In consideration of my employment, I agree to conform to the rules and regulations of Attest Systems, Inc. and any of its subsidiaries and affiliates, as described in Attest's Employee Handbook.  I understand that the contents of the Handbook are presented as a matter of information.  The Handbook will not be relied upon by me or interpreted by me to create any expressed or implied contractual rights between me and any of the Attest Companies.  I also understand and agree that Attest may change, rescind or add to any procedures, benefits or practices whether described in the Handbook or not, from time to time in its sole and absolute discretion, with or without prior notice to me or other employees.

I understand that the Handbook expressly provides that my employment by Attest is entirely at-will, and that this provision can only be changed by a written agreement executed by the appropriate, authorized vice president (or above level) officer of Attest.  I understand that my employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of either Attest or myself.  I also understand and agree that this Section IV at-will agreement constitutes the entire agreement between me and Attest with regard to termination, that it supersedes any prior agreements, and that it can be changed only by written agreement with Attest executed by an officer of Attest at the vice-president level or above, even though other policies and procedures may change from time to time.

V.    MISCELLANEOUS

      a)    Governing Law.  This Agreement will be governed and interpreted in accordance with the laws of the State of California, without regard to or application of choice of law rules or principles.

      b)    Severability.  In the event that any provision of this Agreement is found by a court, arbitrator or other tribunal to be illegal, invalid or unenforceable, then such provision shall not be voided, but shall be enforced to the maximum extent permissible under applicable law, and the remainder of this Agreement shall remain in full force and effect.

      c)    General.  This Agreement contains the entire Agreement of the parties relating to the subject matter hereof and supersedes any prior agreements whether written or oral.  This Agreement may be modified only by an instrument in writing and signed by me and an officer of Attest at the vice-president level or above.  It is anticipated by both parties that further non-disclosure agreements may be entered into between the parties for specific projects.  This Agreement will still be valid so long as it is consistent with further agreements.

d)    Notices.  Any notice required to be given under this Agreement shall be deemed received three (3) days after mailing if sent by registered or certified mail to the addresses of the parties set forth below, or to such other addresses as either of the parties shall have furnished to the other in writing.

e)    Terms.  The terms and conditions of this agreement shall remain in full effect indefinitely or until the confidential information is placed in the public domain by an action unrelated to any activity of the recipient.

f)    Binding Effect.  This agreement inures to the benefit of successors and assigns of Attest and is binding upon my heirs and legal representative.

g)    Waiver.  The waiver by Attest of a breach of any provision of this agreement by me shall not operate or be construed as a waiver of any other or subsequent breach by me.


VI.    CERTAIN FEES AND EXPENSES

In the event I resign from my employment by the Company within the first year of my employment, then I agree to reimburse the Company for the following fees and expenses:  (a) agency fees paid to any third party by the Company in order to obtain my services; (b) out-of-pocket relocation costs and expenses incurred by the Company in connection with my employment by the Company; and (c) out-of-pocket costs and expenses for third party training incurred by the Company in connection with my employment.

Attest and I acknowledge, understand and agree to the terms and conditions of the Agreements printed above.

IN WITNESS WHEREOF, ATTEST and Recipient hereby agree to all of the terms of this Agreement


**EMPLOYEE'S SIGNATURE**

_____        _____
EMPLOYEE'S SIGNATURE                                         DATE

_____
EMPLOYEE'S NAME (Type or Print)

_____
ADDRESS

_____


**ATTEST SYSTEMS, INC.**

_____        _____
OFFICER'S SIGNATURE                                          DATE

_____
TITLE

_____100 Rowland Way – 2nd Floor_____
ADDRESS

_____Novato, CA  94945_____

Rev. 07/13/07                                    4

**EXHIBIT A**

LIST OF PRIOR INVENTIONS AND ORIGINAL WORKS OF AUTHORSHIP

<u>Title and brief description (please include date and identifying numbers):</u>

| |
|---|
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

No inventions or improvements:_____AGREED TO BY ATTEST
Number of additional sheets attached:_____ SYSTEMS INC.
Signature of Employee:_____ By: _____
Print Name of Employee:_____ Title:_____
Date signed:_____

Rev. 07/13/07                    5