MARK J. RICE (SBN 124934)
McNEIL, SILVEIRA, RICE & WILEY
55 Professional Center Parkway, Suite A
San Rafael, CA  94903
Telephone: (415) 472-3434
Facsimile:  (415) 472-1298

Attorneys for Defendants HERBERT M. GOTTLIEB
And SWIDENT, LLC, a California Limited Liability Company

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NACIO SYSTEMS, INC., a Nevada Corporation,<br><br>             Plaintiff,<br><br>vs.<br><br>HERBERT M. GOTTLIEB, an individual; SWIDENT, LLC, a California Limited Liability Company,<br><br>             Defendant. | Case No.  C 07 3481 PJH<br><br>MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER (WITHOUT PRIOR NOTICE) TO PRESERVE EVIDENCE AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION<br><br>Date: August 1, 2007<br>Time: 9:00 a.m.<br>Crtrm: 3, 17th Floor |

As noted in Mr. Gottlieb's declaration, he has complied with the Temporary Restraining Order ("TRO") issued without notice. Plaintiff's counsel did not send him the signed order, but the two unsigned versions. Through his own counsel, Mr. Gottlieb was able to obtain the electronically filed, interlineated copy and understand its limited scope and preservation of the GASP-type software evidence on any of his computers.

1
MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER (WITHOUT PRIOR NOTICE) TO PRESERVE EVIDENCE AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

LAW OFFICES OF
MCNEIL, SILVEIRA, RICE & WILEY
AN ASSOCIATION INCLUDING PROFESSIONAL CORPORATIONS

As stated in Mr. Gottlieb's declaration, there may be remnants of GASP-type software on his former desktop computer, which computer he has not personally used for a number of months and which was provided to him by agreement by Nacio in late March 2006, when Mr. Gottlieb shifted from employment status as the President of Attest Division of Nacio, over to consultancy status for Nacio. That Severance Agreement provided:

> "3. I retain possession of the following equipment: <u>Dell Dimension 8200 Pentium 4</u>, 2 monitors, keyboard, Kensington mouse, speakers and other peripherals currently used by me, HP 4550N Color LaserJet Printer, HP4050TN Printer, <u>Sentry Safe</u>, Danby Refrigerator and Net Gear hub." (Gottlieb Declaration, Exhibit 3.)

Nacio did not require a wipe of the stored computer information at the time of transfer of Mr. Gottlieb's desktop. Mr. Gottlieb has not used or appropriated that dormant GASP data left on his old desktop.

Additionally, Mr. Gottlieb was the originator of the GASP software under his former company, Attest. As a secured creditor of Attest under defaulted obligations, Mr. Gottlieb sold the assets of Attest, including intellectual property and GASP IT to Nacio. As part of the $125,000 Promissory Note from Nacio to Mr. Gottlieb at the time of his employment with Nacio, all of the Attest assets transferred, including all of the intellectual property GASP software and codes, were collaterally pledged back to Mr. Gottlieb as security under UCC-1 as set forth in the Promissory Note. See Gottlieb Declaration, Exhibit 6.

In other words, any remnants of the GASP software were rightfully in Mr. Gottlieb's possession from the "get go." He was the originator of the GASP data; he was a secured creditor under collateral pledge within a promissory note and UCC-1 security interest; thirdly, he possessed the data as the employee of Nacio who managed those IT assets from date of employment in 2002 forward; and fourth, incidentally, when Mr. Gottlieb's desktop computer was transferred to him as part of an agreement with Nacio whereby Mr. Gottlieb would shift his employment status to wage earning employee at the office to consultant, working from a home office.

Nacio's effort to paint Mr. Gottlieb's possession as if wrongful, ludicrous, false and frivolous. Nacio's effort to imply that Mr. Gottlieb used GASP software on his computer at all also is wrong and incorrect.

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS

What really occurred here is this. Nacio breached a series of terms in the employment agreement with Mr. Gottlieb, including nonpayment of wages due him in violation of California Labor Code Statutes. Then, Mr. Gottlieb filed a demand with the American Arbitration Association because his Employment Agreement with Nacio contains a binding arbitration clause. Then, in further retaliation, Nacio, through its defacto President, Murray Goldenberg (Footnote1) caused Nacio's accounting staff to stop paying on the $125,000 Promissory Note altogether, which default then became part of the arbitration. The arbitration took place on October 16, 2006, before Arbitrator, John Kagel. Nacio was represented by counsel at the time. The Arbitrator found that Nacio breached the agreements and constructively discharged Mr. Gottlieb. Though Mr. Gottlieb, in a Severance Agreement, negotiated with Mr. Goldenberg, he had conditionally agreed to waive his constructive discharge rights to a $90,000, one year severance payment, <u>provided</u> that Nacio paid timely the sales commissions due, the Arbitrator further found that the conditions of that waiver of the severance payment due was also violated by Nacio's nonpayment of the commissions due and as agreed under both the Employment Agreement and again under the Severance Agreement. See Award at Gottlieb Declaration, Exhibit 1.

Significantly, Nacio declined to bring this compulsory counterclaim in arbitration which now bars its related "counterclaim." The Arbitration testimony from Mr. Goldenberg reflects his assertion of a claim for allegedly working for a competitor. Rice Declaration, Exhibit 4. Though false, these all arose out of the same employment and consulting agreements that call for binding AAA arbitration. Those claims are not just unfounded, but they also are <u>barred</u> by collateral estoppel for failure to assert then in a compulsory counterclaim in the arbitration.

The Arbitration Award was confirmed and became a court judgment in Marin County. Just prior to the February 7, 2007 hearing on Mr. Gottlieb's Petition to Confirm the Award on February 5, 2007, Nacio, in the first of its "retaliatory" strikes against Mr. Gottlieb, served a former iteration of this unfair competitor complaint it filed in Marin County Superior Court. See Gottlieb

---

1 Mr. Goldenberg is subject to a Securities and Exchange Commission "cease and desist order," a copy of which is attached to the Declaration of Mark J. Rice filed herewith, which prohibits him being involved in certain types of companies as an officer. While Mr. Goldenberg contended at arbitration that did not apply to his status with Nacio, Mr. Goldenberg unofficially ran the company, but officially was simply a "consultant" apparently in an effort to avoid any potential conflict with the SEC. See Rice Declaration, Exhibits 2 and 3.

3
MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER (WITHOUT PRIOR NOTICE) TO PRESERVE EVIDENCE AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

Declaration, Exhibit 9. That action has since been dismissed, after Mr. Daly acknowledged to Mr. Gottlieb that it had no merit. See Gottlieb Declaration, Exhibits 10 and 11.

Mr. Gottlieb respectfully submits that the current iteration of the unfair competition complaint by Nacio against Mr. Gottlieb, now in federal court, is simply a further extension of that "retaliatory" tactic of an indirect appeal of the $240,000 judgment obtained by Mr. Gottlieb against Nacio that remains unpaid. Nacio's entire effort is sought as a way to neutralize that money judgment in some fashion, or to induce hardball negotiations through false and malicious litigation based upon misleading declarations and untrue assertions.

One untrue assertion is that the GASP software was improperly in Mr. Gottlieb's possession. As stated above, his possession was natural, appropriate and understandable in light of his Collateral Pledge Security, his interest as a security holder, his status as an employee and that of a consultant, and the agreed transfer without wipe of his personal desktop to him without any wipe being required or requested by Nacio. Mr. Gottlieb has not used that GASP data, another false allegation.

Another untrue position by Nacio is that the desktop computer and safe were somehow purloined by Mr. Gottlieb, or that the safe contents were taken by Mr. Gottlieb. These are also untrue. See Gottlieb Declaration. As therein stated, Mr. Gottlieb, by written agreement, was permitted to take the safe and the desktop computer; Mr. Gottlieb provided to Nacio, the contents of the safe, which included source codes, etc. that had been kept there as part of the assets of Attest, originally transferred by Mr. Gottlieb to Nacio.

The Nacio declarations are also untrue in asserting that Mr. Gottlieb somehow interfered with Nacio's opportunities with PS'Soft, BIT or business opportunities of Nacio in Argentina. These farfetched claims are utterly without merit. They are presented in an attempt to vilify Mr. Gottlieb to the court, without prior notice to him at a TRO stage, and to mislead the court.

PS'Soft is not a competitor of Nacio. PS'Soft declined to purchase GASP software not due to any conduct of Mr. Gottlieb, who promoted GASP to PS'Soft. PS'Soft was a small company and the GASP software solution was too big and costly. Further, the PS'Soft management was distrustful of Mr. Goldenberg after doing a "Google search" and finding that he had an SEC cease and desist order against him, and other troublesome reports online about Mr. Goldenberg.

4
MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER (WITHOUT PRIOR NOTICE) TO PRESERVE EVIDENCE AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

It is not true that Mr. Gottlieb has contacted current customers of Nacio or used Nacio data to contact such. It is not true that his backup of the Nacio files while an employee, that he did is part of his regular practice as the Attest president, was for an improper purpose. He did <u>not</u> download those files on March 26, 2006 to his home computer as claimed by Nacio in its TRO application. Simply, as before, Mr. Gottlieb needed to verify the backup had occurred and this was in the ordinary course of business.

There is a tremendous degree of falsehood in the plaintiff's application. Mr. Gottlieb did not stalk Ms. Burkart, and did not ask her to do anything improper when he showed her his home office. All these efforts to smear Mr. Gottlieb, a holder of the $240,000 judgment against Nacio (where the Arbitrator found Mr. Goldenberg's testimony less than credible), are transparent and misleading to this court.

Because the TRO was limited to preservation of the GASP remnants that might exist, on the computer, Mr. Gottlieb can and has complied with that order and is not contesting that limited TRO for which appearance on the August 1, 2007 OSC is required. However, the rejected TRO application (for which there is no hearing) is vehemently opposed. Because it is not part of any TRO or OSC pending at this time, a more extensive opposition to those other frivolous and factually empty claims are not presented here in the interest of brevity.

If Nacio wants to undertake a "wipe" of any remnants of GASP software and Mr. Gottlieb's ancient desktop computer (which is not personally used for a long time and for which any of the GASP-type software has not been accessed), Mr. Gottlieb believes counsel for both parties can meet and confer towards so doing. However, as to the rejected TRO applications, what Nacio seeks is essentially to use the court order to engage in industrial espionage over Mr. Gottlieb's current business in an effort to kill it.

Additionally, because of prior litigation between Nacio and Mr. Gottlieb, his files contain attorney-client information and other private matters, both proprietary and business-related which have nothing to do with Nacio at all and for which disclosure would violate his attorney-client privileges, his confidentiality, his business plans and personal privacy. On that basis, in the event of any further efforts to seek such a further, more expansive TRO, those would be fully opposed. There is no basis for it.

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS

Finally, in addition to the unclean hands at work here by Nacio, there is a tremendous amount of laches (and collateral estoppel). Nacio is complaining of alleged events that occurred in March 2006. It has presented a Declaration of Mikol Westling that Mr. Gottlieb took the safe with its contents in March 2006 to his home office. Subsequent to that, there was a written demand for Mr. Gottlieb to return certain items that were not on the agreed possession list, such as the printer stand. (Mr. Gottlieb had taken the printer stand with the printer and list only allowed the printer, not the stand. Mr. Gottlieb understood both to be included, but to avoid controversy, returned the printer stand). See Gottlieb Declaration. This was back in June 2006. Nacio did not assert that the contents of the safe were removed indeed; they were not removed, but left at Nacio. However, if Mr. Westling's recollection were correct, certainly Nacio would have asked for the contents of the safe, valuable property involving the IT database for the GASP software and source codes. At the time Nacio was asking for return of $125 printer stand! Nacio could not have used GASP for the last fifteen months without the codes located in the safe. Nacio's claim of lacking that data for the last fifteen months is ridiculous and false.

These are the sort of factual inconsistencies that make the entire application fishy. These are the sort of factual inconsistencies, along with the repetitive nature of these lawsuits, coming on the heels of an adverse judgment against Nacio in favor of Mr. Gottlieb that are false and in bad faith.

Note too, that Mr. Cary asked to meet with Mr. Gottlieb only a short while ago and promised to dismiss the state court version of this action which he also viewed as frivolous, which dismissal later occurred. Mr. Cary offered to pay a substantial portion of the judgment and satisfy the balance with stock. See Gottlieb Declaration, Exhibits 9 through 11.

What is happening here is obvious. Nacio is in a series of litigations, largely spawned by conduct by Mr. Goldenberg and his compatriots that ruined the company and ran it into the ground. Nacio has numerous tax liens against it, unpaid. Because of Mr. Goldenberg's poor reputation in the industry, and the SEC cease and desist order against him, he cannot attract new money from venture capitalists. Mr. Cary has come in, in an effort to be the "white knight," but Mr. Cary can't complete that VC play without addressing outstanding judgments, including the $240,000 judgment to Mr. Gottlieb. Therefore, this lawsuit is filed in an attempt to bring Mr. Gottlieb to his knees and

LAW OFFICES OF
MCNEIL, SILVEIRA, RICE & WILEY
AN ASSOCIATION INCLUDING PROFESSIONAL CORPORATIONS

crush him with excessive "shock and awe" litigation force in federal court. The problem for Nacio is that its allegations are false, transparent, and certainly belated and barred.

The truth is Mr. Gottlieb remained a consultant for several months for Nacio after leaving his employment at the end of March 2006. Things were amicable at that juncture and remained amicable until Nacio breached its employment agreement and refused to pay Mr. Gottlieb his outstanding $23,000 in unpaid commissions. In turn, Nacio then lost in arbitration, including on the promissory note securing the Attest IT assets at issue here. Needless to say, the party that breached the note which assets are pledged, can hardly claim that Mr. Gottlieb lacks an ownership interest in the IT assets, which were pledged back as security for the $125,000 promissory note, which has since been defaulted.

In short, Mr. Gottlieb has done nothing wrong. He has exercised his rights to be paid as an employee and obtained a judgment for wages, agreed severance, labor code penalties, promissory note with IT assets pledged as his collateral, attorney's fees, and interest in court and arbitration costs. Since that time, Nacio has tried to negotiate by filing two frivolous lawsuits, including this one. The court should see through this bad faith strategy and throw this case out of court as soon as it can.

A good example of plaintiff's falsity is its claim of lost sales. In the AAA arbitration, Mr. Goldenberg explained Mr. Gottlieb's loss of staff and support resources, on the ground that there were no sales, because the GASP software was "shop worn" and in need of being refreshed. See Rice Declaration, Exhibit 3, Mr. Goldenberg's testimony:

> "We were unable to generate sales to anybody's satisfaction because <u>the software was old and worn, and it had to be refreshed.</u>
> Q. On Friday when we had discussions, you complained that Mr. Gottlieb had engaged in some behavior you thought was improper. Do you recall that?
> A. Yes, I do.
> Q. Are you claiming that that precludes you or entitles you not to pay commission that are due?
> A. No. Absolutely not. One has nothing to do with the other. I believe we owe him the money for the commissions. And given time, we will pay it.
> THE ARBITRATOR: Can I ask a question? I'm unclear what your role was. You're a <u>consultant and CFO. Is that correct?</u>
> THE WITNESS: <u>That's correct.</u>
> THE ARBITRATOR: <u>Sounds to me like you're running the show.</u> What were you doing?

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS

THE WITNESS: I was the most senior person on premise. <u>The company has a CEO</u> and a president. The CEO spends some time on technical matters because she's an engineer. But <u>basically on day-to-day business smatters, I'm the person that they look to.</u>

THE ARBITRATOR: That's helpful to me. Thank you.

Q. Was he (Gottlieb) able to still perform his duties even though a <u>number of subordinates were either terminated or resigned?</u>

A. Yes.

Q. How was he able to do that without the support?

A. <u>The software that we had was, as I said earlier, shop worn and had to be renewed.</u> And we undertook that <u>renewal process</u>, which Mr. Gottlieb and another person had suggested or told me would cost about $60,000 and take three months. $400,000 later and, I guess, a year later, <u>year and a half later, we're still not there. And so we could not do some of the things economically that Mr. Gottlieb wanted to do like a press tour, because there was no reason to do it until the new software become available.</u>"

A party cannot blow "hot and cold: on the same facts. There were limited sales of GASP because GASP was being revamped, and Nacio declined Mr. Gottlieb's marketing recommendations, and cut his staff, just as Goldenberg testified before. One can see why there is an SEC cease and desist order against this defacto CEO who hides behind the pseudo title of "consultant" to avoid further SEC problems. Mr. Goldenberg and Nacio are not to be believed in this ludicrous claim. This case is malicious, false, and for an improper purpose – to counteract an unpaid judgment.

## CONCLUSION

For the reasons submitted above, Mr. Gottlieb is willing to comply and has complied with the limited TRO Regarding Preservation of GASP software on his computer or computers. He has not misused any of that data, if exists. And, if it exists, it is only in remnant form and not accessed. However, Mr. Gottlieb opposes this lawsuit and opposes all other forms of relief sought.

DATED:   July 25, 2007          McNEIL, SILVEIRA, RICE & WILEY

By _____
        MARK J. RICE

Attorneys for Defendants Herbert M. Gottlieb and SWIdent LLC

8

MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER (WITHOUT PRIOR NOTICE) TO PRESERVE EVIDENCE AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION