EXHIBIT 1

LAW OFFICES
OF

MᴄNᴇɪʟ, Sɪʟᴠᴇɪʀᴀ, Rɪᴄᴇ & Wɪʟᴇʏ

AN ASSOCIATION INCLUDING PROFESSIONAL CORPORATIONS
55 PROFESSIONAL CENTER PARKWAY, SUITE A
SAN RAFAEL, CALIFORNIA 94903
T-(415) 472-3434  F-(415) 472-1298
www.msrwlaw.com

PATRICK J. MᴄNEIL
A PROFESSIONAL CORPORATION

MARK J. RICE
A PROFESSIONAL CORPORATION

NEIL W. WILEY

RONALD A. SILVEIRA
1948-2000

April 11, 2007

**VIA FACSIMILE AND MAIL**

Ariana Seldman Hawbecker, Esq.
DONAHUE GALLAGHER WOODS LLP
300 Lakeside Drive, Suite 1900
Oakland, CA  94612

Re:    Nacio Systems, Inc. v. Herbert M. Gottlieb, et al.
       Marin County Superior Court Case No. CV070474

Dear Ms. Hawbecker:

Enclosed please find an executed Notice and Acknowledgment of Receipt on behalf of Mr. Gottlieb of the above referenced complaint.

As I have previously advised you of my view that your firm is not detached due to substantial monies owing to it by Nacio Systems, Inc. and that this action is malicious and unfounded. However, on a substantive basis, I have also advised you this action is simply an effort by Mr. Goldenberg at an "indirect appeal of the arbitration award already entered against Nacio Systems, Inc., a Nevada Corporation, in favor of Mr. Gottlieb which currently has a balance in excess of $250,000.

With respect to the arbitration clause, Nacio Systems, Inc. already consented to arbitration before the American Arbitration Association (AAA) with respect to Mr. Gottlieb's own claims under his written employment agreement which calls for arbitration under the rules of the American Arbitration Association.  Therefore, there has already been consent to AAA and already an arbitration which has been confirmed by the court and uncontested by Nacio Systems, Inc. Therefore, it is completely wasteful for Nacio Systems, Inc. to refuse to stipulate to further binding arbitration before the American Arbitration Association on what are, in effect, counterclaims that should have been brought in the underlying arbitration already concluded, and which are barred by the doctrine of collateral estoppel.

You propose that we use some tribunal other than AAA to determine whether or not the claims of the above complaint are arbitrable under the AAA based arbitration clause.  That is simply wasteful and unnecessary due to the nature of the arbitration clause, and the existing history whereby Nacio Systems, Inc. has previously consented to the arbitrability of disputes between itself

1

LAW OFFICES OF

MCNEIL, SILVEIRA, RICE & WILEY

and Mr. Gottlieb, arising out of his employment relationship and the AAA arbitration agreement he had with Nacio Systems, Inc.

Finally, because AAA has already heard the matter, it is appropriate to continue to have AAA act as arbitrator as previously consented to by Nacio Systems, Inc. Your effort to "forum shop" with a different arbitration tribunal is in appropriate contrary to the language in terms of the arbitration clause before AAA using AAA rules, and prior arbitration before AAA.

Very truly yours,

MARK J. RICE

MJR/nv
Enclosure
cc:   Herbert Gottlieb (without enclosure)

2

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| William R. Hill, 114954<br>Ariana Seldman Hawbecker, 190506<br>DONAHUE  GALLAGHER WOODS LLP<br>300 Lakeside Drive, Suite 1900, Oakland, CA 94612<br>TELEPHONE NO.: (510) 451-0544    FAX NO.*(Optional)*: (510) 832-1486<br>E-MAIL ADDRESS *(Optional)*:  ariana@donahue.com<br>ATTORNEY FOR *(Name)*:  Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  MARIN
STREET ADDRESS:  3501 Civic Center Drive
MAILING ADDRESS:
CITY AND ZIP CODE:  San Rafael, CA  94903
BRANCH NAME:

PLAINTIFF/PETITIONER: NACIO SYSTEMS, INC., a Nevada
Corporation

DEFENDANT/RESPONDENT:HERBERT M. GOTTLIEB, an individual
DOES 1 through 50, inclusive

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL | CASE NUMBER: |
|---|---|

TO *(insert name of party being served)*:  HERBERT M. GOTTLIEB

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: February 5, 2007

Ariana Seldman Hawbecker
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER-MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1.  ☒  A copy of the summons and of the complaint.
2.  ☒  Other *(specify)*:
   Notice of Case Management Conference; Notice to Plaintiffs; Stipulation to Use of Alternate Dispute Resolution Process; Ex Parte Application for Extension of Time to Serve Pleading and Orders; Case Management Statement; Notice of Stay of Proceedings; Notice of Termination or Modification of Stay; Notice of Settlement of Entire Case; Statement of Agreement or Nonagreement; ADR Information Form.

*(To be completed by recipient)*:

Date this form is signed: April 11, 2007

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

**Law Offices Of**
**McNEIL, SILVEIRA, RICE & WILEY**
**55 Professional Center Parkway, Suite A**
**San Rafael, California 94903**
**(415) 472-3434**
**FAX: (415) 472-1298**

## FACSIMILE TRANSMISSION COVER SHEET

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication is error, please notify us immediately by telephone, and return the original message to us at the above address via the United States Postal Service. THANK YOU.

**DATE:**        **April 11, 2007**

**TO:**          **Ariana Seldman Hawbecker, Esq.**

**FAX NO.:**     **(510) 832-1486**

**FROM:**        **Mark J. Rice, Esq.**

**RE:**          **Gottlieb/Nacio Systems, Inc., A Nevada Corporation**
                 **AAA Case No. 74-166-0046806 DECR**

**Number of Pages, Including This Sheet:     4**

**If any pages are missing, please telephone Nina Vallindras immediately at (415) 472-3434.**

**COMMENTS:   ORIGINALS TO FOLLOW BY MAIL**

P. 1

✳ ✳ ✳  COMMUNICATION RESULT REPORT ( APR. 11. 2007  3:17PM ) ✳ ✳ ✳

TTI   MCNEIL SILVEIRA RICE

TRANSMITTED/STORED: APR. 11. 2007  3:14PM

| FILE | MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|------|------|--------|-----------------|--------|------|
| 188 | MEMORY TX | | 15108321486 | OK | 4/4 |

---

REASON FOR ERROR
    E-1) HANG UP OR LINE FAIL           E-2) BUSY
    E-3) NO ANSWER                  E-4) NO FACSIMILE CONNECTION

**Law Offices Of**
**McNEIL, SILVEIRA, RICE & WILEY**
**55 Professional Center Parkway, Suite A**
**San Rafael, California 94903**
**(415) 472-3434**
**FAX: (415) 472-1298**

## FACSIMILE TRANSMISSION COVER SHEET

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication is error, please notify us immediately by telephone, and return the original message to us at the above address via the United States Postal Service. THANK YOU.

**DATE:**       **April 11, 2007**

**TO:**          **Ariana Seldman Hawbecker, Esq.**

**FAX NO.:**   **(510) 832-1486**

**FROM:**      **Mark J. Rice, Esq.**

1    MARK J. RICE (SBN 124934)
     McNEIL, SILVEIRA, RICE & WILEY
2    55 Professional Center Parkway, Suite A
     San Rafael, CA 94903
3    Telephone: (415) 472-3434
     Facsimile:  (415) 472-1298
4
     Attorneys for Petitioner HERBERT M. GOTTLIEB
5

6

7                          SUPERIOR COURT OF CALIFORNIA

8                    COUNTY OF MARIN - UNLIMITED CIVIL JURISDICTION

9
     NACIO SYSTEMS, INC., a Nevada        )    Case No.  CV070474
10   Corporation, and DOES 1 to 10, inclusive, )
                                          )    [PROPOSED] ORDER UPON STIPLUTION
11             Plaintif,                  )    STAYING PROCEEDING PENDING
                                          )    ARBITRATION BETWEEN THE PARTIES;
12   vs.                                  )    AND ORDER PROPELLING ARBITRATION
                                          )    BETWEEN THE PARTIES PURSUANT TO
13   HERBERT M. GOTTLIEB,                 )    THEIR AGREEMENT.
                                          )
14             Deéndant.                  )
                                          )
15   _____    )
                                          )
16

17                               STIPULATION

18       WHEREAS, there is a binding arbitration clause between Herbert Gottlieb and Nacio

19   Systems, Inc. (formerly Interactive Data Holding Group, Inc.) requiring binding arbitration by the
     American Arbitration Association of any dispute between them;
20       WHEREAS, a confirmed arbitration award exists in favor of Gottlieb against Nacio

21   Systems, Inc., a Nevada Corporation, arising from Mr. Gottlieb's employment with Nacio
     Systems, Inc. in Marin Superior Court, Action No. CV065571;
22       WHEREAS Plaintiff Nacio Systems, Inc., a Nevada Corporation alleges that in the

23   above-entitled Complaint that Herbert M. Gottlieb has violated his fiduciary duties against Nacio
     Systems, Inc., in the capacity of its employee of Nacio Systems, Inc.;
24       THEREFORE, the parties, through court,  hereby stipulate as follows:

25       1.    To an Order compelling arbitration of the dispute alleged in the Complaint and,

26       2.    That this action be stayed pending completion of said arbitration up to and

27                                     1
                      STIPULATION AND [PROPOSED] ORDER
28

1    including final award.

2
     THE PARTIES HAVE SO STIPULATED.
3

4

5    DATED:_____          ARIANA SELDMAN HAWBECKER
                                     DONAHUE GALLAGHER WOODS LLP
6                                    Attorneys for Plaintiff NACIO SYSTEMS, INC., A
                                     Nevada Corporation
7

8    DATED: _February 18 2007_       _[signature]_
9                                    MARK J. RICE
                                     McNEIL, SILVEIRA, RICE & WILEY
10                                   Attorneys for Defendant HERBERT GOTTLIEB

11

12                                   **ORDER**

13        Good cause appearing and upon the stipulation of the parties, it is hereby ORDERED

14   that the within action be stayed pending binding arbitration between the parties before the

15   American Arbitration Association; and that this Court further orders that the within dispute

16   alleged in this action is subject to binding arbitration pursuant to the agreement of the parties

17   before the American Arbitration Association and that this Court herby orders this action referred

18   to binding arbitration before the American Arbitration Association based upon the parties

     stipulation hereto, and contractual agreement.

19
     SO ORDERED.
20

21   DATED: _____          _____
                                      JUDGE OF THE SUPERIOR COURT
22

23

24

25

26

27                                          2
                                   STIPULATION AND [PROPOSED] ORDER
28

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS

EXHIBIT 2

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name and Address):<br>☐ Recording requested by and return to:   TELEPHONE: (415)472-3434<br>McNeil, Silveira, Rice, Wiley & West<br>55 Professional Center Parkway, Suite A<br>San Rafael, CA 94903 | **FOR RECORDER'S USE ONLY** |
| **NAME OF COURT**<br>MARIN COUNTY SUPERIOR COURT<br>3501 CIVIC CENTER DRIVE ROOM 113<br>P.O. Box 4988<br>SAN RAFAEL, CA  94903 | |
| **PLAINTIFF:** Herbert M. Gottlieb<br>**DEFENDANT:** Nacio Systems, Inc., a Nevada Corporation | **LEVYING OFFICER** (Name and Address):<br>Robert T. Doyle, Sheriff<br>Marin County Sheriff's Office<br>3501 Civic Center Drive<br>Room #145<br>San Rafael, CA. 94903 |
| **MEMORANDUM OF GARNISHEE**   (Attachment Enforcement of Judgment) | |

| | |
|---|---|
| ☒  **Execution (Money Judgment)**   ☐ **Sale** | |

*PLEASE REFER TO THIS NUMBER WHEN CORRESPONDING WITH SHERIFF*

| **LEVYING OFFICER FILE NO.** | **COURT CASE NO.** |
|---|---|
| 07000916 | CV065571 |

## TO THE PERSON NOTIFIED (name):

| **GARNISHEE** (Name and address) | **JUDGEMENT DEBTOR** (Name and address) |
|---|---|
| First Republic Bank<br>1099 4th Street<br>San Rafael, CA 94901 | Nacio Systems, Inc., a Nevada Corporation<br>55 Leveroni Court<br>Novato, CA 94949 |

**SOCIAL SECURITY NUMBER:**

**NOTICE TO PERSON SERVED WITH WRIT AND NOTICE OF LEVY OR NOTICE OF ATTACHMENT:** This memorandum must be completed and mailed or delivered to the levying officer within 10 days after service on you of the writ and notice of levy or attachment unless you have fully complied with the levy. Failure to complete and return this memorandum may render you liable for the costs and attorney fees incurred in obtaining the required information.
-RETURN ALL COPIES OF THIS MEMORANDUM TO THE LEVYING OFFICER-

**This memorandum does *not* apply to garnishment of earnings**

1.  If you will not deliver to the levying officer any property levied upon, describe the property and the reason for not delivering it:

    N/A

2.  **For writ of execution only**   Describe any property of the judgment debtor not levied upon that is in your possession or under your control:

    N/A

3.  If you owe money to the judgment debtor which you will not pay to the levying officer, state the amount and the reason for not paying it to the levying officer:

    N/A

**MARIN COUNTY SHERIFF'S DEPARTMENT-CIVIL DIVISION**
We received $ *26,940.27* in partial/full satisfaction on your writ
from *First Republic Bank*
All monies collected will be remitted upon completion of our accounting process.
By _____ *JE* _____   Date *6/25/07*

(Continued on Reverse)

**MEMORANDUM OF GARNISHEE**
(Attachment – Enforcement of Judgment)
**RETURN TO LEVYING OFFICER**

CCP 488.610
701.030

| SHORT TITLE: Herbert M. Gottlieb vs. Nacio Systems, Inc., a Nevada Corporation | Levying Officer File Number: 07000916 | Court Case Number: CV065571 |
|---|---|---|

4. Describe the amount and terms of any obligation owed to the judgment debtor that is levied upon but is not yet due and payable:

N/A

5. For Writ of execution only    Describe the amount and terms of any obligation owed to the judgment debtor that is not levied upon:

N/A

6 Describe any claims and rights of other persons to the property or obligation levied upon that are known to you and the names and addresses of the other persons:

N/A

## DECLARATION

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
Dawn Togus
(TYPE OR PRINT NAME)

► _____
(SIGNATURE )

---

**If you need more space to provide the information required by this memorandum, you may attach additional pages.**
Total number of pages attached:

---

AT-167 EJ-152 [Rev Jan 1, 1985]

**MEMORANDUM OF GARNISHEE**
**(Attachment – Enforcement of Judgment)**

Page two

EXHIBIT 3

Scan in Gother

# NACIO LIENS

IRS Tax Lien                                              69,402.13
04/18/07
2007 – 0023608

Cal Release of Tax Lien                                  2,058.35
03/19/07                                                 02/09/07
2007- 0016859                                            2007-0008071

FEIN – 6803379420
FTB – 1835336000

Marin County Tax Lien                                    31,705.06
02/16/07
2007- 0009532

Marin County Tax Collector                               21,969.41
2006- 0007488

EXHIBIT 4

1                AMERICAN ARBITRATION ASSOCIATION

2

3   HERBERT M. GOTTLIEB,               )
                                       )
4              Claimant,               )
    vs.                                )
5                                      )
    NACIO SYSTEMS, INC.,               )
6   formerly INTERACTIVE               )
    HOLDINGS GROUP, INC.,              )           CERTIFIED COPY
7                                      )
              Respondent.              )
8                                      )
    _____)

9

10

11                      ---oOo---

12             TRANSCRIPT OF PROCEEDINGS

13                      ---oOo---

14                  October 16, 2006

15

16

17                Taken at the location of:
                American Arbitration Association
18               One Sansome Street, 16th Floor
                   San Francisco, California

19                      ---oOo---

20

21  Reported by
    JOAN T. GRIER, CSR #8958

22

23                  M. P. RADOCY, INC.
             CERTIFIED SHORTHAND REPORTERS
24                737 Channing Avenue
              PALO ALTO, CALIFORNIA  94301
25    TELEPHONE (650) 325-4393  FAX (650) 325-4394

                                                        1

```
1                    A P P E A R A N C E S

2

3    ARBITRATOR:  JOHN KAGEL, ESQUIRE

4                 P.O. Box 50787

5                 Palo Alto, California 94303

6

7    For Claimant:

8                     McNEIL, SILVEIRA, RICE & WILEY

9                     55 Professional Center Parkway, Suite A

10                    San Rafael, California  94903

11                    (415) 472-3434

12                    By:  Mark J. Rice, Attorney at Law

13

14   For Respondent:

15                    DONAHUE, GALLAGHER, WOODS

16                    300 Lakeside Drive, Suite 1900

17                    Oakland, CA 94612

18                    (510) 451-0544

19                    By:  William H. Green, Attorney at Law

20

21

22   ALSO PRESENT:  Herbert M. Gottlieb

23                  Murray Goldenberg

24

25
```

2

1    respondent?

2           MR. GREEN:  No.  Maybe we can take a two-minute

3    break and let me talk to Mr. Rice about something.

4           THE ARBITRATOR:  Go ahead.

5           Off the record.

6           (Recess taken from 10:29 to 11:12 a.m.)

7           THE ARBITRATOR:  Call your witness, Mr. Rice.

8           (Discussion off the record.)

9           MR. RICE:  I'm going to call Mr. Goldenberg

10   first.

11          THE ARBITRATOR:  Mr. Goldenberg, would you come

12   forward, please, and have a seat.

13          Do you wish the witnesses sworn?

14          MR. RICE:  Yes, please.

15          (Witness sworn.)

16          MURRAY GOLDENBERG,

17   Called as an adverse witness by the Claimant,

18              testified as follows:

19          THE ARBITRATOR:  Your name, sir.

20          THE WITNESS:  Murray Goldenberg.

21          THE ARBITRATOR:  Mr. Rice, I assume you're

22   calling Mr. Goldenberg as an adverse witness.

23          MR. RICE:  I am calling him as an adverse

24   witnesses.

25          THE ARBITRATOR:  Mr. Goldenberg, you've been

12

M.P. RADOCY, INC.          (650) 325-4393

1    MR. RICE:  Q.  How many -- at the time of

2  Mr. Gottlieb's departure, what were the total number of

3  employees within Nacio?

4    A.    Within Nacio?

5    Q.    Yes.

6    A.    Excluding our after-hours staff, probably 25.

7    Q.    Okay.  Can you turn your attention to Exhibit F

8  again.  And we're almost concluded.  Where Mr. -- and I

9  know you indicated you weren't sure whether you received

10  this or not, but let me see if I can refresh your

11  recollection.

12        He writes:

13            "In light of the renewal I am also

14        concerned about the reduction of staff

15        under me, and whether you plan to

16        increase or change the duties of my

17        position.  Duty changes require my

18        approval under the employment contract.

19        I need to know if any are planned.

20        Could you please discuss with me your

21        plans for my duties."

22        Do you have a recollection now of having heard

23  that you did receive this e-mail?

24    A.    No, I don't have a recollection of receiving

25  this e-mail, but I do recollect Herb and I having a

73

M.P. RADOCY, INC.        (650) 325-4393

1    discussion, and I made it very clear to him that his

2    duties were unchanged; that he joined principally to

3    generate sales for that division.

4        We were unable to generate sales to anybody's

5    satisfaction because the software was old and worn, and

6    it had to be refreshed.  And Herb worked with one of our

7    other folks to make a lot of good changes and put a lot

8    of good things in place.

9        And it was our intention to have him continue

10   generating sales and doing exactly that without the

11   responsibilities of worrying about accounting and so on,

12   which is what I agreed I would look after.

13       Q.    But Herb did complain that he felt that he was

14   being undersupported and undermined by your resource

15   changes?

16       A.    He didn't complain about that specifically.  We

17   had discussions from time to time about where we were

18   going and what we wanted to do with Attest, but he never

19   complained that he was being undermined.

20       Q.    On Friday when we had discussions, you

21   complained that Mr. Gottlieb had engaged in some behavior

22   you thought was improper.  Do you recall that?

23       A.    Yes, I do.

24       Q.    Are you claiming that that precludes you or

25   entitles you not to pay commissions that are due?

74

1      A.   No.  Absolutely not.  One has nothing to do

2   with the other.  I believe we owe him the money for the

3   commissions.  And given time, we will pay it.

4            MR. RICE:  Okay.  I'd like to introduce the

5   UCC-1 as -- we marked my brief as 2, so that would be

6   "U."  I'm introducing it for the truth of the matter

7   asserted as an operative document.

8            THE ARBITRATOR:  Any objection?

9            MR. GREEN:  One moment.

10           No objection.

11           THE ARBITRATOR:  It's admitted.

12                   (Whereupon, Claimant's Exhibit U was

13                   marked for identification and received

14                   into evidence.)

15           MR. RICE:  I have no further questions for

16   Mr. Goldenberg.

17           THE ARBITRATOR:  Can I ask a question?

18           I'm unclear what your role was.  You're a

19   consultant and CFO.  Is that correct?

20           THE WITNESS:  That's correct.

21           THE ARBITRATOR:  Sounds to me like you're

22   running the show.  What were you doing?

23           THE WITNESS:  I was the most senior person on

24   premise.  The company has a CEO and a president.  The CEO

25   spends some time on technical matters because she's an

                                                    75

1    engineer.  But basically on day-to-day business matters,

2    I'm the person that they look to.

3              THE ARBITRATOR:  That's helpful to me.  Thank

4    you.

5              I thought we'd go to 1:00 and maybe break for

6    lunch.

7              DIRECT EXAMINATION BY MR. GREEN:

8              MR. GREEN:  Q.  In your opinion,

9    Mr. Goldenberg, was Mr. Gottlieb terminated?

10       A.  No.

11       Q.  Why do you say that?

12       A.  Because Mr. Gottlieb came to me and said he'd

13   like to move on.

14       Q.  Was he more specific?

15       A.  No.

16       Q.  Was he, in your opinion, constructively

17   terminated?

18       A.  No.

19       Q.  Were his job duties taken away?

20       A.  No.

21       Q.  Was he able to still perform his duties even

22   though a number of subordinates were either terminated or

23   resigned?

24       A.  Yes.

25       Q.  How was he able to do that without the support?

76

1   A.   The software that we had was, as I said

2   earlier, shop worn and had to be renewed.  And we

3   undertook that renewal process, which Mr. Gottlieb and

4   another person had suggested or told me would cost about

5   $60,000 and take three months.  $400,000 later and, I

6   guess, a year later, year and a half later, we're still

7   not there.

8           And so we could not do some of the things

9   economically that Mr. Gottlieb wanted to do like a press

10  tour, because there was no reason to do it until the new

11  software became available.

12          Mr. Gottlieb was asked to continue selling as

13  best he could given the quality of the product and to

14  work with people on renewing maintenance contracts.  In

15  other words, continue his sales role and participate with

16  the overall management at Nacio.

17          He was invited and was part of every management

18  meeting.  He contributed not only to the Attest side but

19  expressed opinions on the professional and on the systems

20  side, which are our other two divisions.

21          And aside from the fact that people were moved

22  around and we changed the entire structure of the

23  company, not just for Attest but also for the

24  professional services group, he was asked to continue

25  doing what he did best.

77

1    Q.    Did he continue doing that?

2    A.    I thought he did.

3    Q.    Did he eventually leave the company?

4    A.    Yes, he did.

5    Q.    What was your understanding of the terms under

6    which he left the company?

7    A.    He left the company with the request that he be

8    allowed to continue working for us as a consultant, which

9    we appreciated and paid him for.    I always told Herb that

10   I liked him as an individual and thought highly of his

11   skills and wanted him to stay.

12          He chose to take a position with somebody that

13   I will call a competitor while he was still working for

14   us, which I disagreed with and told him I disagreed with.

15   Q.    Let's go back to the commission payment that

16   you said was owed but not payable.    Why is it not

17   payable, or when did it become payable?

18   A.    Well, it was my understanding at the time we

19   did the documents, and it never really became an issue

20   until Herb was ready to leave, that one month out of 12

21   doesn't constitute a month in which all the commissions

22   that have been accrued should be payable.

23          And so I felt that we should have an average of

24   three months, four months, something that would make

25   sense.    Not that he wouldn't earn the money.    He would

78

1   continue to earn the money, but that we would only pay

2   it -- because cash flow was very critical, and we would

3   only pay the commissions when the cash is available.

4        Q.   And is the cash available today?

5        A.   No.

6        Q.   Do you know when the cash will be available?

7        A.   I'm meeting with some people this week.  It's

8   supposed to be tomorrow, and I'm hoping that we're going

9   to be able to put a financing in place for Nacio in its

10  own right as opposed to Nacio's waiting for Encompass to

11  fund it.  And it was my intention to generate some funds

12  out of that funding for Mr. Gottlieb, but I can't commit

13  to it until I know what the amount is and until it's a

14  done deal.

15       Q.   Is it your intent that when the cash is

16  available that Mr. Gottlieb will be -- that when the

17  funds become available, then at that point then the

18  commissions do become payable and then Mr. Gottlieb will

19  be paid?

20       A.   I don't believe they become payable, because

21  the division has never achieved an average $60,000 even

22  for two months in a row.  But in order to bring this to a

23  head and live up to our obligation, I want to pay him and

24  get him out of my hair.

25       Q.   So it's your position that because the $60,000

                                                              79

M.P. RADOCY, INC.        (650) 325-4393

EXHIBIT 5

SECURITIES ACT OF 1933 Release No. 7849 / April 10, 2000

Home | Previous Page



U.S. Securities and Exchange Commission

## UNITED STATES OF AMERICA
## Before the
## SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No. 7849 / April 10, 2000

SECURITIES EXCHANGE ACT OF 1934
Release No. 42656 / April 10, 2000

INVESTMENT COMPANY ACT OF 1940
Release No. 24384 / April 10, 2000

ADMINISTRATIVE PROCEEDING
File No. 3-10184

| In the Matter of<br><br>NOVA COMMUNICATIONS LTD., formerly known as FIRST COLONIAL VENTURES LTD., and MURRAY W. GOLDENBERG, Respondents. | ORDER INSTITUTING PUBLIC ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDING, MAKING FINDINGS AND IMPOSING A CEASE-AND-DESIST ORDER AND SANCTIONS |
| --- | --- |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that a public cease-and-desist proceeding pursuant to Section 9(f) of the Investment Company Act of 1940 ("Investment Company Act"), Section 8A of the Securities Act of 1933 ("Securities Act") and Section 21C of the Securities Exchange Act of 1934 ("Exchange Act") be instituted against Nova Communications Ltd., formerly known as First Colonial Ventures Ltd. (hereinafter referred to as "FCVL"), and Murray W. Goldenberg ("Goldenberg"); and that a public administrative proceeding be instituted against Goldenberg pursuant to Section 9(b) of the Investment Company Act.

II.

In anticipation of the institution of this proceeding, FCVL and Goldenberg have each submitted an Offer of Settlement, each of which the Commission has determined to accept. Solely for the purpose of this proceeding and any other proceeding brought by or on behalf of the Commission or in which the Commission is a party, and without admitting or denying the findings contained herein (except that FCVL and Goldenberg admit the findings in III.A.1. and III.A.2. below and the jurisdiction of the Commission over each of them and over the subject matter of this proceeding), FCVL and

Goldenberg hereby each consent to the entry of this Order Instituting Public Administrative and Cease-and-Desist Proceeding, Making Findings and Imposing a Cease-and-Desist Order and Sanctions ("Order") set forth below.

Accordingly, **IT IS ORDERED** that a proceeding pursuant to Sections 9(b) and 9(f) of the Investment Company Act, Section 8A of the Securities Act and 21C of the Exchange Act be, and hereby is, instituted.

III.

On the basis of this Order and the Offers of Settlement submitted by FCVL and Goldenberg, the Commission finds that:

A. RESPONDENTS

1. Nova Communications Ltd., formerly known as First Colonial Ventures Ltd. (hereinafter referred to as "FCVL"), a Nevada corporation, is located in Los Angeles, California. In January 1995, FCVL registered with the Commission as a closed-end investment company. In June 1995, FCVL filed an election to operate as a business development company ("BDC") under Section 54(a) of the Investment Company Act. As a result of FCVL's election to operate as a BDC, the Commission, on its own motion, deregistered the company in February 1996. See First Colonial Ventures Ltd., Investment Company Act Rel. No. 21681 (Jan. 17, 1996) (notice) and Investment Company Act Rel. No. 21750 (Feb. 13, 1996) (order). On July 21, 1999, FCVL merged with Nova Communications Ltd. On July 29, 1999, FCVL filed a Notification of Withdrawal as a BDC pursuant to Section 54(c) of the Investment Company Act. Effective August 11, 1999, FCVL changed its name to Nova Communications Ltd. The stock is now quoted on the NASD's over-the-counter Bulletin Board under the symbol "NCVM."

2. Murray W. Goldenberg ("Goldenberg"), is 59 years old and resides in Playa del Rey, California. He is the President, Chief Executive Officer and a Director of FCVL. During the period that FCVL operated as a BDC, Goldenberg was the Chairman of the Board, President, Secretary, Treasurer and a Director of FCVL and controlled the management and operations of FCVL.

B. FACTS

1. In 1995 and 1996, FCVL engaged in four transactions: (1) in July 1995, FCVL acquired a 50% interest in First Colonial Funds, an investment company; (2) in July 1995, FCVL acquired a lease in the oil and gas rights for property located in Texas; (3) in August 1995, FCVL acquired a 25% interest in Colonial Funds, a Bahamian company; and (4) in November 1996, FCVL acquired certain assets and liabilities of Acclaim Studios, LLC.

2. At the time that FCVL made each of the four acquisitions described above, FCVL was operating as a BDC pursuant to its election under section 54(a) of the Investment Company Act. Section 55(a) of the Investment Company Act prohibited FCVL, as a BDC, from acquiring any assets other than "BDC Qualifying Assets," as defined herein, or noninvestment assets used in the operation of its business, unless at least 70% of FCVL's total

assets, exclusive of noninvestment assets used in the operation of its business, were BDC Qualifying Assets. BDC Qualifying Assets are defined as: (a) securities issued by an "eligible portfolio company," as defined by Section 2(a)(46) of the Investment Company Act; (b) securities of an issuer that is not an eligible portfolio company only because of its failure to meet certain specified criteria (a "special portfolio company"); (c) securities acquired in exchange for or distributed with respect to securities issued by eligible portfolio companies or special portfolio companies or pursuant to the exercise of options relating to such securities; or (d) cash or cash items, Government securities, or high quality debt securities maturing in a year or less. Under Sections 2(a)(46) and 55(a), neither an eligible portfolio company nor a special portfolio company may be organized under the laws of a jurisdiction outside the United States or be an investment company, as defined in Section 3 of the Investment Company Act (other than a small business investment company licensed by the Small Business Administration and which is a wholly-owned subsidiary of the BDC) or be a company that would be an investment company except for the exclusions in Section 3(c) of the Investment Company Act.

3. At the time that FCVL made each of the four acquisitions described above, less than 70% of FCVL's total assets, exclusive of noninvestment assets used in the operation of its business, were BDC Qualifying Assets. None of the four acquisitions was a BDC Qualifying Asset or a noninvestment asset used in the operation of FCVL's business. The First Colonial Funds securities were issued by an investment company; the Colonial Funds securities were issued by a company organized under the laws of the Bahamas; and the oil and gas rights and the assets of Acclaim Studios, LLC were not securities. Therefore, each of the four acquisitions was unlawful under Section 55(a).

4. Goldenberg made all the decisions regarding the investments made by FCVL.

5. Section 23(b) of the Investment Company Act prohibited FCVL from selling any common stock of which it was the issuer at a price below the net asset value of such stock, exclusive of any distributing discount or commission. In January 1996, FCVL issued over three million FCVL shares to Colonial Funds for no consideration. FCVL's net asset value per share was $.53 in 1995 and $.31 in 1996. By issuing the shares for no consideration, FCVL issued the shares below net asset value.[1]

6. As a BDC, FCVL was required to maintain certain books and records regarding securities transactions, as more fully described in Section 31 of the Investment Company Act and Rule 31a-1 thereunder. FCVL failed to maintain required journals or other records of original entry, containing an itemized daily record of all purchases and sales of securities (including sales and redemptions of its own securities) and all receipts and deliveries of securities. In addition, FCVL failed to maintain, as required, separate ledger accounts for securities in transfer, securities in physical possession, securities borrowed and securities loaned. Goldenberg made all the decisions regarding the books and records maintained by FCVL.

7. After becoming a BDC, FCVL offered and sold securities pursuant to Regulation E, an exemption from registration for securities available to BDCs. Between August 1995 and December 1997, FCVL filed six

notifications on Form 1-E with the Commission relating to the offers and sales of its common stock pursuant to Regulation E. FCVL filed these notifications on August 31, 1995, September 29, 1995, October 20, 1995, February 12, 1996, February 21, 1996 and December 30, 1997. FCVL sold common stock in connection with the first five notifications. Under the provisions of Regulation E, FCVL was required to include certain information in its offering circulars. FCVL's offering circulars used in connection with the first five offerings did not include either a balance sheet as of a date within 90 days prior to the date of filing or income statements up to the date of the balance sheet, both of which are required by Regulation E. The offering circulars filed in 1996 also did not include income statements for the previous fiscal year. FCVL was also required to file reports of its sales on Form 2-E within thirty days after the end of each six-month period following the date of the original offering circular and to make a final report upon the completion or termination of each offering. FCVL failed to file reports of its sales on Form 2-E with regard to all six offerings and failed to file final reports upon the termination of each of these offerings.

8. Goldenberg made all the decisions regarding the securities offerings made by FCVL. Goldenberg signed five of the six notifications on Form 1-E filed by FCVL.

9. FCVL did not file a registration statement with the Commission before the sale of the securities described in paragraph III.B.7.

10. As a BDC, FCVL was required to file annual reports on Form 10-K within 90 days after the end of the fiscal year and quarterly reports on Form 10-Q within 45 days after the end of the first three quarters of the fiscal year. Since becoming a BDC, FCVL failed to file certain periodic reports: the Forms 10-Q for 1996, the Forms 10-Q for 1998 and the Form 10-K for 1998. FCVL also failed to file the following periodic reports on a timely basis: the
Form 10-Q for September 30, 1995, the Form 10-K for 1995, the Form 10-K for 1996, each of the Forms 10-Q for 1997, the Form 10-K for 1997 and each of the Forms 10-Q for 1999.

11. Goldenberg was responsible for FCVL's periodic filings and signed all of FCVL's periodic reports.

12. Goldenberg has submitted a sworn financial statement and other evidence and has asserted his financial inability to pay a civil penalty. The Commission has reviewed the sworn financial statement and other evidence provided by Goldenberg and has determined that Goldenberg does not have the financial ability to pay a civil penalty.

C. VIOLATIONS

1. By virtue of the conduct described in paragraphs III.B.1. through III.B.6., FCVL violated Sections 23(b), 31(a) and 55(a) of the Investment Company Act and Rule 31a-1 thereunder.

2. By virtue of the conduct described in paragraphs III.B.7. through III.B.9., FCVL violated Sections 5(a) and 5(c) of the Securities Act.

SECURITIES ACT OF 1933 Release No. 7849 / April 10, 2000                    Page 5 of 6

3. By virtue of the conduct described in paragraph III.B.10 and III.B.11., FCVL violated Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder.

4. By virtue of the conduct described in paragraphs III.B.1. through III.B.6., Goldenberg caused and willfully aided and abetted FCVL's violations of Sections 23(b), 31(a) and 55(a) of the Investment Company Act and Rule 31a-1 thereunder.

5. By virtue of the conduct described in paragraphs III.B.7. through III.B.9., Goldenberg willfully violated Sections 5(a) and 5(c) of the Securities Act.

6. By virtue of the conduct described in paragraphs III.B.10 and III.B.11., Goldenberg caused and willfully aided and abetted FCVL's violations of Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder.

IV.

Based on the foregoing, the Commission deems it appropriate to accept the Offer of Settlement submitted by FCVL and appropriate and in the public interest to accept the Offer of Settlement submitted by Goldenberg.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Pursuant to Section 9(f) of the Investment Company Act, Section 8A of the Securities Act and Section 21C of the Exchange Act, FCVL cease and desist from committing or causing any violation and any future violation of Sections 23(b), 31(a) and 55(a) of the Investment Company Act and Rule 31a-1 thereunder, Sections 5(a) and 5(c) of the Securities Act and Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder;

2. Pursuant to Section 9(f) of the Investment Company Act, Section 8A of the Securities Act and 21C of the Exchange Act, Goldenberg cease and desist from
(1) causing any violation and any future violation of Sections 23(b), 31(a) and 55(a) of the Investment Company Act and Rule 31a-1 thereunder and Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder; and (2) committing or causing any violation and any future violation of Sections 5(a) and 5(c) of the Securities Act; and

3. Pursuant to Section 9(b) of the Investment Company Act, Goldenberg is prohibited from serving or acting as an employee, officer or director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter.

4. The Division of Enforcement ("Division") may, at any time following the entry of this Order, petition the Commission to: (1) reopen this matter to consider whether Goldenberg provided accurate and complete financial information at the time such representations were made; (2) determine the amount of the civil penalty to be imposed; and (3) seek any additional remedies that the Commission would be authorized to impose in this proceeding if Goldenberg's offer of settlement had not been accepted. No

other issues shall be considered in connection with this petition other than whether the financial information provided by Goldenberg was fraudulent, misleading, inaccurate or incomplete in any material respect, the amount of civil penalty to be imposed and whether any additional remedies should be imposed. Goldenberg may not, by way of defense to any such petition, contest the findings in this Order or the Commission's authority to impose any additional remedies that were available in the original proceeding.

By the Commission.

Jonathan G. Katz

Secretary

---

### Footnotes

1 None of the exceptions set forth in Sections 23(b) and 63(2) of the Investment Company Act applied with respect to the issuance of these shares by FCVL.

*http://www.sec.gov/litigation/admin/33-7849.htm*

---