EXHIBIT 4

# EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") is entered into as of December 1, 2004 (the "Effective Date") between Attest Systems, a division of Interactive Holding Group, Inc. a California corporation with its principal offices located at 55 Leveroni Court, Novato, California, 94949 (the "Company"), and Herbert M. Gottlieb, a resident of 10 Indian Trail Court, Novato, California, 94947 ("Employee").

In consideration of the promises and the terms and conditions set forth in this Agreement, the parties agree as follows:

1. **Position** During the term of this Agreement, Company will employ Employee, and Employee will serve Company in the capacity of President of the Attest Systems division Company. Employee will report directly to Murray Goldenberg.

2. **Duties** Employee will have responsibility for directing the sales and partner programs of the Company, provided that the Company shall not, without Employee's express written consent, require Employee to be based anywhere other than in Novato, California, except for required travel on the Company's business to an extent substantially consistent with travel required of persons who hold similar positions or have similar duties with the Company.

3. **Term of Employment**

    3.1. **Initial Term** The Company agrees to continue Employee's employment, and Employee agrees to remain in the employ of the Company, for a period of one (1) year after the Effective Date unless Employee's employment is earlier terminated pursuant to the provisions of this Agreement.

    3.2. **Renewal** The term of Employee's employment shall be extended automatically, without further action of either party, as of one (1) year after the Effective Date and on each succeeding anniversary of that date, for terms of one (1) year, unless on or before ninety (90) days prior to the last day of the term of Employee's employment or any extension thereof, the Company or Employee shall notify the other in writing of its intention not to renew Employee's employment, in which case Employee's employment shall terminate at the end of the original term or any extension thereof. No notice of non-renewal may be given by either party after a renewal term has commenced. Any such renewal shall be upon such terms and conditions set forth herein, unless otherwise agreed between the Company and Employee. The notice of non-renewal by either party shall in no way constitute a breach of this Agreement.

    3.3. **Termination of Agreement** This Agreement shall terminate on the date on which all obligations of the parties hereto have been satisfied.

4. **Compensation and Benefits**

    4.1. **Hiring Bonus** Employee will be paid a Hiring Bonus in the amount of One Hundred Twenty-Five Thousand Dollars ($125,000). Hiring Bonus will be evidenced by a Promissory Note (the "Note"), secured by the assets of the Company payable to

employee. The Note shall be payable in increments of a minimum of $2,500. per month and interest at six percent (6%) per annum, less applicable withholding taxes. Company shall have the right to prepay a portion or all of the Note at any time at their discretion.

This Agreement together with the Secured Promissory Note shall be viewed as a single document.

4.2. **Base Salary** The Company agrees to pay Employee a minimum annual base salary of Ninety Thousand Dollars ($90,000) for the year of 2005, less applicable withholding taxes, or in the event of any portion of a year, a pro rata amount of such annual salary. Employee's salary will be payable as earned in accordance with Company's customary payroll practice.

4.3. **Sales Commissions** The Company agrees to pay Employee Sales Commissions on Cash Receipts based upon the following schedule. Cash Receipts are defined as funds received by the company from any source including but not limited to license and maintenance sales, training fees, or any other funds received by the Company. Cash Receipts do not include funds received as reimbursement of travel or related expenses.

| Cash Receipts | Commissions (Prior to Full Payment of Note in Section 4.1) | Commissions (Subsequent to Full Payment of Note in Section 4.1) |
|---|---|---|
| $0.00 -- $60,000 | 4% | 4% |
| $60,001 -- $100,000 | 10% | 6% |
| Over $100,000 | 25% | 8% |

Commission earned will be paid as follows:

So long as monthly Cash Receipts exceed $60,000 commissions will be paid on the next payday following the end of each calendar month. Should Cash Receipts fall below $60,000 those commissions earned shall be accrued but not paid until such time as the monthly Cash Receipts exceed $60,000.

Commissions, including accrued commissions, shall be paid in any given month so long as the amount so paid, when subtracted from Cash Receipts, will not reduce the Cash Receipts for that month, in which the commissions are paid, below $60,000.

4.4. **Stock Bonus** Employee will earn bonuses in the form of stock in Nova Communications Ltd. Shares to be issued jointly to Employee and Sandra Gottlieb yearly by October 15th based on performance of the Company for the previous fiscal year or part thereof as follows: Number of shares = (4.5 times the Net Earnings Before Taxes Depreciation and Amortization (EBITDA) of the Attest Systems

Initials:

Employment Agreement
Herbert M. Gottlieb

division. Price of shares to be equal to the average bid price quoted on the OCBB or other exchange for the 90 days prior to the date of issuance.

Such Stock issuance shall commence on October 15, 2005 (for performance during the fiscal year ended June 30, 2005) and continue for the years ended June 30, 2006 and June 30, 2007 and 2008. For the years subsequent to June 30, 2005, the stock issuance shall occur no later than the date on which the company is required to file the appropriate SEC returns for the periods referred to above.

4.5. **Additional Benefits** Employee will be eligible to participate in Company's employee benefit plans of general application, including without limitation pension and profit-sharing plans, deferred compensation, supplemental retirement or excess-benefit plans, stock option, incentive or other bonus plans, life, health, disability, and dental insurance programs, paid vacations and sabbatical leave plans, and similar plans or programs, in accordance with the rules established for individual participation in any such plan; provided however that Company shall fully pay Employee and Employee's family's costs for life, health, disability and dental insurance programs. The Company shall furnish Employee with office space and such other facilities and services as shall be suitable to Employee's position and adequate for the performance of his duties.

Employee shall be entitled to annual vacation and sick leave in accordance with the company's vacation and PTO policy in effect from time to time.

4.6. **Expenses** The Company will reimburse Employee for all reasonable and necessary expenses incurred by Employee in connection with the Company's business expenses that are properly documented and accounted for in accordance with the policy of the Company. Any single expense in excess of $500 shall be approved in advance.

5. **Termination**

    5.1. **Events of Termination** This Agreement and Employee's employment with the Company shall terminate upon any one of the following:

    (a) the effective date of a written notice sent to Employee stating the Company's determination that it is terminating Employee for "Cause" as defined under Section 5.2 below ("Termination for Cause"), or

    (b) thirty (30) days after the effective date of a written notice sent to Employee stating the Company's determination that Employee has been unable to perform the essential functions of his job for a period of not less than six (6) consecutive months ("Termination for Disability"); or

    (c) Employee's death ("Termination Upon Death"); or

Initials:

Employment Agreement<br>Herbert M. Gottlieb

(d) thirty days after the effective date of a written notice sent to the Company stating Employee's determination of "Constructive Termination" by the Company, as defined under Section 7.3 below ("<u>Constructive Termination</u>"); or

(e) thirty (30) days after the effective date of a notice sent to Employee stating that the Company is terminating his employment, without cause, which notice can be given by the Company at any time after the Effective Date at the Company's sole discretion, for any reason or for no reason ("<u>Termination Without Cause</u>"); or

(f) the effective date of a notice sent to the Company from Employee stating that Employee is electing to terminate his employment with the Company ("<u>Voluntary Termination</u>").

(g) In the event that this Agreement and Employee's employment by the Company are terminated without cause other than at month end, Sales Commissions shall be calculated to the date of termination and Stock Bonuses shall continue to be earned by employee for the fiscal periods ended as defined in 4.3 above.

(h) In the event that this Agreement and Employee's employment by the Company are terminated for cause, sales commissions and stock bonuses shall be calculated to the date of termination..

5.2. **"Cause" Defined**  For purposes of this Agreement, "cause" for Employee's termination means:

(a) Employee's conviction, or entry of a plea of guilty or nolo contendre, in a court of competent jurisdiction for any crime which constitutes a felony;

(b) any willful act or acts of dishonesty undertaken by Employee and intended to result in substantial material gain or personal enrichment of Employee at the expense of the Company;

(c) any material act of gross misconduct which is materially and demonstrably injurious to the Company; or

(d) a willful breach by Employee of a material provision of this agreement which is not cured within 30 days after receipt of written notice from Company.

No act, or failure to act, by Employee shall be considered "willful" if done, or omitted to be done, by him in good faith and in the reasonable belief that his act or omission was in the best interest of the Company and/or required by applicable law.

5.3. **"Constructive Termination" Defined**  "Constructive Termination" shall mean:

(a) a material reduction in Employee's salary or benefits not agreed to by Employee; or

(b) a material change in Employee's responsibilities not agreed to by Employee; or

Initials:

Employment Agreement<br>Herbert M. Gottlieb

    (c) the Company's failure to comply with any material term of this Agreement which is not cured within 30 days after receipt of written notice from Employee; or

    (d) a "Change in Control" of the Company as defined as follows: a "Change in Control" means the occurrence of any of the following events: (i) a dissolution or liquidation of the Company, (ii) a merger or consolidation in which the Company is not the surviving corporation (other than a merger or consolidation with a wholly-owned subsidiary, a reincorporation of the Company in a different jurisdiction, or other transaction in which there is no substantial change in the shareholders of the Company or their relative stock holdings), (iii) a merger in which the Company is the surviving corporation but after which the shareholders of the Company immediately prior to such merger (other than any shareholder which merges with the Company in such merger, or which owns or controls another corporation which merges with the Company in such merger) cease to own their shares or other equity interests in the Company, or (iv) the sale of all or substantially all of the assets of the Company.

6. **Effect of Termination**

    6.1.  **Termination for Cause** In the event of termination of this Agreement and Employee's employment pursuant to Section 5.1(a), the Company shall pay to Employee the salary and benefits otherwise payable to Employee under Sections 4.2, 4.3 and 4.4 through the date of termination. Payments due under Section 4.1 and 4.3 shall continue until the Note and accrued interest is paid in full. Employee's rights under the Company's benefit plans of general application shall be determined under the provisions of those plans.

    6.2.  **Termination for Disability** In the event of any termination of this Agreement and Employee's employment by the Company pursuant to Section 7.1(b) or Section 7.1(f),

        (a) the Company shall immediately pay to Employee the compensation and benefits otherwise payable to Employee under Section 5 through the date of termination,

        (b) for three (3) months after the termination of Employee's employment, the Company shall continue to pay Employee (A) his base salary under Section 4.1 above at Employee's then-current salary payable on the Company's normal payroll dates during that period, and shall continue his benefits under Section 4.3 above, and

        (c) Employee shall receive other severance and disability payments as provided in the Company's standard benefit plans.

    6.3.  **Termination Upon Death** In the event of termination of this Agreement and Employee's employment by the Company pursuant to Section 6.1(c), all obligations of the Company and Employee shall cease, except the Company shall immediately

Initials: *[signatures]*

Employment Agreement<br>Herbert M. Gottlieb

pay to Employee (or to Employee's estate) the compensation and benefits otherwise payable to Employee under Section 5 through the date of termination.

6.4. **Constructive Termination or Termination Without Cause** In the event of any termination of this Agreement and Employee's employment by the Company pursuant to Section 5.1(d) or Section 5.1(e),

(a) for twelve (12) months after the termination of Employee's employment, the Company shall continue to pay Employee (A) his salary under Section 4.1 above at Employee's then-current salary, less applicable withholding taxes, payable on the Company's normal payroll dates during that period, and (B) shall continue his benefits under Section 4.3 above.

7. **Miscellaneous**

   7.1. **Arbitration**

   (a) The Company and Employee agree that any dispute or controversy arising out of, relating to, or in connection with this Agreement, or the interpretation, validity, construction, performance, breach, or termination thereof, shall be settled by binding arbitration, unless otherwise required by law, to be held in Marin County, California in accordance with the National Rules for Resolution of Employment Disputes then in effect of the American Arbitration Association (the "Rules"). The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive, and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The arbitrator is hereby authorized to award to the prevailing party the costs (including reasonable attorney's fees and expenses) of any such arbitration.

   (b) The arbitrator(s) shall apply California law to the merits of any dispute or claim, without reference to the rules of conflicts of law. Employee hereby consents to the personal jurisdiction of the state and federal courts located in California for any action or proceeding arising from or relating to this Agreement or relating to any arbitration in which the parties are participants.

   (c) The parties may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other interim or conservatory relief, as necessary, without breach of this arbitration agreement and without abridgement of the powers of the arbitrator.

   (d) Employee understands that this Agreement does not prohibit Employee from pursuing an administrative claim with a local, state or federal administrative body such as the Department of Fair Employment and Housing, the Equal Opportunity Commission or the workers' compensation board.

   (e) EMPLOYEE HAS READ AND UNDERSTANDS THIS SECTION 7.1 WHICH, DISCUSSES ARBITRATION. EMPLOYEE UNDERSTANDS

THAT BY SIGNING THIS AGREEMENT, EMPLOYEE AGREES, EXCEPT AS PROVIDED IN SECTION 7.1(d), TO SUBMIT ANY CLAIMS ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT, OR THE INTERPRETATION, VALIDITY, CONSTRUCTION, PERFORMANCE, BREACH OR TERMINATION THEREOF TO BINDING ARBITRATION, UNLESS OTHERWISE REQUIRED BY LAW, AND THAT THIS ARBITRATION CLAUSE CONSTITUTES A WAIVER OF EMPLOYEE'S RIGHT TO A JURY TRIAL AND RELATES TO THE RESOLUTION OF ALL DISPUTES RELATING TO ALL ASPECTS OF EMPLOYEE'S RELATIONSHIP WITH THE COMPANY, INCLUDING BUT NOT LIMITED TO, CLAIMS OF HARRASSMENT, DISCRIMINATION, WRONGFUL TERMINATION AND ANY STATUTORY CLAIMS.

7.2. **Severability** If any provision of this Agreement shall be found by any arbitrator or court of competent jurisdiction to be invalid or unenforceable, then the parties hereby waive such provision to the extent that it is found to be invalid or unenforceable and to the extent that to do so would not deprive one of the parties of the substantial benefit of its bargain. Such provision shall, to the extent allowable by law and the preceding sentence, be modified by such arbitrator or court so that it becomes enforceable and, as modified, shall be enforced as any other provision hereof, all the other provisions continuing in full force and effect.

7.3. **No Waiver** The failure by either party at any time to require performance or compliance by the other of any of its obligations or agreements shall in no way affect the right to require such performance or compliance at any time thereafter. The waiver by either party of a breach of any provision hereof shall not be taken or held to be a waiver of any preceding or succeeding breach of such provision or as a waiver of the provision itself. No waiver of any kind shall be effective or binding, unless it is in writing and is signed by the party against whom such waiver is sought to be enforced.

7.4. **Assignment** This Agreement and all rights hereunder are personal to Employee and may not be transferred or assigned by Employee at any time. The Company may assign its rights, together with its obligations hereunder, to any parent, subsidiary, affiliate or successor, or in connection with any sale, transfer or other disposition of all or substantially all of its business and assets, provided, however, that any such assignee assumes the Company's obligations hereunder.

7.5. **Withholding** All sums payable to Employee hereunder shall be reduced by all federal, state, local and other withholding and similar taxes and payments required by applicable law.

7.6. **Entire Agreement** This Agreement, including the Secured Note Payable, attached hereto as Exhibit "A", constitutes the entire and only agreement between the parties relating to employment of Employee with the Company, and this Agreement

Initials: _____ / _____

Employment Agreement<br>Herbert M. Gottlieb

supersedes and cancels any and all previous contracts, arrangements or understandings with respect thereto.

7.7. **Amendment** This Agreement may be amended, modified, superseded, cancelled, renewed or extended only by an agreement in writing executed by both parties hereto.

7.8. **Notices** All notices and other communications required or permitted under this Agreement shall be in writing and hand delivered, sent by registered first class mail, postage pre-paid, or sent by nationally recognized express courier service. Such notices and other communications shall be effective upon receipt if hand delivered, five (5) days after mailing if sent by mail, and one (1) day after dispatch if sent by express courier, to the following addresses, or such other addresses as any party shall notify the other parties:

If to the Company:
Attest Systems
55 Leveroni, Court
Novato, CA 94949
Attention: Murray Goldenberg

If to Employee:
Herbert M. Gottlieb
10 Indian Trail Court
Novato, CA 94947

7.9. **Binding Nature** This Agreement shall be binding upon, and inure to the benefit of, the successors and personal representatives of the respective parties hereto.

7.10. **Headings** The headings contained in this Agreement are for reference purposes only and shall in no way affect the meaning or interpretation of this Agreement. In this Agreement, the singular includes the plural, the plural included the singular, the masculine gender includes both male and female referents, and the word "or" is used in the inclusive sense.

7.11. **Counterparts** This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which, taken together, constitute one and the same agreement.

7.12. **Governing Law** This Agreement and the rights and obligations of the parties hereto shall be construed in accordance with the laws of the State of California, without giving effect to the principles of conflict of laws.

7.13. **Attorneys' Fees** In the event of any claim, demand or suit arising out of or with respect to this Agreement, the prevailing party shall be entitled to reasonable costs and attorneys' fees, including any such costs and fees upon appeal.

Initials: *[signatures]*

Employment Agreement
Herbert M. Gottlieb

7.14. **Opportunity to Consult with Counsel** Employee acknowledges that he has had the opportunity to consult with his attorney prior to signing this Agreement if Employee chooses to do so.

7.15. **Authority to Sign** Each party herein has the authority to sign this document on behalf of the person or entity for whom it is signing if signing in a representative capacity.

IN WITNESS WHEREOF, the Company and Employee have executed this Agreement as of the date first above written.

INTERACTIVE HOLDING GROUP, INC.

By: _____        By: _____
Murray Goldenberg                              Herbert M. Gottlieb