EXHIBIT 7

SECURITIES ACT OF 1933 Release No. 7849 / April 10, 2000

Page 1 of 6



Home | Previous Page

U.S. Securities and Exchange Commission

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

SECURITIES ACT OF 1933
Release No. 7849 / April 10, 2000

SECURITIES EXCHANGE ACT OF 1934
Release No. 42656 / April 10, 2000

INVESTMENT COMPANY ACT OF 1940
Release No. 24384 / April 10, 2000

ADMINISTRATIVE PROCEEDING
File No. 3-10184

| In the Matter of<br><br>NOVA COMMUNICATIONS LTD., formerly known as FIRST COLONIAL VENTURES LTD., and<br>MURRAY W. GOLDENBERG,<br>Respondents. | ORDER INSTITUTING PUBLIC ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDING, MAKING FINDINGS AND IMPOSING A CEASE-AND-DESIST ORDER AND SANCTIONS |
|---|---|

I.

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that a public cease-and-desist proceeding pursuant to Section 9(f) of the Investment Company Act of 1940 ("Investment Company Act"), Section 8A of the Securities Act of 1933 ("Securities Act") and Section 21C of the Securities Exchange Act of 1934 ("Exchange Act") be instituted against Nova Communications Ltd., formerly known as First Colonial Ventures Ltd. (hereinafter referred to as "FCVL"), and Murray W. Goldenberg ("Goldenberg"); and that a public administrative proceeding be instituted against Goldenberg pursuant to Section 9(b) of the Investment Company Act.

II.

In anticipation of the institution of this proceeding, FCVL and Goldenberg have each submitted an Offer of Settlement, each of which the Commission has determined to accept. Solely for the purpose of this proceeding and any other proceeding brought by or on behalf of the Commission or in which the Commission is a party, and without admitting or denying the findings contained herein (except that FCVL and Goldenberg admit the findings in III.A.1. and III.A.2. below and the jurisdiction of the Commission over each of them and over the subject matter of this proceeding), FCVL and

Goldenberg hereby each consent to the entry of this Order Instituting Public Administrative and Cease-and-Desist Proceeding, Making Findings and Imposing a Cease-and-Desist Order and Sanctions ("Order") set forth below.

Accordingly, **IT IS ORDERED** that a proceeding pursuant to Sections 9(b) and 9(f) of the Investment Company Act, Section 8A of the Securities Act and 21C of the Exchange Act be, and hereby is, instituted.

III.

On the basis of this Order and the Offers of Settlement submitted by FCVL and Goldenberg, the Commission finds that:

A. RESPONDENTS

1. Nova Communications Ltd., formerly known as First Colonial Ventures Ltd. (hereinafter referred to as "FCVL"), a Nevada corporation, is located in Los Angeles, California. In January 1995, FCVL registered with the Commission as a closed-end investment company. In June 1995, FCVL filed an election to operate as a business development company ("BDC") under Section 54(a) of the Investment Company Act. As a result of FCVL's election to operate as a BDC, the Commission, on its own motion, deregistered the company in February 1996. See First Colonial Ventures Ltd., Investment Company Act Rel. No. 21681 (Jan. 17, 1996) (notice) and Investment Company Act Rel. No. 21750 (Feb. 13, 1996) (order). On July 21, 1999, FCVL merged with Nova Communications Ltd. On July 29, 1999, FCVL filed a Notification of Withdrawal as a BDC pursuant to Section 54(c) of the Investment Company Act. Effective August 11, 1999, FCVL changed its name to Nova Communications Ltd. The stock is now quoted on the NASD's over-the-counter Bulletin Board under the symbol "NCVM."

2. Murray W. Goldenberg ("Goldenberg"), is 59 years old and resides in Playa del Rey, California. He is the President, Chief Executive Officer and a Director of FCVL. During the period that FCVL operated as a BDC, Goldenberg was the Chairman of the Board, President, Secretary, Treasurer and a Director of FCVL and controlled the management and operations of FCVL.

B. FACTS

1. In 1995 and 1996, FCVL engaged in four transactions: (1) in July 1995, FCVL acquired a 50% interest in First Colonial Funds, an investment company; (2) in July 1995, FCVL acquired a lease in the oil and gas rights for property located in Texas; (3) in August 1995, FCVL acquired a 25% interest in Colonial Funds, a Bahamian company; and (4) in November 1996, FCVL acquired certain assets and liabilities of Acclaim Studios, LLC.

2. At the time that FCVL made each of the four acquisitions described above, FCVL was operating as a BDC pursuant to its election under section 54(a) of the Investment Company Act. Section 55(a) of the Investment Company Act prohibited FCVL, as a BDC, from acquiring any assets other than "BDC Qualifying Assets," as defined herein, or noninvestment assets used in the operation of its business, unless at least 70% of FCVL's total

assets, exclusive of noninvestment assets used in the operation of its business, were BDC Qualifying Assets. BDC Qualifying Assets are defined as: (a) securities issued by an "eligible portfolio company," as defined by Section 2(a)(46) of the Investment Company Act; (b) securities of an issuer that is not an eligible portfolio company only because of its failure to meet certain specified criteria (a "special portfolio company"); (c) securities acquired in exchange for or distributed with respect to securities issued by eligible portfolio companies or special portfolio companies or pursuant to the exercise of options relating to such securities; or (d) cash or cash items, Government securities, or high quality debt securities maturing in a year or less. Under Sections 2(a)(46) and 55(a), neither an eligible portfolio company nor a special portfolio company may be organized under the laws of a jurisdiction outside the United States or be an investment company, as defined in Section 3 of the Investment Company Act (other than a small business investment company licensed by the Small Business Administration and which is a wholly-owned subsidiary of the BDC) or be a company that would be an investment company except for the exclusions in Section 3(c) of the Investment Company Act.

3. At the time that FCVL made each of the four acquisitions described above, less than 70% of FCVL's total assets, exclusive of noninvestment assets used in the operation of its business, were BDC Qualifying Assets. None of the four acquisitions was a BDC Qualifying Asset or a noninvestment asset used in the operation of FCVL's business. The First Colonial Funds securities were issued by an investment company; the Colonial Funds securities were issued by a company organized under the laws of the Bahamas; and the oil and gas rights and the assets of Acclaim Studios, LLC were not securities. Therefore, each of the four acquisitions was unlawful under Section 55(a).

4. Goldenberg made all the decisions regarding the investments made by FCVL.

5. Section 23(b) of the Investment Company Act prohibited FCVL from selling any common stock of which it was the issuer at a price below the net asset value of such stock, exclusive of any distributing discount or commission. In January 1996, FCVL issued over three million FCVL shares to Colonial Funds for no consideration. FCVL's net asset value per share was $.53 in 1995 and $.31 in 1996. By issuing the shares for no consideration, FCVL issued the shares below net asset value.[1]

6. As a BDC, FCVL was required to maintain certain books and records regarding securities transactions, as more fully described in Section 31 of the Investment Company Act and Rule 31a-1 thereunder. FCVL failed to maintain required journals or other records of original entry, containing an itemized daily record of all purchases and sales of securities (including sales and redemptions of its own securities) and all receipts and deliveries of securities. In addition, FCVL failed to maintain, as required, separate ledger accounts for securities in transfer, securities in physical possession, securities borrowed and securities loaned. Goldenberg made all the decisions regarding the books and records maintained by FCVL.

7. After becoming a BDC, FCVL offered and sold securities pursuant to Regulation E, an exemption from registration for securities available to BDCs. Between August 1995 and December 1997, FCVL filed six

notifications on Form 1-E with the Commission relating to the offers and sales of its common stock pursuant to Regulation E. FCVL filed these notifications on August 31, 1995, September 29, 1995, October 20, 1995, February 12, 1996, February 21, 1996 and December 30, 1997. FCVL sold common stock in connection with the first five notifications. Under the provisions of Regulation E, FCVL was required to include certain information in its offering circulars. FCVL's offering circulars used in connection with the first five offerings did not include either a balance sheet as of a date within 90 days prior to the date of filing or income statements up to the date of the balance sheet, both of which are required by Regulation E. The offering circulars filed in 1996 also did not include income statements for the previous fiscal year. FCVL was also required to file reports of its sales on Form 2-E within thirty days after the end of each six-month period following the date of the original offering circular and to make a final report upon the completion or termination of each offering. FCVL failed to file reports of its sales on Form 2-E with regard to all six offerings and failed to file final reports upon the termination of each of these offerings.

8. Goldenberg made all the decisions regarding the securities offerings made by FCVL. Goldenberg signed five of the six notifications on Form 1-E filed by FCVL.

9. FCVL did not file a registration statement with the Commission before the sale of the securities described in paragraph III.B.7.

10. As a BDC, FCVL was required to file annual reports on Form 10-K within 90 days after the end of the fiscal year and quarterly reports on Form 10-Q within 45 days after the end of the first three quarters of the fiscal year. Since becoming a BDC, FCVL failed to file certain periodic reports: the Forms 10-Q for 1996, the Forms 10-Q for 1998 and the Form 10-K for 1998. FCVL also failed to file the following periodic reports on a timely basis: the
Form 10-Q for September 30, 1995, the Form 10-K for 1995, the Form 10-K for 1996, each of the Forms 10-Q for 1997, the Form 10-K for 1997 and each of the Forms 10-Q for 1999.

11. Goldenberg was responsible for FCVL's periodic filings and signed all of FCVL's periodic reports.

12. Goldenberg has submitted a sworn financial statement and other evidence and has asserted his financial inability to pay a civil penalty. The Commission has reviewed the sworn financial statement and other evidence provided by Goldenberg and has determined that Goldenberg does not have the financial ability to pay a civil penalty.

C. VIOLATIONS

1. By virtue of the conduct described in paragraphs III.B.1. through III.B.6., FCVL violated Sections 23(b), 31(a) and 55(a) of the Investment Company Act and Rule 31a-1 thereunder.

2. By virtue of the conduct described in paragraphs III.B.7. through III.B.9., FCVL violated Sections 5(a) and 5(c) of the Securities Act.

3. By virtue of the conduct described in paragraph III.B.10 and III.B.11., FCVL violated Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder.

4. By virtue of the conduct described in paragraphs III.B.1. through III.B.6., Goldenberg caused and willfully aided and abetted FCVL's violations of Sections 23(b), 31(a) and 55(a) of the Investment Company Act and Rule 31a-1 thereunder.

5. By virtue of the conduct described in paragraphs III.B.7. through III.B.9., Goldenberg willfully violated Sections 5(a) and 5(c) of the Securities Act.

6. By virtue of the conduct described in paragraphs III.B.10 and III.B.11., Goldenberg caused and willfully aided and abetted FCVL's violations of Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder.

IV.

Based on the foregoing, the Commission deems it appropriate to accept the Offer of Settlement submitted by FCVL and appropriate and in the public interest to accept the Offer of Settlement submitted by Goldenberg.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Pursuant to Section 9(f) of the Investment Company Act, Section 8A of the Securities Act and Section 21C of the Exchange Act, FCVL cease and desist from committing or causing any violation and any future violation of Sections 23(b), 31(a) and 55(a) of the Investment Company Act and Rule 31a-1 thereunder, Sections 5(a) and 5(c) of the Securities Act and Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder;

2. Pursuant to Section 9(f) of the Investment Company Act, Section 8A of the Securities Act and 21C of the Exchange Act, Goldenberg cease and desist from
(1) causing any violation and any future violation of Sections 23(b), 31(a) and 55(a) of the Investment Company Act and Rule 31a-1 thereunder and Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder; and (2) committing or causing any violation and any future violation of Sections 5(a) and 5(c) of the Securities Act; and

3. Pursuant to Section 9(b) of the Investment Company Act, Goldenberg is prohibited from serving or acting as an employee, officer or director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter.

4. The Division of Enforcement ("Division") may, at any time following the entry of this Order, petition the Commission to: (1) reopen this matter to consider whether Goldenberg provided accurate and complete financial information at the time such representations were made; (2) determine the amount of the civil penalty to be imposed; and (3) seek any additional remedies that the Commission would be authorized to impose in this proceeding if Goldenberg's offer of settlement had not been accepted. No

other issues shall be considered in connection with this petition other than whether the financial information provided by Goldenberg was fraudulent, misleading, inaccurate or incomplete in any material respect, the amount of civil penalty to be imposed and whether any additional remedies should be imposed. Goldenberg may not, by way of defense to any such petition, contest the findings in this Order or the Commission's authority to impose any additional remedies that were available in the original proceeding.

By the Commission.

Jonathan G. Katz

Secretary

---

**Footnotes**

1 None of the exceptions set forth in Sections 23(b) and 63(2) of the Investment Company Act applied with respect to the issuance of these shares by FCVL.

http://www.sec.gov/litigation/admin/33-7849.htm

---

# Sommers & Schwartz, LLP

THE SACRAMENTO TOWER
550 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104

Tel: (415) 955-0925         www.SommersSchwartz.com         Fax (415) 955-0927

July 18, 2007

<u>Via Hand Delivery</u>

Herbert Gottlieb
SWIdent, Inc.
10 Indian Trail Court
Novato, CA 94947

    Re:    *Nacio Systems, Inc v. Gottlieb, et al.*
            U.S. District Court, N.D. CA. Case No. C 07 3481 PJH

Dear Mr. Gottlieb:

    This office represents Nacio Systems, Inc. in the above-listed lawsuit against you and your corporation, SWIdent, LLC. This package contains the following documents:

1. **Temporary Restraining Order re: Protection of Evidence;**
2. Summons on SWIdent and Gottlieb;
3. Complaint;
4. Application For Temporary Restraining Order re: Protection of Evidence and Copying;
5. Application For Temporary Restraining Order re: Copyright Infringement;
6. Declaration of Carey Daly, Nacio Senior Vice President;
7. Declaration of Murray Goldenberg, Nacio CFO;
8. Declaration of Mikol Westling, Nacio Director of Operations;
9. Declaration of Betz Burkart, Nacio GASP Project Lead Engineer;
10. Declaration of Dominic Finn, Nacio Facilities Engineer;
11. Declaration of Peter Garza, Evident Data, Inc.;
12. Declaration of Frank Sommers, Nacio counsel;
13. Memorandum of Points and Authorities in Support of Ex Parte TRO and Second TRO;
14. Temporary Restraining Order (<u>Without Prior Notice</u>) to Preserve Evidence and Order to Show Cause re Preliminary Injunction (Proposed);
15. Proposed Temporary Restraining Order (2) Regarding Use of Trade Secrets and Copyright Infringement, and Order to Show Cause re: Preliminary Injunction;

16. Civil Cover Sheet;
17. U.S. District Court Northern California ECF Registration Information Handout;
18. Order Setting Case Management Conference;
19. Letter dated July 5, 2007 to Clerk of US District Court re: Declination of Magistrate Judge;
20. Declination to Proceed Before a Magistrate Judge and Request For Reassignment to a United States District Judge;
21. Reassignment Order;
22. Certification Pursuant to Fed. R. Civ. P. 7.1 and Civ. L.R. 3-16; and
23. Letter dated July 13, 2007 to Judge Hamilton re: TRO.
24. Financial Pacific Insurance Company Bond

**As noted above, this package contains a Temporary Restraining Order ("TRO") which prohibits you or SWIdent, or any of your agents or employees, from taking any steps to alter or destroy a wide range of information on your computer systems, hard drives, flash drives, personal data assistants and all other electronic storage equipment, as well as from contacting your internet service provider(s) and attempting to remove, alter, delete or destroy information relating to the subjects listed in the Temporary Restraining Order. Please review the TRO carefully to be sure you understand its exact terms.**

As you are well aware, the normal operation of computer systems can alter or destroy data by virtue of the systems' file storage algorithms that overwrite data on unallocated file space. You are advised that the Court's Order prohibits such actions. To the extent that complying with the Order until the August 1st hearing date described in the Order presents any difficulties for either you individually or SWIdent, LLC's business, plaintiff makes the following offer: plaintiff will hire a third-party forensic investigation service to make immediate mirror images of all the hard drives and storage information reached by the Temporary Restraining Order. This information will be kept sequestered from plaintiff pending the court order on the appropriate scope of the investigation of their contents. After the copies are made, your expert will be permitted to look at the copies for purposes of preparing any arguments about the proper scope of discovery.

Taking this step will avoid subsequent charges that you have taken steps to conceal or alter information in defiance of the Order during the period between today and the hearing on August 1st. Please contact me immediately if you wish to avail yourself of this offer. The service indicates that it takes approximately 1-2 hours per hard drive to create such a mirror images.

Very truly yours,

Frank F. Sommers

FFS/tmc
Enclosure

C:\Document\Nacio\Correspondence\Gottlieb 07 18 07.wpd