MARK J. RICE (SBN 124934)
McNEIL, SILVEIRA, RICE & WILEY
55 Professional Center Parkway, Suite A
San Rafael, CA 94903
Telephone: (415) 472-3434
Facsimile: (415) 472-1298

Attorneys for Defendant HERBERT M. GOTTLIEB

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NACIO SYSTEMS, INC., a Nevada Corporation, | Case No. C 07 3481 PJH |
| Plaintiff, | DECLARATION OF DARYL FRAHM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER (<u>WITHOUT PRIOR NOTICE</u>) TO PRESERVE EVIDENCE AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION |
| vs. | |
| HERBERT M. GOTTLIEB, an individual; SWIDENT, LLC, a California Limited Liability Corporation, | |
| Defendant. | Date: August 1, 2007<br>Time: 9:00 a.m.<br>Crtrm: 3, 17th Floor |

I, DARYL FRAHM, declare:

1. Last year and at all material times, I was in management at a company called PS'Soft, Inc. which is a enterprise software company. At the time, PS-Soft was not and is not a competitor of Attest, Nacio or GASP.

2. In early 2006, PS'Soft was selling a software product that worked in conjunction with Microsoft's System Management Server ("SMS") product line. The PS'Soft software product named "SW Library" is sold to large corporations to help in the evaluation of valid software licenses

1
DECLARATION OF DARYL FRAHM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER (<u>WITHOUT PRIOR NOTICE</u>) TO PRESERVE EVIDENCE AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

in the corporate environment by performing a software license recognition screening algorithm. PS'Soft was evaluating new methods and potential opportunities to enhance the performance of SW Library. As part of that research, on our own we came across a product, in the market place known as "GASP" which we learned was sold by the Attest Division of Nacio Systems, Inc. As part of that search, we located the Attest phone number and ended up speaking with Herb Gottlieb, who I understood at the time was either the President of the Attest Division or had recently become a consultant only to Attest. I inquired as to whether or not PS'Soft could evaluate GASP and the potential for a working relationship between the Nacio/Attest and PS'Soft. Mr. Gottlieb referred me to a Mr. Murray Goldenberg whom I understood to be the President or Chief Executive Officer of the company. Subsequently I met with both Mr. Gottlieb and Mr. Goldenberg; Mr. Gottlieb for the technical product evaluation and Mr. Goldenberg on the potential business relationship. Negotiations over a potential acquisition of GASP software by PS'Soft were with Mr. Goldenberg. After meeting with Mr. Goldenberg, PS'Soft determined that it was not in our best interest to do business with Murray Goldenberg particularly that the GASP product was not a good fit to help solve the product performance issues that we were working on for SW Library and as a product fit for our company. The following are thought processes and reasons:

    a.    GASP was a product more oriented to small to medium size businesses. We were looking to solve a problem for the Fortune 1000 customer.

    b.    The amount of money that Mr. Goldberg asked for to acquire the GASP product was outside of the budget that was allocated to solve our product performance issue. We further felt that acquiring a product that had its own development issues would only compound our product issues not reduce them.

    c.    We understood from Mr. Goldenberg that he was in the process of refreshing his software through some Argentinean outsourcing company. This led to some concern about the liability and led me in turn to "Google" Mr. Goldenberg to evaluate how he would be as a strategic business partner. I had not felt personal comfort with Mr. Goldenberg and was not sure that I trusted him. It was just a feeling and not a good one. My instincts led me to do some background research on Google and at that time I realized he had had some run-in with the Securities and Exchange Commission. At that point, I concluded that acquiring GASP would not be in the best interest of

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS



1. PS'Soft and was the wrong product/solution to solve our product performance issue and that I was not interested in working with Mr. Goldenberg.

3. At no time did Mr. Gottlieb seek to dissuade me from working with Attest or Mr. Goldenberg. On the contrary, Mr. Gottlieb promoted the idea though his involvement was minimal and my negotiations were directly with Murray Goldenberg after Mr. Gottlieb passed me over to Mr. Goldenberg after my initial call.

4. Mr. Gottlieb did advise me that he was only a consultant to Nacio. I did ask him if he had a non-compete with Nacio and he advised me that he did not. I did thereafter ask him if he would perform or consider doing some consulting work for PS'Soft. The consulting did not involve the GASP product and my decision to ask Mr. Gottlieb to consult with PS'Soft on computer technology issues had nothing to do with my decision not to acquire the GASP software product for PS'Soft. If someone were to allege, as I understand Nacio now has, that Mr. Gottlieb interfered in any way with those negotiations I had with Mr. Goldenberg and Nacio, that would be untrue.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 31st day of July 2007 at America Fork, UTAH.

_____
DARYL FRAHM

---

3
DECLARATION OF DARYL FRAHM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER (WITHOUT PRIOR NOTICE) TO PRESERVE EVIDENCE AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS