RICHARD J. IDELL, ESQ. (SBN 069033)
ORY SANDEL, ESQ. (SBN 233204)
ELIZABETH J. REST, ESQ. (SBN 244756)
IDELL & SEITEL LLP
465 California Street, Suite 300
San Francisco, CA 94104
Telephone: (415) 986-2400
Facsimile: (415) 392-9259

Attorneys for Herbert Gottlieb, an individual and
SWIdent, LLC, a California Limited Liability Company
(erroneously sued as SWIdent, Inc., a limited liability corporation)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

NACIO SYSTEMS, INC., a Nevada Corporation,

Plaintiff,

v.

HERBERT GOTTLIEB and SWIdent, INC., a California limited liability corporation,

Defendants.

CASE NO. C 07 3481 PJH

**NOTICE OF MOTION AND MOTION FOR ORDER STAYING LITIGATION AND COMPELLING ARBITRATION OF ALL CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**

**FILED CONCURRENTLY:**
**DECLARATION OF HERBERT GOTTLIEB; DECLARATION OF RICHARD J. IDELL; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER**

**Date:** October 24, 2007
**Time:** 9:00 a.m.
**Place:** Courtroom 3, 17th Floor

**Complaint Filed:** July 3, 2007

**Honorable Phyllis J. Hamilton Presiding**

## TABLE OF CONTENTS


**Page(s)**

**TABLE OF AUTHORITIES** .......... ii

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER STAYING LITIGATION AND COMPELING ARBITRATION OF ALL CLAIMS** .......... 1

**I. ISSUES PRESENTED.** .......... 1

**II. FACTUAL BACKGROUND AND HISTORY.** .......... 2

**III. UNITED STATES DISTRICT COURT COMPLAINT FILED BY NACIO.** .......... 7

1. First Cause of Action – Copyright Infringement .......... 8
2. Second and Third Causes of Action – Misappropriation of Trade Secrets and Common Law Misappropriation .......... 8
3. Fourth Cause of Action – Breach of Fiduciary Duty and Breach of the Duty of Loyalty .......... 9
4. Fifth Cause of Action – Unfair Competition – Cal. Bus. & Prof. Code §17200 *et seq*. .......... 9
5. Sixth Cause of Action – Theft of Corporate Opportunity .......... 9
6. Seventh Cause of Action – Conversion .......... 10
7. All of the Causes of Action Contained in NACIO's Complaint are Subject to the Arbitration Provisions Contained in the Agreements of the Parties .......... 10

**IV. ARGUMENT** .......... 11

1. All of the Disputes Between the Parties are Subject to the Clear and Unequivocal Arbitration Clauses Set Forth in the Agreements Between the Parties .......... 11
2. The District Court Should Stay The Litigation Pending Outcome of the Arbitration .......... 13
3. The District Court Should Order this Controversy to Binding Arbitration .......... 14

**V. CONCLUSION - THE DISTRICT COURT SHOULD RESPECT THE AGREEMENTS OF THE PARTIES, STAY THIS ACTION AND ORDER THIS CASE TO BE RESOLVED BY BINDING ARBITRATION.** .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Pitney Bowes, Inc.*, 2005 U.S. Dist. LEXIS 37662 (D. Cal. 2005) ........ 11, 13, 14

*AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643 (U.S. 1986) ........ 11, 12

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126 (9th Cir. 2000) ........ 11, 12

*In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752 (5th Cir. 1993) ........ 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ........ 13

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ........ 12

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) ........ 11

**Statutes**

9 U.S.C.S. § 3 ........ 13

9 U.S.C.S. § 4 ........ 14

California Business and Professions Code §17200 ........ 7, 9

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on October 24, 2007, at 9:00 a.m. in the Courtroom of the Honorable United States District Court Judge Phyllis J. Hamilton, located in Courtroom 3, on the 17th Floor of 450 Golden Gate Avenue, San Francisco, California 94102, Defendants HERBERT GOTTLIEB ("GOTTLIEB") and SWIDENT, LLC, a California limited liability company (erroneously sued as SWIdent, Inc., a limited liability corporation) ("SWIDENT") (hereinafter collectively referred to as "Defendants") will move for an Order as follows:

1. For an order staying these proceedings pending arbitration; and
2. For an order compelling arbitration of all claims.

This Motion is made on the grounds that two contracts entered into between the parties provide for arbitration between NACIO SYSTEMS, INC., a Nevada Corporation (hereinafter "Plaintiff" or "NACIO") and Defendants. These Agreements provide for binding arbitration of all claims relating to or arising out of said Agreements, including claims and issues made subject to this lawsuit by Plaintiff's Complaint filed herein. Pursuant to a prior demand for arbitration, Plaintiff and Defendant have already attended binding arbitration, which resulted in a final judgment. Defendants contend that the claims brought in Plaintiff's Complaint were compulsory-counterclaims in that arbitration and that Plaintiff failed to allege the claims brought in the Complaint in the prior arbitration. Defendants do not waive their defense that these compulsory counter-claims are barred. However, this Court should enforce the arbitration agreements of the parties, stay these proceedings, and compel arbitration of all issues.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Herbert Gottlieb, the Declaration of Richard J. Idell and all the exhibits thereto, filed in support thereof, and such other and further oral and documentary evidence as may be brought forward on the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER STAYING LITIGATION AND COMPELING ARBITRATION OF ALL CLAIMS

## I. ISSUES PRESENTED.

1. Whether or not the Court should stay these proceedings pending the arbitration of the

claims set forth in the Complaint.

2. Whether or not the Court should order all claims set forth in the Complaint to binding arbitration pursuant to the written agreements between the parties.

## II. FACTUAL BACKGROUND AND HISTORY.

Mr. GOTTLIEB was employed by Defendant NACIO SYSTEMS, INC. (hereinafter Plaintiff or "NACIO") and its wholly-owned, paper subsidiary, Interactive Holdings Group, Inc. Mr. GOTTLIEB's position was as President of NACIO's "Attest" Division, which represented forensic software assets developed by Mr. GOTTLIEB while he was the Chief Executive Officer of Attest Systems, Inc. ("Attest"). This intellectual property included software and software licenses known as "GASP." Mr. GOTTLIEB, individually, held ownership rights to the Attest Systems Inc. intellectual property, including "GASP", which he had developed. Interactive Holding Group, Inc. acquired the assets of Attest. These assets included, among other things, the intellectual property known as "GASP." However, Mr. GOTTLIEB retained a UCC-1 security interest in those Attest assets and Interactive Holding Group, Inc. acquired the assets subject to Mr. GOTTLIEB's interest. NACIO used Interactive Holdings Group, Inc. to effect the purchase.

Mr. GOTTLIEB's employment was formalized in an Employment Agreement dated on or about December 1, 2004. A true and correct copy of the Employment Agreement is attached as Exhibit "A" to the Declaration of HERBERT GOTTLIEB filed herewith ("GOTTLIEB Dec."). The Employment Agreement purports to be between Mr. GOTTLIEB and Attest Systems, a division of Interactive Holding Group, Inc. Interactive Holdings Group, Inc. is a wholly-owned subsidiary of Plaintiff NACIO, the corporate form of which was largely ignored by the parties. During Mr. GOTTLIEB's employment he reported directly to NACIO's de facto President, Mr. Murray Goldenberg. In actuality, Mr. GOTTLIEB was employed by NACIO.

Under the Employment Agreement, Mr. GOTTLIEB managed and developed the Attest assets and marketed them. NACIO was to compensate Mr. GOTTLIEB for those efforts. The Employment Agreement also provided for a hiring bonus of $125,000.00 which was set forth in a Promissory Note, secured by the assets of the "Attest" Division of NACIO. A true and correct copy of the Promissory Note is attached to the GOTTLIEB Dec. as Exhibit "B." The Promissory Note was payable in monthly

installments of $2,500.00 each with an amortization over approximately 57 months, and payable at 6% per annum. The Promissory Note was a material part of the Employment Agreement. In fact, Paragraph 4.1 states, in relevant part, "[t]his Agreement together with the Secured Promissory Note shall be viewed as a single document." Moreover, Paragraph 7.6 of the Employment Agreement states, in relevant part, that the "Agreement, including the Secured Note Payable… constitutes the entire and only agreement between the parties relating to employment of Employee [GOTTLIEB] with the Company [NACIO]."

The Employment Agreement also entitled Mr. GOTTLIEB to an annual base salary of $90,000, plus commissions on sales of "GASP". The Employment Agreement also provided for receipt of Nova Communications Ltd. stock, based upon the performance of the "Attest" Division. Nova Communications Ltd. is the parent company of NACIO. NACIO is a wholly-owned subsidiary of Nova Communications Ltd.

The Employment Agreement was for a one-year term but had an automatic renewal clause. Pursuant to the renewal clause, the Employment Agreement automatically renewed on December 1, 2005.

Additionally, the Employment Agreement contained a "constructive termination" clause. "Constructive Termination" is defined in the agreement as, among other things, "a material change in Employee's [GOTTLIEB's] responsibilities not agreed to by Employee."

In April of 2005, as a result of unilateral actions of Plaintiff, Mr. GOTTLIEB began to receive his paychecks, and payments on the Promissory Note, from NACIO, rather than from Interactive Holding Group, Inc.

Beginning in August of 2005, Mr. Goldenberg, the de facto President of NACIO, began systematically and covertly stripping the "Attest" Division of all of its employees until Mr. GOTTLIEB was its sole employee. Mr. GOTTLIEB was relegated to the role of salesman and administrative assistant.

In December of 2005, Mr. Goldenberg notified Mr. GOTTLIEB that he was, officially, no longer President of the "Attest" Division of NACIO. Mr. GOTTLIEB continued to work diligently on sales, despite the removal of his title and the lack of staff and assistance. However, Mr. GOTTLIEB

became frustrated and professionally embarrassed by the situation.

Invoking the "constructive termination" provision of the Employment Agreement, on February 21, 2006, Mr. GOTTLIEB wrote to Mr. Goldenberg giving notice of the constructive termination. In that letter Mr. GOTTLIEB agreed to conditionally forgo the one-year severance set forth in the Employment Agreement, and the stock rights, but if, and only if, NACIO paid the commissions that were currently due to him and accelerated the Promissory Note payments to $5,000.00 per month. Mr. Goldenberg, on behalf of NACIO, agreed. Mr. Goldenberg, on behalf of NACIO, also asked Mr. GOTTLIEB to continue to serve as a Consultant to NACIO. As such, on or about April 1, 2006, Plaintiff and GOTTLIEB entered into a Consulting Agreement. A true and correct copy of the Consulting Agreement is attached to the GOTTLIEB Dec. as Exhibit "C." Although NACIO never signed the Consulting Agreement, they made several payments to Mr. GOTTLIEB under the Agreement, thereby ratifying the agreement.

Although, pursuant to the conditional agreement, Mr. Goldenberg did cause NACIO to accelerate the Promissory Note payments, Mr. GOTTLIEB was not paid the commissions he was owed, thereby breaching the conditional severance agreement NACIO had with Mr. GOTTLIEB.

Both the Employment Agreement and the Consulting Agreement contain arbitration clauses. The arbitration clause of the Employment Agreement is found in Paragraph 7.1, and is set forth in full as follows:

> 7.1 **<u>Arbitration</u>**
>
> (a) The Company [Attest Systems, a division of Interactive Holding Group, Inc.] and Employee [HERBERT M. GOTTLIEB] agree that any dispute or controversy arising out of, relating to, or in connection with this Agreement, or the interpretation, validity, construction, performance, breach, or termination thereof, shall be settled by binding arbitration, unless otherwise required by law, to be held in Marin County, California in accordance with the National Rules for Resolution of Employment Disputes then in effect of the American Arbitration Association (the "Rules"). The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive, and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The arbitrator is hereby authorized to award to the prevailing party the costs (including reasonable attorney's fees and expenses) of any such arbitration.

(b) The arbitrator(s) shall apply California law to the merits of any dispute or claim, without reference to the rules of conflicts of law. Employee hereby consents to the personal jurisdiction of the state and federal courts located in California for any action or proceeding arising from or relating to any arbitration in which the parties are participants.

(c) The parties may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other interim or conservatory relief, as necessary, without breach of this arbitration agreement and without abridgement of the powers of the arbitrator.

(d) Employee understands that this Agreement does not prohibit Employee from pursuing an administrative claim with a local, state or federal administrative body such as the Department of Fair Employment and Housing, the Equal Opportunity Commission or the workers' compensation board.

(e) EMPLOYEE HAS READ AND UNDERSTANDS THIS SECTION 7.1 WHICH, DISCUSSES ARBITRATION. EMPLOYEE UNDERSTANDS THAT BY SIGNING THIS AGREEMENT, EMPLOYEE AGREES, EXCEPT AS PROVIDED IN SECTION 7.1 (d) TO SUBMIT ANY CLAIMS ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT, OR THE INTERPRETATION, VALIDITY, CONSTRUCTION, PERFORMANCE, BREACH OR TERMINATION THEREOF TO BINDING ARBITRATION, UNLESS OTHERWISE REQUIRED BY LAW, AND THAT THIS ARBITRATION CLAUSE CONSTITUTES A WAIVER OF EMPLOYEE'S RIGHT TO A JURY TRIAL AND RELATES TO THE RESOLUTION FO ALL DISPUTES RELATING TO ALL ASPECTS OF EMPLOYEE'S RELATIONSHIP WITH THE COMPANY, INCLUDING BUT NOT LIMITED TO, CLAIMS OF HARASSMENT, DISCRIMINATION, WRONGFUL TERMINATION AND ANY STATUTORY CLAIMS.

The arbitration clause in the Consulting Agreement is found at Paragraph 9 and is set forth in full as follows:

9. <u>Arbitration and Equitable Relief</u>.

9.1 <u>Arbitration</u>. Consultant [GOTTLIEB] agrees that any and all controversies, claims or disputes with anyone (including the Company [NACIO, a wholly owned subsidiary of Encompass Holdings Inc., a Nevada corporation] and any employee, officer, director, shareholder or benefit plan of the Company, in its capacity as such or otherwise) arising out of, relating to or resulting from Consultant's performance of the

Services under this Agreement or the termination of this Agreement, including any breach of this Agreement, shall be subject to binding arbitration. CONSULTANT AGREES TO ARBITRATE, AND THEREBY AGREES TO WAIVE ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO, THE FOLLOWING DISPUTES, INCLUDING BUT NOT LIMITED TO: ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, CLAIMS OF HARASSMENT, DISCRIMINATION OR WRONGFUL TERMINATION AND ANY STATUTORY CLAIMS. Consultant understands that this Agreement to arbitrate also applies to any disputes that the Company may have with Consultant.

9.2 Procedure. Consultant agrees that any arbitration will be administered by the American Arbitration Association ("AAA"), and that a neutral arbitrator will be selected in a manner consistent with its rules. Consultant agrees that the arbitrator will have the power to decide any motions brought by any party to the arbitration, including discovery motions, motions for summary judgment and/or adjudication and motions to dismiss and demurrers, prior to any arbitration hearing. Consultant agrees that the arbitrator will issue a written decision on the merits. Consultant also agrees that the arbitrator will have the power to award any remedies, including attorneys' fees and costs, available under applicable law. Consultant understands that the Company will pay for any administrative or hearing fees charged by the arbitrator or AAA.

9.3 Remedy. Except as provided under California law, arbitration will be the sole, exclusive and final remedy for any dispute between the Company and Consultant. Accordingly, except as provided under California law, neither the Company nor Consultant will be permitted to pursue court action regarding claims that are subject to arbitration. Notwithstanding the foregoing, the arbitrator will not have the authority to disregard or refuse to enforce any lawful Company policy, and the arbitrator shall not order or require the Company to adopt a policy not otherwise required by law which the Company has not adopted.

9.4 Administrative Relief. Consultant understands that this Agreement does not prohibit Consultant from pursuing an administrative claim with a local, state or federal administrative body such as the Department of Fair Employment and Housing, the Equal Employment Opportunity Commission or the workers' compensation board.

9.5 Voluntary Nature of Agreement. Consultant acknowledges and agrees that Consultant is executing this Agreement voluntarily and

> without any duress or undue influence by the Company or anyone else. Consultant further acknowledges and agrees that Consultant has carefully read this Agreement and has asked any questions needed to understand the terms, consequences and binding effect of this Agreement and fully understand it, including that Consultant is waiving its right to a jury trial. Finally, Consultant agrees that Consultant has been provided an opportunity to seek the advice of an attorney of its choice before signing this Agreement.

Under the arbitration provisions in the Employment Agreement and the Consulting Agreement (set forth above) Mr. GOTTLIEB filed an arbitration demand with the American Arbitration Association.

The arbitration was held in or about November, 2006, and a Final Decision was issued by the arbitrator on December 13, 2006. A true and correct copy of the Final Decision is attached as Exhibit "D" to the GOTTLIEB Dec. Judgment was entered, confirming the arbitration award, by the Marin County Superior Court on April 18, 2007. A true and correct copy of the Notice of Entry of Judgment is attached as Exhibit "E" to the GOTTLIEB Dec. The arbitrator's Final Decision and the Judgment were in favor of GOTTLIEB and against NACIO. GOTTLIEB was awarded judgment against NACIO in the principal sum of $240,811.60, plus 10% interest per annum on the Promissory Note amount in the amount of $81,206.03 ($22.25 per day), from and after June 30, 2006, to the date of entry of Judgment, plus interest at 10% per annum on the commission portion of the Judgment award of $25,012.94 ($6.85 per day), from March 31, 2006, to the date of the entry of the Judgment. Mr. GOTTLIEB was also awarded attorneys' fees and costs.

NACIO has yet to satisfy the judgment.

## III. UNITED STATES DISTRICT COURT COMPLAINT FILED BY NACIO.

On or about July 3, 2007, NACIO filed a Complaint for (1) Copyright Infringement, (2) Misappropriation of Trade Secrets, (3) Common Law Misappropriation, (4) Breach of Fiduciary Duty and Breach of the Duty of Loyalty, (5) Unfair Competition under California Business and Professions Code Section 17200, (6) Theft of Corporate Opportunity, and (7) Conversion. NACIO Complaint ("Comp.") pages 1-17[1]. NACIO's Complaint names Mr. GOTTLIEB and SWIdent, Inc., a California limited liability corporation. Comp. p. 1.

[1] See Request for Judicial Notice filed herewith.

SWIdent, "Inc.," a California limited liability "corporation" does not exist. However, SWIdent, LLC is, in fact, a California limited liability company that is owned in part by Mr. GOTTLIEB. SWIdent, LLC is the successor of Mr. GOTTLIEB. Paragraph 7.9 of the Employment Agreement between Mr. GOTTLIEB and NACIO states that the Agreement "shall be binding upon, and inure to the benefit of, the successors and personal representatives of the respective parties hereto." As such, the Employment Agreement is binding upon SWIDENT as the successor of Mr. GOTTLIEB.

1. <u>First Cause of Action – Copyright Infringement</u>

NACIO claims that while Mr. GOTTLIEB was employed at NACIO he misappropriated the "GASP" intellectual property and used it to create a new software program that is used by SWIDENT. Comp. pp. 7-11. The "GASP" software is the same intellectual property that was the subject of the Promissory Note discussed above. As stated above, Mr. GOTTLIEB retained a UCC-1 security interest in the Attest assets, including the intellectual property known as "GASP." This was a material aspect of the Employment Agreement. Paragraph 4.1 of the Employment Agreement states, in relevant part, "[t]his Agreement together with the Secured Promissory Note shall be viewed as a single document." Because the copyright ownership of the "GASP" intellectual property was a material aspect of the Employment Agreement between NACIO and Mr. GOTTLIEB, and because NACIO alleges that Mr. GOTTLIEB "surreptitiously removed" the "GASP" software from his office *during* his employment with NACIO, this cause of action is subject to the arbitration clauses found in the Employment Agreement and Consulting Agreement. Comp. p. 8.

2. <u>Second and Third Causes of Action – Misappropriation of Trade Secrets and Common Law Misappropriation</u>

NACIO alleges in their second and third causes of action that Mr. GOTTLIEB and SWIDENT misappropriated, retained and are using NACIO's trade secrets, including a copy of NACIO's customer list. Comp. p. 7-9, 11. NACIO claims that while employed by NACIO Mr. GOTTLIEB "emailed to himself . . . a complete copy of NACIO's customer list." Comp. p. 8. NACIO also alleges that during Mr. GOTTLIEB's employment he emailed to himself "his directory of emails and email addresses compiled at the company." Comp. p. 8. Because these allegations "arise out of" Mr. GOTTLIEB's employment, and allegedly occurred during his employment, they are subject to the

arbitration clauses found in the Employment Agreement and Consulting Agreement.

3. Fourth Cause of Action – Breach of Fiduciary Duty and Breach of the Duty of Loyalty

NACIO's fourth cause of action is alleged only against Mr. GOTTLIEB. NACIO claims that "while in NACIO's employ . . . Mr. GOTTLIEB occupied a position of trust and authority" which caused Mr. GOTTLIEB to owe NACIO duties of good faith, loyalty and fiduciary duties. Comp. p. 14. NACIO further alleges that these fiduciary duties were violated when GOTTLIEB, during his employment, misappropriated trade secret information from NACIO, and by allegedly "seeking employment with a competitor." Comp. p. 14. These allegations necessarily are directly related to Mr. GOTTLIEB's previous employment and consulting arrangement with NACIO. As stated in the Employment Agreement, claims "arising out of, relating to, or in connection with" Mr. GOTTLIEB's employment, or the "performance, breach, or termination" of the Employment Agreement "shall be settled by binding arbitration." Furthermore, the Consulting Agreement states that all claims "arising out of, relating to or resulting from [Mr. GOTTLIEB's] performance of the Services" under the Agreement are subject to binding arbitration. Thus, NACIO's fourth cause of action is subject to the arbitration clauses contained in the Agreements of the parties.

4. Fifth Cause of Action – Unfair Competition – Cal. Bus. & Prof. Code §17200 *et seq.*

The fifth cause of action in NACIO's Complaint alleges "fraudulent and unfair business practices in violation of California Business and Professions Code section 17200." Comp. p. 15. This allegation is on "the aforesaid acts", which presumably refers to the first, second, third and fourth causes of action. Comp. p. 15. As discussed above, the first through fourth causes of action are all subject to the arbitration clauses contained in the Agreements of the parties. As the Court is well aware, Business and Professions Code Section 17200, *et seq.* claims which rely on other violations necessarily are factually derived from those other base allegations. As such, this cause of action, too, is necessarily subject to the arbitration clauses contained in the Agreements of the parties.

5. Sixth Cause of Action – Theft of Corporate Opportunity

NACIO's sixth cause of action alleges that Mr. GOTTLIEB "has and will utilize NACIO's misappropriated customer and product trade secret information in his employment with SWIDENT" and another company, and through such use he "has and will actively seek to unfairly compete for the

same business from the same customers on behalf of this new employer that he previously attempted to secure on behalf of NACIO." Comp. p. 15. Moreover, the fifth cause of action specifically states that Mr. GOTTLIEB had access to the "sales opportunities" which he allegedly stole from NACIO in his capacity as "manager of NACIO's Attest business." Comp. p. 16. As NACIO points out, Mr. GOTTLIEB would not have had access to these corporate opportunities if he had not been in the employ of NACIO. As such, this cause of action falls squarely within the arbitration provisions of the Employment Agreement and Consulting Agreement between NACIO and Mr. GOTTLIEB.

6. Seventh Cause of Action – Conversion

NACIO's seventh cause of action for conversion alleges that "by engaging in the acts described above, GOTTLIEB and SWIDENT have wrongfully retained property belonging to NACIO." Comp. p. 16. The "acts described above" refers to the first through sixth causes of action. These "acts" include the alleged copyright infringement and misappropriation of trade secrets. As demonstrated, the first through sixth causes of action fall within the parameters of the arbitration clauses contained in the Agreements of the parties. As such, this seventh cause of action must also fall within those arbitration provisions.

7. All of the Causes of Action Contained in NACIO's Complaint are Subject to the Arbitration Provisions Contained in the Agreements of the Parties

All of the causes of action alleged in NACIO's Complaint arise out of Mr. GOTTLIEB's former employment, and then consultant, relationship with NACIO. As such, all of the claims in NACIO's Complaint are subject to the arbitration clauses found in the Agreements of the parties.

Defendants contend that NACIO has brought this federal action in retaliation for, and as a stall tactic, in an effort to avoid payment of the judgment entered by the Marin County Superior Court.

Defendants also contend that all of the claims set forth in this United States District Court action are compulsory counter-claims that should have been brought in the arbitration proceeding and that the claims have been waived because they were not brought at that time. However, that will be determined by the arbitrator appointed to hear the matter by the American Arbitration Association.

At this time, under the clear and unequivocal arbitration clauses in the Agreements between the parties, this Court should order that NACIO, should they wish to pursue the matter further, commence

an arbitration proceeding to prosecute these claims.

## IV. ARGUMENT.

### 1. All of the Disputes Between the Parties are Subject to the Clear and Unequivocal Arbitration Clauses Set Forth in the Agreements Between the Parties

A dispute is arbitrable if: (1) there was an agreement to arbitrate between the parties; and (2) the agreement covers the dispute. *Anderson v. Pitney Bowes, Inc.*, 2005 U.S. Dist. LEXIS 37662 (D. Cal. 2005). The question of arbitrability is undeniably an issue for judicial determination. *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 649 (U.S. 1986). Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. *Id.*

Moreover, where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 650 (U.S. 1986). Doubts should be resolved in favor of coverage. *Id.* (internal citation omitted) The threshold for arbitrability is not high. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

The presumption of arbitrability is particularly applicable where the clause is broad and uses language such as "arising under", as do the clauses contained in the Employment Agreement and Consulting Agreement at issue in this matter. *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 650 (U.S. 1986); *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). The arbitration clause in the Employment Agreement calls for binding arbitration of "any dispute or controversy arising out of, relating to, or in connection with this Agreement, or the interpretation, validity, construction, performance, breach, or termination thereof."[2] Similarly, the Consulting Agreement's arbitration clause governs disputes "arising out of, relating to or resulting from Consultant's performance of the Services under this Agreement or the termination of this Agreement, including any breach of this Agreement."[3] Clauses subjecting claims "arising out of or relating to" a contract are considered broad. *See, Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207

[2] The arbitration clause of the Employment Agreement is found in Paragraph 7.1, and is set forth in full above

[3] The arbitration clause in the Consulting Agreement is found at Paragraph 9, and is set forth in full above

F.3d 1126, 1131 (9th Cir. 2000) (terming as "broad and far reaching" an arbitration clause covering "any dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance of this Agreement); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (describing as "broad" an arbitration clause covering "any controversy or claim arising out of or relating to this Agreement, or the breach thereof."). In such cases, where the arbitration clause(s) are broad, the United States Supreme Court has held that "in the absence of any express provision *excluding* a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 650 (U.S. 1986) (emphasis added).

Mr. GOTTLIEB does not waive his contention that the claims set forth in this action are compulsory counter-claims that should have been raised in the preceding arbitration; however, all the disputes between the parties are subject to the broad arbitration clauses contained in the agreements of the parties.

As set forth above, there were two contracts between the parties: (1) the Employment Agreement entered into December 1, 2004, and (2) the Consulting Agreement entered into April 1, 2006. Both the Employment Agreement and the Consulting Agreement contain broad arbitration clauses that do not exclude any of the particular grievances set forth in NACIO's federal Complaint. Rather, both of the arbitration clauses set forth the agreement of the parties to submit all disputes to binding arbitration. The balance of these clauses is similarly broad and includes both contract and tort claims.

Each of the causes of action alleged in NACIO's Complaint is discussed in detail in Section III above. However, the Complaint generally alleges that Mr. GOTTLIEB owed fiduciary duties and duties of loyalty to NACIO as a result of his employment, and breached those duties by allegedly misappropriating certain intellectual property and trade secrets upon his departure from NACIO. As set forth in detail above (see Section III of this Motion), the causes of action alleged in the instant action arise out of Mr. GOTTLIEB's employment with NACIO and are therefore subject to the broad arbitration clauses set forth in the Employment and Consultant Agreements entered into between NACIO and Mr. GOTTLIEB. To trigger an arbitration requirement, the movant's factual allegations

need only "touch matters" covered by the contract containing the arbitration clause. *See, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985). Here, Defendants' factual allegations do more than "touch matters" in the Employment and Consultant Agreements. Thus, there is an arbitrable controversy between the parties.

Moreover, Defendants are not in default in proceeding with the arbitration, and there has been no waiver of the arbitration clauses. Indeed, Mr. GOTTLIEB has asserted these clauses in the past. Pursuant to a demand for arbitration made by Mr. GOTTLIEB, the parties attended binding arbitration in or about November, 2006, and a Final Decision was issued by the arbitrator on December 13, 2006. Judgment was entered, confirming the arbitration award in favor of Mr. GOTTLIEB, by the Marin County Superior Court on April 18, 2007. Defendants bring this issue to the Court in their initial appearance.

2. <u>The District Court Should Stay The Litigation Pending Outcome of the Arbitration</u>

The Federal Arbitration Act grants the United States District Court authority to stay this action pending the outcome of binding arbitration. "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties <u>stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement</u>, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C.S. § 3 (emphasis added).

In fact, the District Court has no discretion to deny the request to stay the action when the issues in the underlying action are arbitrable. "The stay provision is mandatory: If the issues in a case are within the reach of the Agreement, the district court has no discretion under [9 U.S.C. § 3] to deny the stay." *Anderson v. Pitney Bowes, Inc.*, 2005 U.S. Dist. LEXIS 37662 (D. Cal. 2005) (*citing In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)). If the issues in a case are within the reach of the Agreement, the court *must*, upon request by either party, grant a stay of the action pending arbitration. *Anderson v. Pitney Bowes, Inc.*, 2005 U.S. Dist. LEXIS 37662 (D. Cal. 2005) (emphasis added).

As discussed above, the causes of action alleged in NACIO's federal Complaint arise from Mr. GOTTLIEB's employment with NACIO. As such, the claims brought by NACIO are arbitrable under the binding arbitration clauses contained in both the Employment Agreement and the Consulting Agreement between NACIO and Mr. GOTTLIEB. Moreover, Paragraph 7.9 of the Employment Agreement between Mr. GOTTLIEB and NACIO states that the Agreement "shall be binding upon, and inure to the benefit of, the successors and personal representatives of the respective parties hereto." Thus, as Mr. GOTTLIEB's successor, the arbitration clauses in the Agreements equally govern the arbitrable controversy between NACIO and Defendant SWIDENT.

Because the issues in the Complaint filed by NACIO are "within the reach of the" arbitration clauses contained in the Agreements between the parties, the District Court should not deny the stay. *Anderson v. Pitney Bowes, Inc.*, 2005 U.S. Dist. LEXIS 37662 (D. Cal. 2005).[4]

3. <u>The District Court Should Order this Controversy to Binding Arbitration</u>

The Federal Arbitration Act grants this Court the authority to enter an Order compelling arbitration of the controversy.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C.S. § 4.

The controversy between the parties arises out of Mr. GOTTLIEB's employment with NACIO. There were two contracts between the parties: (1) the Employment Agreement entered into December 1, 2004, and (2) the Consulting Agreement entered into April 1, 2006. Both the Employment Agreement and the Consulting Agreement contain broad arbitration clauses.

Defendants contend that all of the claims brought by NACIO in this action are compulsory counter-claims that should have been raised in the preceding arbitration and this contention is not

[4] Lingering meet and confer issues regarding the duplication of Mr. GOTTLIEB's computer hard drive(s) should be handled by the Arbitrator.

waived. Nevertheless, all of the disputes between the parties are subject to the broad arbitration clauses contained in the agreements of the parties. As such, the Court should respect the agreement of the parties to have all disputes adjudicated by binding arbitration and should order the parties to proceed with arbitration of all of the issues in this matter.

## V. CONCLUSION - THE DISTRICT COURT SHOULD RESPECT THE AGREEMENTS OF THE PARTIES, STAY THIS ACTION AND ORDER THIS CASE TO BE RESOLVED BY BINDING ARBITRATION.

This Court should enforce the arbitration agreements of the parties, stay this action, and compel Plaintiff NACIO to file arbitration proceedings should the Plaintiff wish to pursue this matter further.

IDELL & SEITEL LLP

Dated: September 18, 2007

By: ______________________________

Richard J. Idell
Ory Sandel
Elizabeth J. Rest
Attorneys for Herbert Gottlieb, an individual and SWIdent, LLC, a California Limited Liability Company (erroneously sued as SWIdent, Inc., a limited liability corporation)

**PROOF OF SERVICE**

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Idell & Seitel, LLP 465 California Street, Suite 300, San Francisco, California 94104.

On September 19, 2007, I served the following document(s):

**NOTICE OF MOTION AND MOTION FOR ORDER STAYING LITIGATION AND COMPELLING ARBITRATION OF ALL CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**

☒ by **ELECTRONIC MAIL.** As this case is subject to the United States District Court for the Northern District of California ECF program, pursuant to General Rule 45, upon the filing of the above-entitled document(s) an automatically generated e-mail message was generated by the Court's electronic filing system and sent to the address(es) shown below and constitutes service on the receiving party.

**Mark John Rice**
McNeil Silveira Rice Wiley & West
55 Professional Center Parkway
Suite A
San Rafael, CA 94903
Phone: 415-472-3434
Fax: 415-472-1298
Email: markjrice@aol.com

**Andrew H. Schwartz**
**Frank F. Sommers, IV**
Sommers & Schwartz LLP
550 California Street
The Sacramento Tower, Suite 700
San Francisco, CA 94104
Phone: 415-955-0925
Fax: 415-955-0927
Email: ahs@sommersschwartz.com
ffs@sommersschwartz.com

I certify and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and I executed this declaration at San Francisco, California.

Suzanne Slavens