Exhibit "C"

## CONSULTING AGREEMENT

This Consulting Agreement ("**Agreement**") is entered into as of April 1, 2006 by and between Nacio Systems, Inc., a wholly owned subsidiary of Encompass Holdings Inc., a Nevada corporation (the "**Company**") and Herbert M. Gottlieb (the "**Consultant**"). The Company desires to retain Consultant as an independent contractor to perform consulting services for the Company, and Consultant is willing to perform such services, on the terms described below. In consideration of the mutual promises contained herein, the parties agree as follows:

1.     Services and Compensation.  Consultant agrees to perform for the Company the services described in Exhibit A (the "**Services**"), and the Company agrees to pay Consultant the compensation described in Exhibit A for Consultant's performance of the Services..

2.     Confidentiality.

2.1     Definition.  "**Confidential Information**" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customers, customer lists, markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed by the Company either directly or indirectly in writing, orally or by drawings or inspection of parts or equipment. Confidential Information does not include information that (i) is known to Consultant at the time of disclosure to Consultant by the Company as evidenced by written records of Consultant, (ii) has become publicly known and made generally available through no wrongful act of Consultant or (iii) has been rightfully received by Consultant from a third party who is authorized to make such disclosure, (iv) information known by Consultant prior to entering into this Agreement with Company..

2.2     Non-Use and Non-Disclosure.  Consultant will not, during or subsequent to the term of this Agreement, (i) use the Confidential Information for any purpose whatsoever other than the performance of the Services on behalf of the Company or (ii) disclose the Confidential Information to any third party. Consultant agrees that all Confidential Information will remain the sole property of the Company. Consultant also agrees to take all reasonable precautions to prevent any unauthorized disclosure of such Confidential Information, including, but not limited to, having each of Consultant's employees, if any, with access to any Confidential Information execute a nondisclosure agreement containing provisions in the Company's favor substantially similar to Sections 2, 3 and 4 of this Agreement.

3.     Reports.  Consultant also agrees that Consultant will, from time to time during the term of this Agreement or any extension thereof, keep the Company advised as to Consultant's progress in performing the Services hereunder. Consultant further agrees that Consultant will, as requested by the Company, prepare written reports with respect to such progress. The Company and Consultant agree that the time required to prepare such written reports will be considered time devoted to the performance of the Services.

4.    Term and Termination.

    4.1    Term.  The term of this Agreement will begin on the date of this Agreement and will continue until the earlier of (i) final completion of the Services, or (ii) three months or (iii) termination as provided in Section 6.2.

    4.2    Termination.  The Company may terminate this Agreement upon giving Consultant 30 days' prior written notice of such termination pursuant to Section 14.2 of this Agreement. The Company may terminate this Agreement immediately and without prior notice if Consultant refuses to or is unable to perform the Services or is in breach of any material provision of this Agreement. The Consultant may terminate this agreement at any time with 14 days prior written notice.

    4.3    Survival.  Upon such termination, all rights and duties of the Company and Consultant toward each other shall cease except:

        (a)    The Company shall pay, within 30 days after the effective date of termination, all amounts owing to Consultant for Services completed and accepted by the Company prior to the termination date and related expenses, if any, in accordance with the provisions of Section 1 of this Agreement; and

        (b)    Section 2    (Confidentiality),    Section 3    (Ownership),    Section 4 (Conflicting Obligations), Section 8 (Independent Contractor) Section 9 (Indemnification) and Section 11 (Arbitration and Equitable Relief) shall survive termination of this Agreement.

    5.    Assignment.  Neither this Agreement nor any right hereunder or interest herein may be assigned or transferred by Consultant without the express written consent of the Company.

    6.    Independent Contractor.  It is the express intention of the Company and Consultant that Consultant perform the Services as an independent contractor to the Company. Nothing in this Agreement shall in any way be construed to constitute Consultant as an agent, employee or representative of the Company. Consultant agrees to furnish (or reimburse the Company for) all tools and materials necessary to accomplish this Agreement and shall incur all expenses associated with performance, except as expressly provided in Exhibit A.  Consultant acknowledges and agrees that Consultant is obligated to report as income all compensation received by Consultant pursuant to this Agreement. Consultant agrees to and acknowledges the obligation to pay all self-employment and other taxes on such income.

    7.    Indemnification.  Company agrees to indemnify and hold harmless the Consultant from and against all taxes, losses, damages, liabilities, costs and expenses, including attorneys' fees and other legal expenses, arising directly or indirectly from or in connection with (i) any negligent, reckless or intentionally wrongful act of Company or Company's employees or agents, (ii) a determination by a court or agency that the Consultant is not an independent contractor, (iii) any breach by the Company or Company's employees or agents of any of the covenants contained in this Agreement, or (iv) any violation or claimed violation of a third party's rights resulting in whole or in part from the Company's use of the work product of Consultant under this Agreement.

8.     Benefits.   The Company and Consultant agree that Consultant will receive no Company-sponsored benefits from the Company. If Consultant is reclassified by a state or federal agency or court as Company's employee, Consultant will become a reclassified employee and will receive any and all benefits that would normally be given to an employee of the Company.

9.     Arbitration and Equitable Relief.

9.1    Arbitration.   Consultant agrees that any and all controversies, claims or disputes with anyone (including the Company and any employee, officer, director, shareholder or benefit plan of the Company, in its capacity as such or otherwise) arising out of, relating to or resulting from Consultant's performance of the Services under this Agreement or the termination of this Agreement, including any breach of this Agreement, shall be subject to binding arbitration. CONSULTANT AGREES TO ARBITRATE, AND THEREBY AGREES TO WAIVE ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO, THE FOLLOWING DISPUTES, INCLUDING BUT NOT LIMITED TO: ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, CLAIMS OF HARASSMENT, DISCRIMINATION OR WRONGFUL TERMINATION AND ANY STATUTORY CLAIMS. Consultant understands that this Agreement to arbitrate also applies to any disputes that the Company may have with Consultant.

9.2    Procedure.   Consultant agrees that any arbitration will be administered by the American Arbitration Association ("AAA"), and that a neutral arbitrator will be selected in a manner consistent with its rules. Consultant agrees that the arbitrator will have the power to decide any motions brought by any party to the arbitration, including discovery motions, motions for summary judgment and/or adjudication and motions to dismiss and demurrers, prior to any arbitration hearing. Consultant agrees that the arbitrator will issue a written decision on the merits. Consultant also agrees that the arbitrator will have the power to award any remedies, including attorneys' fees and costs, available under applicable law. Consultant understands that the Company will pay for any administrative or hearing fees charged by the arbitrator or AAA.

9.3    Remedy.   Except as provided under California law, arbitration will be the sole, exclusive and final remedy for any dispute between the Company and Consultant. Accordingly, except as provided under California law, neither the Company nor Consultant will be permitted to pursue court action regarding claims that are subject to arbitration. Notwithstanding the foregoing, the arbitrator will not have the authority to disregard or refuse to enforce any lawful Company policy, and the arbitrator shall not order or require the Company to adopt a policy not otherwise required by law which the Company has not adopted.

9.4    Administrative Relief.   Consultant understands that this Agreement does not prohibit Consultant from pursuing an administrative claim with a local, state or federal administrative body such as the Department of Fair Employment and Housing, the Equal Employment Opportunity Commission or the workers' compensation board.

9.5    Voluntary Nature of Agreement.   Consultant acknowledges and agrees that Consultant is executing this Agreement voluntarily and without any duress or undue influence by the

-3-

Company or anyone else. Consultant further acknowledges and agrees that Consultant has carefully read this Agreement and has asked any questions needed to understand the terms, consequences and binding effect of this Agreement and fully understand it, including that Consultant is waiving its right to a jury trial. Finally, Consultant agrees that Consultant has been provided an opportunity to seek the advice of an attorney of its choice before signing this Agreement.

      10.   <u>Governing Law</u>. This Agreement will be governed by the internal substantive laws, but not the choice of law rules, of the state of California.

      11.   <u>Entire Agreement</u>. This Agreement is the entire agreement of the parties and supersedes any prior agreements between them, whether written or oral, with respect to the subject matter hereof. No waiver, alteration or modification of any provision of this Agreement will be binding unless in writing and signed by a duly authorized representative of each of the Company and Consultant.

      12.   <u>Miscellaneous</u>.

      12.1   <u>Headings</u>. Section headings are used in this Agreement for reference purposes only and shall not affect the interpretation or meaning of this Agreement.

      12.2   <u>Notice</u>. Any notice or other communication required or permitted by this Agreement shall be in writing and shall be deemed given if delivered personally or by commercial messenger or courier service, or mailed by registered or certified mail (return receipt requested) or sent via facsimile (with acknowledgment of complete transmission) to a party to this Agreement at such party's address set forth below (or at such other address for a party as may be specified by like notice). If by mail, delivery shall be deemed effective 3 business days after mailing in accordance with this Section 14.2.

      (i)     If to the Company, to:

          Nacio Systems, Inc.
          55 Leveroni Court
          Novato, CA 94949
          Attention: Chief Financial Officer
          Telephone: 415-884-7517
          Facsimile: 415-884-7504

      (ii)     If to Consultant, to the address for notice on the signature page to this Agreement.

      12.3   <u>Attorneys' Fees</u>. In any court action at law or equity that is brought by one of the parties to this Agreement to enforce or interpret the provisions of this Agreement, the prevailing party will be entitled to reasonable attorneys' fees, in addition to any other relief to which that party may be entitled.

12.4    <u>Severability</u>.    The invalidity or unenforceability of any provision of this Agreement, or any terms of this Agreement, shall not affect the validity of this Agreement as a whole, which shall at all times remain in full force and effect.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties hereto have executed this Consulting Agreement as of the date first written above.

**"CONSULTANT"**                              **"COMPANY"**

**HERBERT M. GOTTLIEB**                       **NACIO SYSTEMS, INC.**


By: _____                By: _____

Name: _____                Name: _____

Title: _____                Title: _____

## EXHIBIT A

### Services, Compensation and Payment Terms

1. <u>Services</u>. The Services shall include, but shall not be limited to, services required to meet the following objectives:

(a) Assistance in the marketing efforts of company in the form of introduction and training Webinars using Webex. Fees for Webex to be paid for by Company.

(b) Other consulting assistance as requested by Company.

2. <u>Compensation</u>.

(a) The Company will pay Consultant $150 per hour (minimum of 1 hour for each instance of services.

(b) The Company will reimburse Consultant for all reasonable expenses incurred by Consultant in performing the Services pursuant to this Agreement.

3. <u>Terms</u>. Company shall pay Consultant a non-refundable retainer of $1,000.00 upon execution of this Agreement. Retainer to be used to pay the last invoice sent to Company by Consultant.

(a) Consultant will issue monthly invoices to Company for services rendered in previous month.

(b) Those invoice will be due and payable upon receipt. Invoices paid 10 or more days late will incur interest at the rate of 2% per month until paid in full.

(c) Security, all payment due under this Agreement shall be secured by the assets of the Company.