Exhibit "A"

Andrew Schwartz (State Bar No. 100210)
Frank Sommers (State Bar No. 109012)
**SOMMERS & SCHWARTZ LLP**
55 0 California Street
Sacramento Tower, Suite 700
San Francisco, CA 94104
Telephone: (415) 955-0925
Facsimile: (415) 955-0927
ffs@SommersSchwartz.com

Attorneys for Plaintiff
NACIO SYSTEMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NACIO SYSTEMS, INC., a Nevada Corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>HERBERT GOTTLIEB and SWIdent, INC., a California LLC<br><br>                Defendants. | Case No.: C 07 3481 PJH<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS, BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY, UNFAIR COMPETITION, THEFT OF CORPORATE OPPORTUNITY AND CONVERSION**<br><br>**JURY TRIAL DEMANDED** |

PLAINTIFF NACIO SYSTEMS, INC. ("NACIO"), by its undersigned attorneys, allege as follows:

## THE PARTIES

1.       NACIO is the successor to Attest Systems, Inc. Attest was a company originally created by Herbert Gottlieb in the 1990s. After a series of sales, bankruptcies and asset transfers, NACIO SYSTEMS, INC., a Nevada Corporation, became the owner not only of Attest's assets (chief among which was the GASP software system), but also the right to use the Attest name. Nacio's principal place of business is in Novato, California. Nacio provides a variety of Web-

1  based services to major US companies, including disaster recovery, web-hosting and security.

2        2.     Herbert Gottlieb (hereinafter "GOTTLIEB") is the former President of Attest, Inc.

3  and, thereafter, the manager of NACIO's Attest business.  He is a resident of Marin County

4  California, WITH A RESIDENCE AT 10 Indian Trail Court, Novato California..

5        3.     SWIdent, Inc. (hereinafter "SWIdent") is a California LLC established by Mr.

6  Gottlieb, which has its principal place of business at 10 Indian Trail Court, Novato, CA, Novato,

7  CA 94947.

8  ## JURISDICTION AND VENUE

9        4.     This Court has subject matter jurisdiction over the First Cause of Action herein

10
11  (Copyright Infringement) 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338(a) in that the claims

12  arise under the laws of the United States. This Court has subject matter jurisdiction over the

13  Second through Seventh Causes of Action herein pursuant to 28 U.S.C. § 1367 (a) and the

14  principles of supplemental jurisdiction.

15        5.     Venue is proper in the Northern District of California under 28 U.S.C. §§ 1391 (b)

16
17  and ( c) since the two defendants in this action reside and do business in this District.

18  ## NATURE OF THE CASE

19  ### NACIO's History and Its Creation of GASP

20        6.     One of the services that NACIO provides, under the name of Attest, is GASP, a

21  suite of computer programs designed to audit either an individual computer or an entire network

22  of computers to check for unlicensed application programs. These programs are detected in the

23  form of "executables," files that generally bear the suffix ".exe".  GASP identifies these

24  programs not only as to program type (Word, WordPerfect, etc.), but also by the "issuer," such as

25  Microsoft or other software vendors.

26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7.    The GASP program generates a series of audit files that allows the user to determine whether the programs detected on the computer or computer network are validly licensed programs or bootleg copies. This function is critical for large corporations or other organizations running large numbers of software programs to assure that the entity is not infringing on any copyrighted software programs because the entity has not appropriately procured a license from the software issuer to use that software. It is also key to negotiating the appropriate payments for "enterprise licenses' with major software providers.

8.    GASP accomplishes this audit by using the Software Identification Database ("SID"). This database at the time of the conduct complained of, consisted of approximately 70,000 records created by the NACIO software engineers, each record identifying a unique portion of the executable that confirms that the particular program is in fact a validly licensed copy from a given issuer. In processing the executables it finds on its computer or network, GASP produces audit files which flag the executables as either "validly licensed," "possibly licensed," "unknown," "apparently unlicensed" or "definitely unlicensed." The GASP user has the option of sending these audit files electronically to NACIO, whose programmers then review the unknown or dubious executables in order to determine whether a new record needs to be added to the SID for later distribution. The audit files are then permanently added to the SID. One of the unique benefits of this process is that the user can have NACIO identify applications as well as proprietary applications written by the user itself. Subsequent use of the new SID by other customers thus provides protection against the user's software from being illegally run by others.

9.    GASP is therefore usable by two completely different constituencies. The first comprises software issuers concerned with ferreting out pirated copies of their software on corporate or other institutional systems, sometimes installed by individuals bringing copies in from home and other times installed as deliberate acts of corporate piracy. GASP has been used, for example, by federal prosecutors seeking to prosecute copyright bootleggers. The second

distinct group of users is the institutional users themselves, who run GASP in order to reduce or eliminate their exposure to wilful or negligent license violation or copyright infringement claims. GASP takes a 'snapshot' of the audited computers, recording information about both the hardware and the software resident on those systems.

10.    The SID identification records are at the heart of NACIO's intellectual property. Since executable files are traditionally expressed in machine language – patterns of 1's and 0's rather than even the quasi-English of various programming languages – determining whether a given copy is a valid one is a complicated task. NACIO does not receive information from issuers about proprietary identification strings in the executables, but rather has created a proprietary identification algorithm and a robust auto-identification function allowing accurate identification of applications, including almost 90% of those previously unidentified.

11.    This ongoing process of adding to the SID is another of NACIO's competitive advantages. In addition to purchasing the then-existing SID with the initial copy of the software, a user pays maintenance fees that enables it to download updated copies not only of the software, but, more importantly, of the SID. The SID is constantly being augmented and modified by NACIO's programmers as new applications are released by existing or new publishers which contain embedded information not currently identified in the SID.

12.    A potential new purchaser of GASP acquires its license in the following manner. An evaluation copy is downloaded from the NACIO website. The evaluation copy has features which are disabled. Once GASP is purchased and registered in the NACIO database, the customer receives a product Registration Key which unlocks the application for the required seats/licenses purchased. This unlocking process embeds the key into the user's copy of the software. The entire process is electronically completed. In addition, the "on-going" license packages include "maintenance" fees which include unlimited technical support via the Attest web site, email, phone, unlimited updates/upgrades and the monthly Software Identification Database (SID).

---

13.    Rather than embed within the program a finite list of codes to activate GASP, NACIO – like other software providers – uses a "Registration Key Generator," which produces a key of a fixed character length according to a particular algorithm. In much the same fashion as credit card numbers are authenticated over the Internet, the user program processes the registration key using the same algorithm to determine whether it is one that has been generated by NACIO's algorithm or is bogus. If the registration key is valid, the program removes the restrictions in the evaluation copy, which then becomes a fully functioning copy of GASP.

14.    The Registration Key Generator is, therefore, another vital portion of NACIO's trade secrets and intellectual property. Depending on the scope of the license purchased by the customer, the key will contain attributes detailing the scope of the customer's access and use rights. NACIO tracks the customer email address associated with each key issued. Access to the Registration Key Generator software, in fact, is restricted and only a highly limited number of senior officers are permitted access to it. Among those officers was GOTTLIEB, the former President of Attest Systems who became the manager of NACIO's Attest business after it acquired the assets of Attest.

15.    As is relevant hereto, NACIO has created, developed, produced, and marketed GASP Version 7.0, which is a combination of the individual copyrighted GASP Audit Version 7.0, GASP Report Version 7.0, GASP eAudit Version 7.0 and GASP net Version 7.0, as follows:

(a) GASP Audit Version 7.0 was first published on or about December 15, 2005. Copyrights in this version of the software (including its constituent programs) were registered in full compliance with the Copyright Act, and Attest, Inc. and Nacio Systems, Inc. received a certificate of registration from the Registrar of Copyrights for such version. Attached hereto as Exhibit A1 is a true and correct copy of the Registration Certificate TX 6 - 326-654 dated March 17, 2006, evidencing the registration of GASP Audit Version 7.0;

(b) GASP Report Version 7.0 was first published on or about December 15, 2005. A

1
2
3
4
5

copyright in this version of the software (including its constituent programs) were registered in full compliance with the Copyright Act, and Attest, Inc. and Nacio Systems, Inc. received a certificate of registration from the Registrar of Copyrights for such version. Attached hereto as Exhibit A2 is a true and correct copy of the Registration Certificate TX 6-319-291 dated March 17, 2006, evidencing the registration of GASP Report Version 7.0.

6
7
8
9
10
11

( c) GASP eAudit Version 7.0 was first published on or about December 15, 2005. Copyrights in this version of the software (including its constituent programs) were registered in full compliance with the Copyright Act, and Attest, Inc. and Nacio Systems, Inc. received a certificate of registration from the Registrar of Copyrights for such version. Attached hereto as Exhibit A3 is a true and correct copy of the Registration Certificate TX (6-326-652) dated March 17, 2006, evidencing the registration of GASP eAudit Version 7.0;

12
13
14
15
16
17

(d) GASP Net Version 7 0 was first published on or about December 15, 2005. Copyrights in this version of the software (including its constituent programs) were registered in full compliance with the Copyright Act, and Attest, Inc. and Nacio Systems, Inc. received a certificate of registration from the Registrar of Copyrights for such version. Attached hereto as Exhibit A4 is a true and correct copy of the Registration Certificate TX (6-326-653) dated March 17, 2006, evidencing the registration of GASP Net Version 7.0.

18
19
20
21
22

16.    At all relevant times, NACIO has complied in all respects with the Copyright Act, 17 U.S.C. §§ 101 *et seq.* to secure exclusive rights and privileges in and to the copyrights in the versions of the software referred to above, and in their constituent programs. In this regard, NACIO is the owner of all rights, title and interest to the federal copyright registrations described above. NACIO's facility is extremely secure, both electronically and physically.

23
24
25
26
27
28

17.    NACIO's premises are guarded by former U.S. Navy SEALs and its electronic systems are detected by ever-updated security subroutines. In addition, Attest and NACIO employees were and are required to sign a non-disclosure agreement covering NACIO's trade secrets and intellectual property. GOTTLIEB, in his role with Attest and then NACIO, was

intimately involved in these steps intended to protect the company's intellectual property.

### Beyond It (SA) ("BIT")

18.    NACIO sells its products both domestically and internationally.  Its international sales are handled by appointing one outside reseller as an "approved international reseller," and having them execute a copy of the International Reseller's Agreement, an example of which is attached hereto as Exhibit E.  Under that Agreement, Nacio's International Resellers' license to market GASP is non-transferrable, and Reseller's are expressly precluded from: (a) sub-licensing; (b) distributing Nacio's software without passing on Nacio's then-current End User License Agreement to the customer or passing through to Nacio's the license sales fee and any ongoing maintenance fees earned by Nacio through the updating process described above; (c) modifying or translating the software or creating derivative works; or (d) reproducing the software or its documentation.

19.    NACIO's reseller in South America is Beyond It, S.A.( "BIT").  BIT is also the software engineering house currently used by NACIO to perform software upgrades on and feature additions to GASP.  Because of its role as a programmer for NACIO, BIT has been given access to both the source code of the GASP system, as well as a copy of the Registration Key Generator in order to permit them to test key generation and testing functions.  As soon as GOTTLIEB departed from his employment at NACIO, all new sales of GASP out of South America entirely ceased and NACIO's sales income of GASP in South America went to zero.

### GOTTLIEB's Departure and Unauthorized Use and Misappropriation of GASP

20.    Defendant GOTTLIEB was employed by NACIO, after Attest sold its name and assets to NACIO, to manage the business of Attest now being handled by NACIO.   On or about March 31, 2006, GOTTLIEB ceased being an employee of NACIO.  For a brief time he worked informally as a consultant, but that relationship ended no later than June, 2006.

21.    GOTTLIEB kept in his office at NACIO a safe which contained copies of the source code for GASP, as well as copies of the Registration Key Generator used by NACIO to

1   authenticate and enable the software packages downloaded by customers for evaluation, once

2   they purchased a license. Without any authorization from NACIO, and without notifying anyone

3   employed at NACIO, GOTTLIEB surreptitiously removed from his office, when he ceased

4   working for or at NACIO, the safe which contained the source code and Registration Key

5   Generator.

6       22.    In addition, GOTTLIEB emailed to himself, on or about March 29th, 2006, a

7   complete copy of NACIO's customer list. As noted above, this customer list contains

8   registration key information that would allow someone to run GASP audits and access the

9   NACIO Attest web site and download upgrades and new copies of the SID.

10      23.    GOTTLIEB also emailed from NACIO to his home email address his directory of

11  emails and email addresses compiled at the company. He then deleted those files from his

12  computer, but was unaware that the Exchange Server used by NACIO creates a backup file from

13  which the company has been able to reconstruct both his actions and the contents of the file.

14      24.    At or about the time GOTTLIEB was leaving Nacio, the company and one of its

15  largest competitors, PS'Soft, were engaged in negotiations about the possible acquisition of

16  NACIO by PS'Soft. PS'Soft's license compliance management business – centered in France –

17  is several times larger than that of NACIO. PS'Soft maintains offices in Boston, Paris, London

18  and Switzerland, with distributors in Europe, North America, Mexico and Australia, including its

19  Menlo Park California office. PS'Soft's "Software Library" competes with GASP. Daryl Frahm

20  is PS'Soft's Vice President Business Development and Product Marketing.

21      25.    After GOTTLIEB left, NACIO learned that he had approached PS'Soft and taken

22  a position as a consultant with that company. NACIO complained to both PS'Soft and

23  GOTTLIEB that this employment constituted a conflict of interest, given GOTTLIEB's

24  knowledge of critical business and trade secrets of NACIO. Shortly thereafter, all negotiations

25  between NACIO and PS'Soft ceased without PS'Soft negotiators giving any reason for the cut

26  off.

27

28

---

COMPLAINT FOR COPYRIGHT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS, BREACH
OF FIDUCIARY DUTY AND DUTY OF LOYALTY, UNFAIR COMPETITION, THEFT OF CORPORATE
OPPORTUNITY AND CONVERSION                                                      -8-

26. After GOTTLIEB's departure from NACIO, however, he showed a NACIO employee database excerpts running on a computer at GOTTLIEB's house. The employee – an experienced software engineer involved in the creation of the SID registration records – recognized the database running on GOTTLIEB's computer as being identical to the NACIO database. GOTTLIEB also informed this NACIO employee that the system running on Gottlieb's computer was "much bigger now" and further informed her that he was adding to and updating PS'Soft's database records. GOTTLIEB had previously tried to interest this employee in working with him for PS'Soft, but she had turned him down. GOTTLIEB told this NACIO employee not to tell anyone at NACIO about the work he was doing because he would get into a lot of trouble if NACIO was so informed. GOTTLIEB also complained that he had been working with BIT on the new program he was developing that used these records, and asked the NACIO employee if she was interested in working to update, correct and expand the PS'Soft database by adding to it.

27. SWIdent purports to sell a software identification security service similar to NACIO's. That service is attended to assist customers in identifying unidentified executable files on the customer's system. NACIO is informed and believes, and based thereon alleges that SWIdent's software identification database was built by GOTTLIEB from a copy of NACIO's SID – which GOTTLIEB wrongfully took from NACIO. NACIO is informed and believes, and based thereon alleges that GOTTLIEB is using GASP or portions thereof at SWIdent in connection with SWIdent's business, in direct competition with NACIO. Moreover, NACIO is also informed and believes, and based thereon alleges that GOTTLIEB has been attempting to add new records to the NACIO SID that he wrongfully misappropriated by having SWIdent customers send in ".exe" file information for all unidentified ".exe" files that appear on their systems after an audit program is run on the customers' systems. No employee, officer or director of NACIO has ever authorized GOTTLIEB to possess, use or copy the SID or any other part of the GASP program set for any purpose after his departure from NACIO.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### FIRST CAUSE OF ACTION

#### (Copyright Infringement against GOTTLIEB and SWIdent)

28.    NACIO realleges and incorporates herein the allegations set forth in paragraphs 1 - 27 as though set forth in full herein.

29.    Defendants GOTTLIEB's and SWIdent's acts constitute infringement of NACIO's copyrights in all versions of GASP in violation of the Copyright Act, 17 U.S.C. §§101 *et. seq*, including SID, constituent groups or programs of any version of GASP, and all works derivative thereof.

30.    NACIO is informed and believes, and on such basis alleges, that Defendants' GOTTLIEB's and SWIdent's infringement of NACIO's copyrights in all of its versions of GASP was deliberate, willful, malicious, oppressive, and without regard to NACIO SYSTEM's proprietary rights.

31.    NACIO is informed and believes, and on such basis alleges that Defendant's GOTTLIEB's and SWIdent's" copyright infringement has caused, and will continue to cause NACIO SYSTEMS to suffer substantial injuries, loss and damage to its proprietary and exclusive rights to the all versions of GASP, and has further damaged NACIO's business, reputation and good will, diverted its trade and caused a loss of profits, all in an amount not yet ascertained, which amount is to be proven at trial.

32.    NACIO is informed and believes, and on such basis alleges that Defendant's GOTTLIEB's and SWIdent's"copyright infringement, and the threat of continuing infringement, has caused, and will cause, NACIO repeated and irreparable injury. It is difficult to ascertain the amount of money damages that would afford NACIO complete and adequate relief at law for Defendant's continuing acts.  NACIO's remedy at law is not adequate to compensate it for the injuries already inflicted and further threatened by Defendants GOTTLIEB and SWIdent." Therefore, Defendants GOTTLIEB and SWIdent" should be restrained and enjoined pursuant to the Copyright Act for any further acts constituting an infringement of NACIO SYSTEMS's

copyrighted software as described herein pursuant to the Copyright Act, 17 U.S.C. §§ 502.

## SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets Against GOTTLIEB and SWIdent)

33.    NACIO realleges and incorporates herein the allegations set forth in paragraphs 1 - 27 as though set forth in full herein.

34.    NACIO enjoys an advantage over its existing and would be competitors in the design, development, maintenance and marketing of GASP because of the above described trade secrets.

35.    As noted above, NACIO has made reasonable efforts under the circumstances to preserve the confidentiality of these trade secrets. Such information derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use. Accordingly, the above-described information constitutes "trade secrets," under California's Uniform Trade Secrets Act, Cal. Civ. Code Section 3426 *et. seq.*

36.    NACIO current and former employees, including GOTTLIEB, were and are under a duty to keep NACIO's proprietary and confidential information secret, and not to use or disclose such information other than for the benefit of NACIO and with NACIO's authorization. Given his long tenure as CEO of Attest and then his employment with NACIO, GOTTLIEB and SWIdent knew, or should have known, that they acquired such information under circumstances giving rise to a duty to maintain its secrecy, or limit its use, and that he derived such information through improper means. Nevertheless, GOTTLIEB and SWIdent retained this information in an unauthorized fashion and, on information and belief, have used or plans to use and disclose this information to PS'Soft and others and have and intend to use this information without the express or implied consent of NACIO.

37.    As described above, NACIO is informed and believes, and on that basis alleges, that GOTTLIEB and SWIdent have misappropriated, retained and are using NACIO's trade

---

COMPLAINT FOR COPYRIGHT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS, BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY, UNFAIR COMPETITION, THEFT OF CORPORATE OPPORTUNITY AND CONVERSION                            -11-

1    secrets without NACIO's expressed or implied consent and used improper means to acquire

2    knowledge of the trade secrets.

3        38.    GOTTLIEB and SWIdent obtained the proprietary and confidential information

4    described above directly or indirectly from NACIO and not from generally available information

5    or through his own independent research and efforts.

6        39.    GOTTLIEB's and SWIdent's actions constitute misappropriation of NACIO's

7    trade secret under Cal. Civ. Code Section 3426 et. seq.

8        40.    GOTTLIEB's and SWIdent's wrongful conduct in misappropriating NACIO's

9    confidential information, unless and until enjoined and restrained by order of this Court, will

10   cause great and irreparable harm to NACIO. NACIO is threatened with losing its intellectual

11   property and current and potential business.

12       41.    NACIO has no adequate remedy at law for the injuries currently being suffered,

13   and the additional injuries that are threatened, because it would be impossible to quantify, in

14   dollars, the losses described above when this matter is fully adjudicated, and GOTTLIEB will

15   continue to engage in his wrongful conduct and NACIO will continue to suffer irreparable injury

16   that cannot be adequately remedied at law unless GOTTLIEB is enjoined from engaging in any

17   further such acts of misappropriation.

18       42.    In addition, as a direct and proximate cause of GOTTLIEB's and SWIdent's

19   misappropriation of NACIO's trade secrets, GOTTLIEB and SWIdent have been unjustly

20   enriched in an amount to be ascertained at trial and NACIO has sustained, and will continue to

21   sustain, actual damages in an amount to be proven at trial.

22       43.    Each of the acts of misappropriation was done willfully and maliciously by

23   GOTTLIEB and SWIdent, with the deliberate intent to injure NACIO and in conscious disregard

24   of the rights of NACIO and to improve GOTTLIEB's and SWIdent's own business and financial

25   gain, thereby entitling NACIO to exemplary damages and attorneys fees to be proved at trial

26   pursuant to Cal. Civ. Code Section 3246.3.

27

28

1

2

## THIRD CAUSE OF ACTION

3

### (Common Law Misappropriation Against GOTTLIEB and SWIdent)

4

44.    NACIO realleges and incorporates herein the allegations set forth in paragraphs

5

1-27 as though set forth in full herein.

6

45.    NACIO has expended considerable sums of money and time developing

7

commercially valuable information related to the design, maintenance, updating, marketing and

8

sale of GASP. This includes, but is not limited to, the Customer and Sales related documents

9

and the product information described herein.

10

46.    NACIO is informed and believes, and on this basis alleges, that GOTTLIEB and

11

SWIdent has retained and is using NACIO's trade secrets without NACIO SYSTEMS's express

12

or implied consent and has used improper means to acquire knowledge of the trade secrets.

13

47.    GOTTLIEB and SWIdent obtained the proprietary and confidential information

14

described above directly or indirectly from NACIO and not from generally available information

15

or through his own independent research and efforts.

16

49.    GOTTLIEB's and SWIdent's actions constitute misappropriation.

17

50.    GOTTLIEB's and SWIdent's wrongful conduct in misappropriating NACIO's

18

confidential information, unless and until enjoined and restrained by order of this Court, will

19

cause great and irreparable harm to NACIO. NACIO is threatened with losing its intellectual

20

property and current and potential business.

21

51.    NACIO has no adequate remedy at law for the injuries currently being suffered,

22

and the additional injuries that are threatened, because it would be impossible to quantify, in

23

dollars, the losses described above when this matter is fully adjudicated, and GOTTLIEB and

24

SWIdent will continue to engage in his wrongful conduct and NACIO will continue to suffer

25

irreparable injury that cannot be adequately remedied at law unless GOTTLIEB is enjoined from

26

engaging in any further such acts of misappropriation.

27

28

COMPLAINT FOR COPYRIGHT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS, BREACH
OF FIDUCIARY DUTY AND DUTY OF LOYALTY, UNFAIR COMPETITION, THEFT OF CORPORATE
OPPORTUNITY AND CONVERSION                                                    -13-

52.    In addition, as a direct and proximate cause of GOTTLIEB's and SWIdent's misappropriation of NACIO's trade secrets, GOTTLIEB and SWIdent have been unjustly enriched in an amount to be ascertained at trial and NACIO has sustained, and will continue to sustain, actual damages in an amount to be proven at trial.

53.    Each of the acts of misappropriation was done willfully and maliciously by GOTTLIEB and SWIdent, with conscious disregard of NACIO's rights and with the deliberate intent to injure NACIO's business and improve GOTTLIEB's and SWIdent's own business, thereby entitling NACIO to exemplary damages and attorneys fees to be proven at trial.

### FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty and Breach of the Duty of Loyalty against GOTTLIEB)

54.    NACIO realleges and incorporates herein the allegations set forth in paragraphs 1- 27 as though set forth in full herein.

55.    While in NACIO's employ, and while serving as CEO, GOTTLIEB GOTTLIEB occupied a position of trust and authority, which caused GOTTLIEB to have, at all times, a duty of good faith and loyalty and fiduciary duties to NACIO.

56.    GOTTLIEB has violated his fiduciary duties to NACIO by misappropriating trade secret information and putting it to use in competition with NACIO – through SWIdent or otherwise – failing to inform NACIO that he was actively seeking employment with a competitor and the same time as he was surreptitiously accessing under false pretenses and misappropriating NACIO's trade secrets.

57.    GOTTLIEB's actions are in violation of his duties to NACIO and have caused and will continue to cause irreparable harm to NACIO for which there is no adequate monetary compensation.

58.    NACIO is entitled to an award for all of the damages it has suffered as a result of GOTTLIEB's breaches of fiduciary duty and a permanent injunction preventing same.

59.    Each of the acts of misappropriation was done willfully and maliciously by

1  GOTTLIEB, with conscious disregard of NACIO's rights and with the deliberate intent to injure

2  NACIO SYSTEMS's business and improve GOTTLIEB's own business – through SWIdent or

3  otherwise – thereby entitling NACIO to exemplary damages and attorneys fees to be proven at

4  trial.

5  ### FIFTH CAUSE OF ACTION

6  ### (Unfair Competition – Cal. Bus. & Prof. Code section 17200 et seq. Against

7  ### GOTTLIEB and SWIdent)

8  60.    NACIO realleges and incorporates herein the allegations set forth in paragraphs 1

9  - 27 as though set forth in full herein.

10  61.    The aforementioned acts of GOTTLIEB and SWIdent constitute fraudulent and

11  unfair business practices in violation of California Business and Professions Code section 17200.

12  62.    As a direct and proximate result of GOTTLIEB's and SWIdent's unfair business

13  practices, NACIO has suffered, and will continue to suffer, losses in an amount in excess of the

14  jurisdictional limits of this Court, and in an amount to be proven at trial.  Pursuant to California

15  Business and Professions Code sections 17203 and 17204, NACIO is entitled to temporary and

16  permanent injunctive relief enjoining GOTTLIEB, SWIdent and individuals and entities acting in

17  concert with them, from engaging in further conduct constituting unfair competition.

18  ### SIXTH CAUSE OF ACTION

19  ### (Theft of Corporate Opportunity Against GOTTLIEB).

20  63.    NACIO realleges and incorporates herein the allegations set forth in paragraphs 1

21  - 27 as though set forth in full herein.

22  64.    NACIO is informed and believes, and on that basis alleges that GOTTLIEB has

23  and will utilize NACIO's misappropriated customer and product trade secret information in

24  connection with his employment with SWIdent and PS'Soft, and through such use, has and will

25  actively seek to unfairly compete for the same business from the same customers on behalf of his

26  new employer that he previously attempted to secure on behalf of NACIO.

27

28

65.    As manager of NACIO's Attest business, charged with developing software products and developing and consummating customer relationships, GOTTLIEB knew, or had reason to know, that the sales opportunities which, upon information and belief, he has provided SWIdent and PS'Soft were opportunities that were reasonably incident to NACIO's present and future business and were opportunities that NACIO was pursuing or could pursue.

66.    As a direct and proximate result of GOTTLIEB's theft of NACIO's corporate opportunities, GOTTLIEB has and/or threatens to cause damage to NACIO in an amount to be ascertained at trial.

### SEVENTH CAUSE OF ACTION

### (Conversion Against GOTTLIEB and SWIdent)

67.    NACIO realleges and incorporates herein the allegations set forth in paragraphs 1 - 27 as though set forth in full herein.

68.    By engaging in the acts described above, GOTTLIEB and SWIdent have wrongfully retained property belonging to NACIO, without permission or authorization.

69.    As a direct and proximate result of GOTTLIEB's and SWIdent's decision to wrongfully retain property belonging to NACIO and to convert it for their own use, benefit and financial gain, GOTTLIEB and SWIdent have caused NACIO to suffer damages in an amount to be proven at trial.

70.    Each of the acts of misappropriation was done willfully and maliciously by GOTTLIEB, with conscious disregard of NACIO's rights and with the deliberate intent to injure NACIO's business and improve GOTTLIEB's and SWIdent's own business, thereby entitling NACIO to exemplary damages and attorneys fees to be proven at trial.

WHEREFORE, Plaintiffs and each of them pray for that the Court enter judgement in favor of NACIO and against GOTTLIEB and SWIdent:

A.    Preliminarily and permanently enjoining GOTTLIEB, SWIdent and all persons or entities acting in concert with either of them, and all of their respective affiliates, officers,

---

COMPLAINT FOR COPYRIGHT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS, BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY, UNFAIR COMPETITION, THEFT OF CORPORATE OPPORTUNITY AND CONVERSION                -16-

1  directors, employees, agents, servants, representatives, successors and assigns Temporary

2  Restraining Order enjoining GOTTLIEB and SWIdent from:

3          (1)     Marketing, selling, or distributing any product or service which use or

4  incorporate any part of GASP, NACIO's SID, or the GASP registration key;

5          (2)     Otherwise infringing on NACIO's copyrights;

6          (3)     Using, copying, disseminating or disclosing any of NACIO's confidential,

7  proprietary or trade secret information, including GASP, the GASP registration keys, NACIO's

8  customer list and any other proprietary NACIO customer information;

9      (B)     Issuing an Order that GOTTLIEB and NACIO file with this Court and serve on

10  NACIO within 30 days after service of the injunction described above, a report in writing, under

11  oath, setting forth in detail the manner and form in which Defendants have complied with the

12  injunction.

13      ( C )    Ordering impoundment and return to NACIO all misappropriated materials;

14      (D)     Awarding NACIO for Defendants' GOTTLIEB's and SWIdent's copyright

15  infringement either: (a) actual damages in an amount to be determined at trial, or (b) statutory

16  damages for each act of infringement in an amount provided by law, as set forth in 17 U.S.C. §

17  504, at NACIO's election before the entry of final judgment;

18      (E)     Awarding NACIO monetary relief, including damages sustained by NACIO in an

19  amount not yet determined, and the costs of the copyright action, including attorneys fees,

20  pursuant to 15 U.S.C. § 1117(a);

21      (F)     Ordering GOTTLIEB and SWIdent to account for an pay to NACIO all gains,

22  profits and savings derived from their misappropriation and conversion of NACIO trade secrets;

23      (G)     Ordering GOTTLIEB and SWIdent to pay NACIO compensatory damages in an

24  amount to be proven at trial for all their wrongful acts;

25      (H)     Ordering GOTTLIEB and SWIdent to pay punitive damages for their malicious

26  wrongful acts;

27

28

COMPLAINT FOR COPYRIGHT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS, BREACH
OF FIDUCIARY DUTY AND DUTY OF LOYALTY, UNFAIR COMPETITION, THEFT OF CORPORATE
OPPORTUNITY AND CONVERSION     -17-

1

(I)    Ordering GOTTLIEB and SWIdent to pay attorneys fees related to the prosecution

2

of claims other than the copyright claims herein based upon applicable California statutes and

3

case law;

4

(J)    Ordering such other relief as the Court deem just and equitable.

5

6

Plaintiff requests a jury trial on all issues.

7

8

DATED:July 3, 2007                    SOMMERS & SCHWARTZ LLP

9

10

11

12                    Frank F. Sommers, Attorneys for
                      Nacio Systems, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28