FRANK F. SOMMERS IV, ESQ. (SBN 109012)
ANDREW H. SCHWARTZ, ESQ. (SBN 100210)
SOMMERS & SCHWARTZ LLP
550 California Street
The Sacramento Tower, Suite 700
San Francisco, California 94104
Telephone: (415) 955-0925
Facsimile: (415) 955-0927

Attorney for Plaintiff,
NACIO SYSTEMS, INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NACIO SYSTEMS, INC. a Nevada corporation,<br><br>　　　Plaintiff<br>v.<br><br>HERBERT GOTTLIEB, an individual; SWIDENT, LLC, a California Limited liability corporation,<br><br>　　　Defendants<br>_____ | Case No.: C 07 3481 PJH<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR STAY AND COMPELLING ARBITRATION**<br><br>**Date:** October 24, 2007<br>**Time:** 9:00 a.m.<br>**Dept.:** Courtroom 3, 17th Fl.<br><br>**Complaint filed:**　　July 3, 2007<br><br>**Hon. Phyllis J. Hamilton** |

# INTRODUCTION

Defendant Herbert Gottlieb wants to force his former employer Nacio Systems, Inc ("Nacio") to arbitrate its claims that he is engaging in copyright infringement since he left work on behalf of the firm he set up to compete with Nacio. Mr. Gottlieb bases this motion on two contracts - his Employment Agreement and an unsigned Consulting Agreement. Neither supports his contentions.

The Employment Agreement was explicitly terminated by a Severance Agreement drafted by Mr. Gottlieb, in which he contended that he had already beenconstructively terminated as a Nacio manager in a management shake up by his then-boss, Murray Goldenberg. Mr. Gottlieb is collaterally estopped from denying that he was constructively terminated by that date because he won extensive damages in arbitration based on that constructive termination and the Severance Agreement. He then moved to confirm that arbitration award in a judgment.  The Severance Agreement also explicitly agreed that Gottlieb would leave his post under the initial Employment Agreement, which he then actually did in late March 2006.  The arbitration clause of the initial Employment Agreement lapsed with the termination of that agreement.  The Severance Agreement did not have an arbitration clause

Mr. Gottlieb then drafted a Consulting Agreement under which Nacio was to pay him for customer relations work in introducing those Nacio employees as the persons taking over his responsibilities in that role under that Employment Agreement.  The very drafting of this Consulting Agreement, of course, shows that Mr. Gottlieb also believed that his original employment as a Nacio manager was over.  Mr. Goldenberg, however, refused to sign it because he disliked many of the terms and did not intend Mr. Gottlieb to be a long term consultant, and told Mr. Gottlieb so. Nacio's subsequent payments to Mr. Gottlieb for hourly work does not operate to 'revive' the rejected contract.

Moreover, when Nacio failed to make payments under the Severance Agreement, Mr. Gottlieb's attorneys made demand for damages *under that agreement* and commenced an arbitration seeking damages both under the original Employment Agreement – for constructive

1  termination – and the Severance Agreement under which the parties agreed to end his
2  employment as a Nacio manager.
3      Thus, there is no viable claim that an agreement to arbitrate governs the post termination
4  copyright infringements and other wrongful acts upon which Plaintiffs' complaint is based.  The
5  arbitration clause of the initial Employment Agreement had lapsed –  due to either the
6  constructive termination thereof or by agreement of the parties under the Severance Agreement.
7  And the proposed Consulting Agreement was never entered into by the parties.  Mr. Gottlieb's
8  wrongdoing after he left his job as a Nacio manager is not governed by any arbitration agreement
9  and claims therefor are not arbitrable.

## II.  FACTS

11      Herbert Gottlieb managed Nacio's "Attest" business in 2006 – electronic auditing of
12  individual computers or an entire network of computers to identify unlicensed application
13  programs for companies seeking to avoid copyright infringement liability.  He held his post under
14  an Employment Agreement entered into in 2005 (hereinafter "Employment Agreement"). In early
15  2006,Gottlieb came to believe that his boss, Murray Goldenberg, had realigned management
16  responsibility of Nacio to freeze him out of real responsibility and that Nacio had therefore
17  constructively terminated him.  He made this allegation in a February 21, 2006 letter to
18  Goldenberg, in which he offered to compromise his claims against Nacio if Nacio paid off the
19  money it owed him under a Promissory Note, paid him commissions for sales he had brought in.
20  In return, Gottlieb formally offered to waive his alleged right to severance (at one year's salary) –
21  assuming that he was actually terminated through the alleged management shake up.  Goldenberg
22  signed that agreement.   Exhibit A to Declaration of Murray Goldenberg in Support of
23  Opposition to Motion for Stay "Goldenberg Declaration." at ¶4 )
24      Shortly thereafter, in late March 2006, Mr. Gottlieb physically left his employ as a Nacio
25  manager in late March 2006, taking with him the Nacio software (GASP) whose alleged
26  infringement is the basis for the instant action. At that time, he (or his lawyer) also drafted a long
27  and detailed Consulting Agreement, which also had within it an arbitration clause.  But Mr.

Goldenberg did not sign it because he disliked many of the terms and did not intend Gottlieb to be a long term consultant. (Goldenberg Declaration, ¶ 5,6). Mr. Goldenberg did pay Gottlieb for a few months of very intermittent consulting work, primarily for writing emails to former clients and taking responsive phone calls. But Mr. Goldenberg never agreed to enter into the Consulting Agreement for Nacio which never went into effect, so informed Mr. Gottlieb. (Goldenberg Declaration, ¶ 6).

When Nacio failed to make payments called for under the Severance Agreement, Gottlieb's counsel wrote a demand letter to Nacio seeking damages for breach of that Agreement. (Exhibit B to Goldenberg Declaration, ¶ 7). And Gottlieb's arbitration demand sought damages for both constructive termination under the Engagement Agreement and for breach of the Severance Agreement. (*Id*). An arbitration award in Gottlieb's favor followed, awarding the damages requested, which was then confirmed by this Court into a judgment. (Arbitration Award, Exhibit E to Gottlieb Declaration).

Defendants seek arbitration of Plaintiffs' claims herein based only upon either the Employment Agreement or the proposed Consulting Agreement. Neither of these reach Gottlieb's improper retention and use of copyrighted and trade secret materials to infringe on Nacio's copyright.

### III. ARGUMENT

**A. The Court Must First Determine the Existence of a Valid Written Arbitration Agreement Before Ordering Arbitration**

Moving party has the burden of proving to the Court's satisfaction that a valid *written* contract containing an arbitration clause that covers the subject at hand actually exists. *Banner Entm't v. Superior Court*, 62 Cal. App. 4th 348, 357 (Cal. Ct. App. 1998). While parties can voluntarily submit an *oral* contract calling for arbitration for an award, and a court can enforce such an award, only written arbitration agreements can support a petition to compel an unwilling party to arbitration. *Id* at 358, fn 6. As the Ninth Circuit noted in *Sanford v. Member Works, Inc.*, 483 F.3d 956 (9th Cir. 2007):

It is axiomatic that "[a]rbitration is a matter of contract and a party cannot

be required to submit any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). As a result, when one party disputes "the making of the arbitration agreement," the Federal Arbitration Act requires *that "the court [] proceed summarily to the trial thereof" before* compelling arbitration under the agreement. 9 U.S.C. § 4. We have interpreted this language to encompass not only challenges to the arbitration clause itself, but also challenges to the making of the contract containing the arbitration clause. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991)(Italixs added)

Here, there is a sharp dispute that any contract exists under which arbitration of the claims set out in the complaint would be appropriate. The Court is therefore required to apply California contract law, *after trial on the issue*, if necessary, to determine if any arbitration clause exists. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1073 (9th Cir. 2007); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).*Banner Entm't v. Superior Court*, 62 Cal. App. 4th 348, 357 (Cal. Ct. App. 1998).

Under these tests, neither the Employment Agreement or the Consulting Agreement serves to require plaintiff Nacio to arbitrate its claims against Mr. Gottlieb.

**B.    The Arbitration Award For Constructive Termination and Breach of the Severance Agreement Collaterally Estops Defendants From Using the Employment Agreement to Compel Arbitration**

Mr. Gottlieb arbitrated claims for constructive termination under the employment agreement as well as for damages under the Severance Agreement. Actual constructive termination of Mr. Gottlieb's employment as a Nacio manager under the 2005 Employment Agreement – which he asserted to have already occurred by February 21, 2006 – together with the actual termination of his management functions when he walked away from his job in late March 2006, would have ended the Employment Agreement, even if the parties had not entered into the Severance Agreement. In fact, the parties did enter into the Severance Agreement and Mr. Gottlieb ended his employment under the 2005 Employment Agreement by leaving the job pursuant to its terms. Gottlieb raised both alternative grounds for damages in his arbitration – constructive termination of the 2005 Employment Agreement *and* a breach of the Severance

Agreement. The arbitration award granted damages on one or both of these alternative theories.

Defendants cannot now assert that Plaintiffs' copyright infringement and trade secret violation claims are subject to the arbitration clause of the 2005 Employment Agreement, after obtaining a judgment predicated on the fact that such employment had been terminated. The judgment confirming the arbitration award collaterally estops a new adjudication on an issue that was actually litigated and determined by the arbitrator – the termination of the Employment Agreement by operation of a constructive termination and leaving of employment or the termination of the Employment Agreement through agreement – the Severance Agreement. *Todhunter v. Smith* (1934) 219 Cal. 690, 695; *Sutphin v. Speik* (1940) 15 Cal. 2d 195, 201-204; *Sabek, Inc. v. Englehard Corporation* (1998) 65 C.A.2d 992, 997-998.

The three part test for imposing the doctrine of collateral estoppel is – "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" *Taylor v. Hawkinson* (1957) 47 Cal. 2d 893, 895; *Bernard v. Bank of America* (1942) 19 Cal. 2d 807, 813; *Zaragosa v. Craven* (1949) 33 Cal. 2d 315, 317, 318. Here, the termination of the Employment Agreement – either through constructive termination and leaving the job *or* by agreement under the Severance Agreement – was necessarily adjudicated as the basis for the damage award issued by the arbitrator. A final judgment on the merits was entered when the Court confirmed the arbitration award into a judgment. Mr. Gottlieb was the complainant in the arbitration and the key defendant here. Defendants cannot now relitigate that claim by arguing that the Employment Agreement continued in effect after Mr. Gottlieb left his job as a Nacio manager.

Indeed, California courts specifically hold that where a final judgment is based on alternative grounds, estoppel will result as to all the issues adjudicated in support of the

6
P & A s In Opposition to Motion for Arbitration
Nacio Systems, Inc. v. Herbert Gottlieb et al  Case No.C 07 3481 PJH

judgment. *Bank of America v. McLaughlin Land & Livestock Co.* (1940) 40 C.A.2d 620, 628; *Wall v. Donovan* (1980) 113 C.A.3d 122, 126; *Evans v. Horton* (1953)115 Cal. App. 2d 281, 285 - 288; *see e.g.* KPOD, Ltd. v. Patel, 35 Fed. Appx. 514, 515 (9th Cir. 2002); Rest. 2d, Judgments § 27, Comment o. Both claims asserted by Mr. Gottlieb in the arbitration – that Nacio owed him damages based on constructive termination or based on an agreement between the parties which terminated his employment – relied upon the fact of the termination of the 2005 Employment. Mr. Gottlieb cannot now contradict this basic assertion in order to subject Plaintiffs claims herein to the arbitration clause of the terminated Employment Agreement.

**B.    Nacio and Gottlieb Never Entered Into Gottlieb's Proposed Consulting Agreement, So The Arbitration Clause of That Agreement Never Came Into Effect**

Mr. Gottlieb admits that Nacio never signed the Consulting Agreement. (Declaration of Herb Gottlieb in Support at ¶ 5 -"Gottlieb Declaration") He attempts to avoid the crippling effect of this admission by contending, without any factual support, that ""they made payments to me under the Agreement." He fails to tell the Court that Mr. Goldenberg informed him directly that Nacio would not enter into the agreement, due to objections about its duration and other objectionable terms. (Goldenberg Declaration at ¶ 6) The agreement never came into existence. Nacio's payment of hourly fees for intermittent work, in the face of the direct rejection of Mr. Gottlieb's offer, does not 'resuscitate' it for purposes of making the arbitration clause available to defendants here.

The essential elements of a contract are: parties capable of contracting; the parties' consent; a lawful object; and sufficient cause or consideration. (Civ. Code, § 1550.) "An essential element of any contract is the consent of the parties, or mutual assent. (Civ. Code, §§ 1550, subd. 2, 1565, subd. 2.) Mutual assent usually is manifested by an offer communicated to the offeree

and an acceptance communicated to the offeror. *Lopez v. Charles Schwab & Co., Inc*., 118 Cal. App. 4th 1224, 1230 (Cal. Ct. App. 2004). Here, the offer in the form of Mr. Gottlieb's proposed Consulting Agreement was explicitly rejected by Mr. Goldenberg. (Goldenberg Declaration ¶6 ). That rejection was also evidenced by his refusal to sign the contract, as Mr. Gottlieb admits.  An unequivocal rejection by an offeree, communicated to the offeror, terminates the offer. *Lopez v. Charles Schwab & Co., Inc*.,*supra*, 118 Cal. App. 4th at 1233. In *Lopez*, defendant Schwab rejected the initial application for an account, then tried to rely on the arbitration clause in the application to force a subsequent dispute about actions taken during the application process into arbitration. The court held that the firm was bound by its initial rejection, which terminated the offer. *Id.*

The court in *Banner Entm't v. Superior Court*, *supra* 62 Cal. App. 4th 348 was confronted with a similar attempt to enforce an unsigned contract. problem. Petitioner Alchemy there had negotiated for overseas marketing rights with Banner for several of its films. They agreed orally that while negotiations were continuing, Alchemy could attend the Cannes film festival and receive reimbursements and commissions. Banner ultimately refused to execute the written agreement containing the arbitration provision that Alchemy tried to enforce. The court refused Alchemy's contentions that the parties' conduct constituted an adoption of the written agreement, even though it was not signed. It stated that the evidence submitted of the oral negotiations were devoid of any intention to be bound to arbitration, and the fact that the unsigned written contract had such a provision did not alter the oral contract reached in the interim, which was for payment of expenses and commissions. *Id* at 361.

Here, the un-controverted evidence against defendants is much stronger. Mr. Gottlieb's proposed written contract was explicitly rejected. There is not evidence of oral agreements

regarding arbitration. The fact that Nacio subsequently paid Mr. Gottlieb for his time does not in any way created the preponderance of the evidence in defendants' favor required before the Court can find that a written contract containing an applicable arbitration clause exists.

## IV.  CONCLUSION

The uncontroverted evidence before the Court demonstrates that there is not extant written agreement with an arbitration clause to support the requested order. The Employment Agreement was terminated by the Severance Agreement and merged into it, a fact that the arbitration estops defendants from relitigating. The Consulting Agreement was, by defendants' admission, never signed, and was moreover explicitly rejected by Mr. Goldenberg. The mere oral agreement by Nacio to pay Mr. Gottlieb's hourly charges for his turn-over efforts cannot overcome these facts and support a finding that the parties executed the full agreement.  A ruling for plaintiff is fully warranted.  If there is any doubt about any of these issues, the Court should find against the party with the burden of proof- defendants.

Dated:  October 3, 2007

**SOMMERS & SCHWARTZ LLP**

_____
By Frank Sommers
Attorneys for Plaintiff