LAW OFFICES
OF
McNEIL, SILVEIRA, RICE & WILEY
AN ASSOCIATION INCLUDING PROFESSIONAL CORPORATIONS
55 PROFESSIONAL CENTER PARKWAY, SUITE A
SAN RAFAEL, CALIFORNIA 94903
T-(415) 472-3434  F-(415) 472-1298
WWW.MSRWLAW.COM

PATRICK J. McNEIL
A PROFESSIONAL CORPORATION

MARK J. RICE
A PROFESSIONAL CORPORATION

NEIL W. WILEY

RONALD A. SILVEIRA
1948-2000

September 6, 2006

**VIA FACSIMILE - (510) 832-1486 AND MAIL**

William Green, Esq.
Donahue Gallagher Woods LLP
300 Lakeside Drive, Suite 1900
Oakland, CA 94612

Re:   Gottlieb v. Nacio Systems
      AAA No. 74 166 00468 06 DECR

Dear Mr. Green:

Enclosed please find court documents germane to the above-entitled arbitration as follows:

1.  Demand for Arbitration on file with AAA (this was filed on line with AAA);

2.  Severance Agreement dated February 21, 2006 signed by Mr. Gottlieb (Mr. Goldenberg has the fully executed original);

3.  Demand letter of April 13, 2006 to Mr. Goldenberg from me over the AAA claims;

4.  Mr. Gottlieb's Employment Agreement;

5.  Mr. Gottlieb's June 9, 2006 demand letter on Nacio Systems, Inc. due to default on the May 31, 2006 payment due of $5,000. The payment amount of the Note, originally $2,500/month was expressly changed in February 21, 2006 Severance Agreement to $5,000 per month and thereafter, Nacio paid Mr. Gottlieb $5,000 a month in March and April, but zero. Thereafter, Mr. Gottlieb filed his AAA demand.

6.  My follow up demand letter of June 29, 2006 accelerating on the unpaid promissory note in the then due principal sum of $108,389.88.

7.  As expressed in this morning's conference, the Severance Agreement acknowledges constructive termination given the systematic filing or shifting all staff and responsibilities from Mr. Gottlieb's departure in the course of several months.

8. Mr. Gottlieb was also entitled to stock under the Employment Agreement yearly by October 15th, based on performance of previous fiscal years. The number of shares was to equal 4.5 times the net earnings before taxes, depreciation and amortization of the Attest Systems' division of Nacio. The stock issuance was to commence October 15, 2005 based on performance during the fiscal year ended June 30, 2005 and continued for the years ended June 30, 2006, June 30, 2007 and June 30, 2008. Attest Systems was always net positive.

9. As part of this letter, Mr. Gottlieb hereby demands from Nacio an accounting of the financial statements of Nacio Systems, Inc., as of fiscal of June 30, 2005 and the fiscal year end of June 30, 2006, so the stock issuance calculation can be fully determined at this time. Any SEC filings should be provided, along with audited and unaudited financial statements and underlying financial data with respect to sales and expenses.

10. The sales commissions were earned by Mr. Gottlieb on a month-to-month basis based upon cash receipts of Nacio Systems, Inc. based upon Mr. Gottlieb's sales; from cash receipts during any month between $0 and $60,000 commissions were 4%; from $60,001 to $100,000, 10%; for any month's receipts over $100,000, 25%. At the time of the negotiations of the Severance Agreement, there had been a large sale and commissions were due. See attached email reflecting the commission due per Nacio's accounting department of $25,012.00.

11. Additionally, in the Severance Agreement there is referred to the payment of the "the current pipeline [i.e. sales commissions], plus 90 days of renewal income timely paid." The renewal income is also at 4%. The 90 days of renewal income is estimated at $90,000 (renewal income represents Attest Systems' maintenance fees and license fees. That's an additional $3,600 due, owing and unpaid. In addition to my demand for accounting of the June 30, 2005 and June 30, 2006 financial statements of the company, I am also demanding that Nacio Systems provide a full accounting of renewal income with respect to Attest Systems' software licenses and maintenance fees so that an exact number of renewal income can be calculated with precision.

12. As noted, Mr. Gottlieb is making a Labor Code Section 203, thirty days waiting period claim for $7,500, representing thirty days' salary. This is based not only upon the failure to pay the commissions due under the employment agreement, but also for default in the promissory note. The promissory note was simply a deferred payment of a hiring bonus of $125,000, which itself is wages. Failure to pay the Note, as accelerated in accordance with its terms is also a wage non-payment. That entitles Mr. Gottlieb to at least another $2,500 in 203 penalties.

13. Note that the employment agreement provides "This agreement, together with the secured promissory note shall be viewed as a single document." As such, I believe that the promissory note should be included with the demand it should be included in the arbitration and ask that you concur and I will amend the demand accordingly.

14. I attach a summary of the demands and claims by category so that you can see them point by point.

LAW OFFICES OF
McNEIL, SILVEIRA, RICE & WILEY

15. I have a brief list of documents that we will further need, and will present that to you shortly so that we can discuss when hearing can be held. I continue to believe this is a one day matter; most of the issues involve interpretation of written agreements and written modifications and to interpretation of a few sentences here or there.

Please contact me upon your review of the enclosed so we may meet and confer in advance of Friday's teleconference.

Very truly yours,

MARK J. RICE

MJR/nv
Enclosures
cc: Herbert M. Gottlieb (with enclosures)