UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NACIO SYSTEMS, INC.,

    Plaintiff,

    v.

HERBERT GOTTLIEB, et al.,

    Defendants.
_____/

No. C 07-3481 PJH

**ORDER GRANTING MOTION TO STAY AND MOTION TO COMPEL ARBITRATION**

Defendants' motion for an order staying the above-entitled action and compelling arbitration came on for hearing before this court on October 24, 2007. Plaintiff Nacio Systems, Inc. ("Nacio") appeared by its counsel Frank F. Sommers, and defendants Herbert Gottlieb ("Gottlieb") and SWIdent, LLC ("SWIdent") appeared by their counsel Richard J. Idell. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

## BACKGROUND

Plaintiff Nacio is a Nevada corporation headquartered in California. Nacio provides a variety of Web-based services to major U.S. companies. These services include disaster recovery, web-hosting, and computer security. Defendant Gottlieb is a California resident, and is a member of defendant SWIdent, a California limited liability company.

In the 1990s, Gottlieb founded a company called Attest Systems, Inc. ("Attest"), and

served as its president. At some point, Nacio acquired Attest's assets and the "Attest" name. Gottlieb was subsequently employed by Nacio to manage Nacio's Attest division.

Among the Attest assets was the "GASP" software system. GASP is a suite of computer programs designed to "audit" individual computers or networks of computers to check for unlicensed application programs. GASP can be used by institutions seeking to reduce or eliminate their exposure to license violation or copyright infringement claims, and can also be used by software issuers seeking to ferret out pirated copies of their software on corporate or other institutional systems. GASP accomplishes the "audit" by using its proprietary Software Identification Database ("SID").

Before purchasing GASP a potential purchaser downloads an evaluation copy of the software, which has features that are disabled. Once the purchase is complete, the customer receives a product Registration Key, which unlocks the application for the required licenses purchased. The ongoing license packages also include "maintenance fees," for technical support, updates, and the monthly SID.

The product Registration Key is produced by a Registration Key Generator. Access to the Registration Key software is limited, with only a few senior Nacio officers permitted access. Nacio employees are required to sign non-disclosure agreements covering Nacio's trade secrets and intellectual property.

Gottlieb's employment at Nacio was formalized in an employment agreement dated December 1, 2004. The parties to the agreement were Gottlieb and Attest Systems, a division of Interactive Holding Group, Inc. The agreement provided that Gottlieb would manage, develop, and market the Attest assets, and that Nacio would pay Gottlieb an annual base salary of $90,000, plus commissions on sales of GASP. Gottlieb was also to receive shares of stock in Nova Communications Ltd. stock (Nacio's parent company), based on the performance of the Attest division.

The agreement also provided for a hiring bonus in the amount of $125,000, which was set forth in a promissory note secured by the assets of the Attest division. The promissory note was payable in monthly installments of $2,500, at 6% interest per year,

1  with an amortization over approximately 57 months.

2  The employment agreement had a one-year term, with an automatic renewal clause. In addition, the agreement contained a "constructive termination" clause. Under this provision, "constructive termination" was defined as "a material change in Employee's responsibilities not agreed to by Employee."

6  The employment agreement also included an arbitration clause, providing that the parties

> agree that any dispute or controversy arising out of, relating to, or in connection with this Agreement, or the interpretation, validity, construction, performance, breach, or termination thereof, shall be settled by binding arbitration . . . in accordance with the National Rules for Resolution of Employment Disputes then in effect for the American Arbitration Association.

11  In August of 2005, Nacio's CEO Murray Goldenberg ("Goldenberg") began stripping the Attest division of its employees, until, as defendants assert, Gottlieb was its sole employee, and had essentially been relegated to the role of salesman and administrative assistant. In December 2005, Goldenberg informed Gottlieb that he was no longer the president of the Attest division.

16  On February 21, 2006, Gottlieb wrote to Goldenberg and invoked the "constructive termination" provision of the employment agreement. Gottlieb agreed to conditionally forego the one-year severance set forth in the employment agreement, and the stock rights, if Nacio agreed to pay him the commissions that were owing to him, and to accelerate the promissory note payments to $5000 a month. Goldenberg agreed, and also asked Gottlieb to continue to serve as a consultant to Nacio. (This agreement is referred to as the "severance agreement.")

23  On March 31, 2006, Gottlieb ceased being an employee of Nacio. Defendants claim that on April 1, 2006, Gottlieb and Nacio entered into a consulting agreement, which also contained an arbitration clause. However, Nacio never signed the consulting agreement, a fact that defendants concede. Nevertheless, defendants contend that Nacio "ratified" the agreement by making several payments to Gottlieb under the agreement.

28  Gottlieb kept a safe in his office during the time he was employed at Nacio. According to

3

Nacio, the safe contained copies of the source code for GASP, as well as copies of the Registration Key Generator. Nacio asserts that when Gottlieb left Nacio in March 2006, he removed the safe and its contents from his office without authorization.

Nacio also asserts that on March 29, 2006, Gottlieb e-mailed himself a complete copy of Nacio's customer list (which included Registration Key information that would allow someone to run GASP audits, access the Nacio Attest web site, and download upgrades and new copies of SID). Nacio also claims that Gottlieb e-mailed to his home address his directory of e-mails and e-mail addresses he had compiled at the company.

Around the time that Gottlieb left Nacio, the company and one of its competitors – PS'Soft – were engaged in negotiations about the possible sale of Nacio and/or certain Nacio assets to PS'Soft. Nacio claims that after Gottlieb left Nacio, Goldenberg learned that Gottlieb had approached PS'Soft and had accepted a position as a consultant with PS'Soft. Goldenberg complained to both PS'Soft and Gottlieb that this employment constituted a conflict of interest. Nacio asserts that PS'Soft terminated the negotiations shortly thereafter, without stating any reason.

Nacio alleges that SWIdent sells a software identification security service similar to Nacio's. That service is intended to assist customers in identifying executable files on the customer's system. Nacio believes that SWIdent's software identification database was built by Gottlieb based on the copy of Nacio's SID that Gottlieb took from Nacio. Nacio also believes that Gottlieb is using GASP or portions of GASP at SWIdent in connection with SWIdent's business, in competition with Nacio; and that Gottlieb has been attempting to add wrongfully appropriated new records to the Nacio SID.

Nacio also claims that as soon as Gottlieb left his employment with Nacio, all new sales of GASP out of South America ceased, and Nacio's sales income from GASP in South America dropped to zero.

At some point after Gottlieb left his employment at Nacio, he filed a petition with the American Arbitration Association ("AAA"), seeking arbitration of his claim that Nacio had breached a number of terms in the employment agreement, including provisions relating to

4

the payment of wages and commissions. The arbitration took place on October 16, 2006.

On December 19, 2006, the arbitrator issued an award in favor of Gottlieb, finding that Nacio had breached the employment agreement. The arbitrator also found that Nacio had constructively discharged Gottlieb, based on the fact that Nacio had deliberately stripped the Attest Division of personnel and resources, thereby preventing Gottlieb from doing his work. The total amount of the arbitration award was $239,258.61.

Although Gottlieb had agreed, through the severance agreement, to waive his right to a one-year severance payment of $90,000, on the condition that Nacio pay the sales commissions due, the arbitrator found that the conditions of waiver of the severance payment had also been violated by Nacio, as it had failed to pay the commissions.

Gottlieb then filed a petition in the Superior Court of California, County of Marin, for confirmation of the arbitrator's award. On April 18, 2007, the Marin County Superior Court ordered that the arbitration award be confirmed in all respects. The amount of the award was $240,811.60.

At the hearing in the Superior Court, counsel for Nacio moved for an order to stay enforcement of any later judgment on the grounds of exemption, or on the alternate grounds that on February 1, 2007, Nacio had filed a related case against Gottlieb in Marin County Superior Court.[1] Gottlieb opposed the request for the stay, arguing that the new case was subject to the same binding arbitration clause between the parties, and that he would be seeking an order compelling arbitration of the new case through the AAA. The court denied the request for the stay, without explanation. .

On April 11, 2007, counsel for Gottlieb had sent counsel for Nacio a notice and acknowledgment of receipt of Nacio's recently filed lawsuit, and also requested a stipulation to binding arbitration, pursuant to the arbitration clause in the employment agreement.

---

[1] In this action, Nacio alleged that Gottlieb had interfered with Nacio's attempt to sell the Attest products to PS'Soft; that PS'Soft had subsequently entered into a contract with Gottlieb to provide the Attest products and services; and that in entering into a direct contract with PS'Soft, Gottlieb had misappropriated Nacio's trade secrets and intellectual property, and breached his fiduciary duties to Nacio.

Gottlieb's counsel suggested that the action by Nacio was simply an effort to indirectly appeal the arbitration award, and argued that it was wasteful for Nacio to refuse to stipulate to arbitration of what were, in effect, counterclaims that should have been brought in the recently-concluded arbitration. Subsequently, on May 18, 2007, Nacio dismissed the complaint without prejudice.

Nacio filed the present action on July 3, 2007, alleging that Gottlieb had removed Nacio's proprietary software and customer lists when he left the company, and that Gottlieb and SWIdent have been using that software in conjunction with, and for the benefit of, Nacio's competitors.

The complaint asserts seven causes of action – (1) copyright infringement, in violation of 17 U.S.C. §§ 101, et seq., against Gottlieb and SWIdent; (2) misappropriation of trade secrets, in violation of California Civil Code §§ 3426, et seq., against Gottlieb and SWIdent; (3) common law misappropriation, against Gottlieb and SWIdent; (4) breach of fiduciary duty and breach of the duty of loyalty, against Gottlieb; (5) unfair competition, in violation of California Business & Professions Code §§ 17200, et seq., against Gottlieb and SWIdent; (6) theft of corporate opportunity, against Gottlieb; and (7) conversion, against Gottlieb and SWIdent.

Defendants now seek an order staying the case and compelling arbitration of all claims.

## DISCUSSION

A.   Legal Standard

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA "creates a body of federal substantive law of arbitrability, enforceable in both state and federal courts and pre- empting any state laws or policies to the contrary." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Any party

bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration.  9 U.S.C. §§ 3, 4.  The FAA eliminates district court discretion and requires the court to compel arbitration of issues covered by the arbitration agreement.  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

The role of the federal courts in these circumstances is limited to determining whether the arbitration clause at issue is valid and enforceable under § 2 of the FAA.  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  Under § 4 of the FAA, the district court must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue.  9 U.S.C. § 4.  Therefore, the district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms.  Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720 (9th Cir. 1999).

Because of the strong federal policy favoring arbitration, see Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 81 (2000), doubts will be resolved against the party objecting to the arbitration "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  Moses H. Cone, 460 U.S. at 24.

B.  Defendants' Motion

Defendants seek an order staying the present action pending arbitration, and an order compelling arbitration.  They argue that two contracts entered into between the parties provide for arbitration between Nacio and Gottlieb.  The two contracts are the employment agreement and the purported consulting agreement.

Defendants contend that all the causes of action alleged in the complaint in the present action arise out of Gottlieb's former employment relationship, and then consultant relationship, with Nacio.  They assert in addition that the claims against SWIdent are also governed by the employment agreement, as the agreement specifies that it "shall be binding upon, and inure to the benefit of, the successors and personal representatives of the respective parties hereto," and SWIdent is Gottlieb's successor.  Thus, they contend, all

seven causes of action are subject to the arbitration clauses set forth in the agreements between the parties.

The first cause of action is for copyright infringement. Defendants argue that Gottlieb retained a UCC-1 security interest in the Attest assets (the GASP software), as part of the severance agreement that purported to resolve Gottlieb's constructive termination. Defendants contend that because the copyright ownership of the GASP software was a material aspect of the employment agreement between Nacio and Gottlieb, and because Nacio alleges that Gottlieb surreptitiously removed the GASP software from Nacio during his employment at Nacio, this cause of action is subject to the arbitration clauses in the employment agreement and the consulting agreement.

The second cause of action is for misappropriation of trade secrets, and the third cause of action is for common law misappropriation, based on the allegation that while Gottlieb was working at Nacio, he e-mailed himself a copy of Nacio's customer list, as well as a copy of his own company e-mails and e-mail addresses compiled at Nacio. Defendants contend that because these allegations arise out of Gottlieb's employment, and are alleged to have occurred during that employment, they are subject to the arbitration clauses in the employment agreement and the consulting agreement.

The fourth cause of action is for breach of fiduciary duty and breach of the duty of loyalty, based on Gottlieb's having allegedly misappropriated Nacio's trade secrets and having sought employment with a competitor, while still employed at Nacio. Defendants argue that these allegations are necessarily related to Gottlieb's employment and consulting relationships with Nacio, and are therefore subject to the arbitration clauses in the employment and consulting agreements.

The fifth cause of action is for unfair competition, under Business and Professions Code § 17200. Nacio alleges that "[t]he aforementioned acts of Gottlieb and SWIdent constitute fraudulent and unfair business practices" in violation of § 17200. Defendants argue that because the reference to the "aforementioned acts" can only be a reference to the first four causes of action, these allegations are also subject to the arbitration clauses in

8

the employment and consulting agreements.

The sixth cause of action is for theft of corporate opportunity, based on the allegation that Gottlieb has utilized and will continue to utilize "Nacio's misappropriated customer and product trade secret information in his employment with SWIdent" and another company, and on the allegation that he has sought and will continue to seek "to unfairly compete for the same business from the same customers of this new employer as he previously attempted to secure on behalf of Nacio." Defendants assert that because Gottlieb would not have had access to these corporate opportunities if he had not been in the employ of Nacio, these allegations fall within the arbitration provisions of the employment and consulting agreements.

The seventh cause of action is for conversion, based on the allegation that "by engaging in the acts described above, Gottlieb and SWIdent have wrongfully retained property belonging to Nacio." Defendants contend that the "acts described above" can only refer to the first through sixth causes of action, and that these allegations therefore fall within the arbitration provisions of the employment and consulting agreements.

Nacio opposes the motion, arguing that there is no valid written arbitration agreement that governs the parties' dispute. Nacio claims that the arbitration clause of the employment agreement "lapsed" when Gottlieb terminated that agreement by invoking the "constructive termination" provision.

In a related argument, Nacio contends that the arbitration award – which was based both on constructive termination and on breach of the severance agreement – collaterally estops defendants from using the employment agreement to compel arbitration because Gottlieb was awarded damages on both those theories. Nacio argues that defendants cannot now assert that the copyright infringement and trade secret violation claims alleged in the present action are subject to the arbitration clause of the 2005 employment agreement, after obtaining a judgment predicated on the fact that such employment was terminated.

Nacio contends that all the elements required for the application of collateral

9

estoppel are present here – that the termination of the employment agreement – either through constructive termination and leaving the job, or by agreement under the severance agreement – was necessarily adjudicated as the basis for the award by the arbitrator; that a final judgment was entered when the court affirmed the arbitrator's award; and that Gottlieb was the petitioner in the arbitration, and is the key defendant here.  Nacio argues that defendants cannot now relitigate that claim by arguing that the employment agreement continued in effect after Gottlieb left his job at Nacio.

Nacio contends that the judgment confirming the arbitration award collaterally estops a new adjudication on an issue that was actually litigated and determined by the arbitrator – the termination of the employment agreement by operation of a constructive termination and leaving of employment, or the termination of the employment agreement through agreement through the severance agreement.

As for the consulting agreement, Nacio argues that the arbitration clause never took effect because Nacio did not accept or sign the consulting agreement.  Nacio contends that the fact that it paid Gottlieb in the form of hourly fees for intermittent work, in the face of a direct rejection of Gottlieb's offer (the proposed consulting agreement) does not "resuscitate" the agreement for purposes of making the arbitration provision applicable here.

In reply, defendants note that it is undisputed that the employment agreement contains a valid arbitration agreement, which provides for arbitration of "any dispute or controversy arising out of, relating to, or in connection with" the employment agreement or "the interpretation, validity, construction, performance, breach, or termination thereof." Defendants argue that when there is no temporal limitation in an arbitration agreement, the parties may be forced to arbitrate despite the effective termination of the agreement giving rise to that duty.

Defendants note further that Nacio does not dispute that the alleged tortious acts took place during the period of Gottlieb's employment; and argue that the crux of Nacio's claims is the theory that Gottlieb abused information he obtained during the course and in

10

the scope of his employment. In addition, they assert that even if there are alleged to have been tortious acts that arose outside of the employment period, the arbitration clause is broad enough to cover such acts related to Gottlieb's employment at Nacio/Attest.

Defendants assert that because of the strong federal policy favoring arbitration, doubts will be resolved against the party objecting to the arbitration. They contend that every court that has construed the language "arising under" has interpreted the phrase broadly, and argue that in light of this strong presumption favoring arbitrability, the allegations in the complaint in the present action clearly arise out of, relate to, or result from Gottlieb's performance as an employee of Nacio.

Defendants argue that the severance agreement did not operate to terminate or supercede the employment agreement. They assert that while the severance agreement states that the "constructive termination" provision of the employment agreement was triggered by Nacio's actions vis-à-vis Gottlieb's work at Attest/Nacio, and while it does explicitly waive or relinquish certain benefits owed to Gottlieb under the employment agreement (e.g., award of stock, one-year severance) in exchange for consideration, it nowhere states that the employment agreement was actually <u>terminated</u>. Rather, they contend, the severance agreement presumes the continued existence of the employment agreement because in explicitly waiving certain of Gottlieb's rights, it implicitly reserves others.

Defendants also dispute Nacio's assertion that collateral estoppel applies to bar defendants' attempt to compel arbitration of Nacio's claims. They contend that in order for collateral estoppel to apply, the issue in the former case must have been identical to the issue in the present case, it must have actually been litigated in the first action, and it must have been essential to a final judgment in the first action. In addition, the person against whom estoppel is applied must have had a fair and full opportunity to litigate the issue in the first place.

Defendants contend that neither the arbitrator's decision nor the California Superior Court's confirmation of the arbitration award even raise the issue of whether the

11

employment agreement was terminated. Thus, they argue, there is no indication that the purported termination of the employment agreement has been fairly and fully litigated. They note that the arbitrator simply found that "the factual showing" in this case with respect to "failure to adhere to the employment agreement's principal terms by nonpayment of commissions and its consequent reduction in [Gottlieb's] earnings as well as the material changes in his responsibilities" constituted constructive termination as defined in the employment agreement.

With regard to the purported consulting agreement, defendants suggest that it is irrelevant that Nacio did not sign the agreement, claiming that Nacio "accepted the terms" of the consulting agreement and "ratified" it by paying Gottlieb the $1000 retainer provided for in the consulting agreement, and by paying Gottlieb's invoices for hourly work under the agreement. Defendants assert that Gottlieb has a good faith belief that the consulting agreement is operative, because Nacio consistently manifested agreement to the terms and existence of the agreement by its conduct.

Defendants add, however, that even if the purported consulting agreement is found to be not binding, the fact that the parties were negotiating another agreement with an arbitration provision is independent and persuasive evidence of a continuing relationship that "touched" matters in the employment agreement. They also contend that the "negotiation" of the consulting agreement is evidence of an implicit extension or renewal of the employment agreement's written agreement to arbitrate.

At the hearing on the motion, counsel for Nacio did not directly refer to the argument that arbitration of this dispute was "collaterally estopped" by the decision in the prior arbitration. Instead, he asserted that the conduct that forms the basis of the present action is not conduct that occurred while Gottlieb was employed at Nacio – with the exception of the allegation that Gottlieb e-mailed himself a copy of Nacio's customer list – but rather conduct that occurred after the employment relationship had been terminated by the severance agreement.

Thus, he asserted, the arbitration clause cannot apply to any conduct that post-

12

dates the termination of the employment relationship. He noted in addition that Gottlieb has already received an award in arbitration, based on the resolution of his rights under the employment agreement. As to the alleged e-mailing of the customer list, he asserted that the actionable conduct was not the actual e-mailing, but Gottlieb's subsequent alleged use of the customer information.

Nacio's counsel also argued that because SWIdent was not a party to the employment agreement, the LLC is not in any event eligible to seek to enforce the arbitration clause. He asserted that if SWIdent were found to be a successor to Gottlieb, then any "subsequent employer" would be considered a "successor."

The court finds that the motion must be GRANTED. The court agrees with defendants that the arbitration clause in the employment agreement is sufficiently broad to cover Nacio's claims in this action, as it applies to "any dispute or controversy arising out of, relating to, or in connection with" the employment agreement.

Courts that have construed the language "arising under" have interpreted the phrase broadly. See, e.g., AT&T Techs., Inc. v. Commc'n Workers of America, 475 U.S. 643, 650 (1986); Chiron Corp., 207 F.3d at 1131. The Supreme Court has indicated that to require arbitration, the allegations in a complaint need only "touch matters" covered by the arbitration clause. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 n.13 (1985). In light of this strong presumption favoring arbitrability, the court finds that the allegations in the complaint in the present action clearly arise out of, relate to, or result from Gottlieb's performance as an employee of Nacio.

The court does not agree with Nacio that arbitration cannot be compelled because of the application of collateral estoppel. In order for collateral estoppel to apply, (1) the issue sought to be precluded must be identical to an issue decided in the former proceeding; (2) the issue must have been actually litigated; (3) the issue must have been necessarily decided in the first proceeding; (4) the prior decision must have been final and on the merits; and (5) the party against whom preclusion is sought must be the same or in privity with a party to the former proceeding. Gikas v. Zolin, 6 Cal.4th 841, 849 (1993).

13

The effect of collateral estoppel, when it applies, is to preclude litigation of an issue in a second action because that issue has already been resolved in a first action. Here, Nacio is not saying that the present action shouldn't go forward – it is Nacio's own action, after all – just that it shouldn't go forward in the arbitral forum. Moreover, to the extent that the prior arbitration has any preclusive effect, that would be an argument for <u>defendants</u> to make to the arbitrator because it is a question of arbitrability. See <u>Chiron Corp.</u>, 207 F.3d at 1132 (res judicata objection based on prior arbitration proceeding is legal defense that is component of merits of dispute and must be considered by arbitrator, not court).

Nor does the court agree that the arbitration of the earlier claims somehow terminated the employment agreement and therefore "vacated" the arbitration provision. The employment <u>relationship</u> was constructively terminated because of Nacio's actions, and the arbitrator confirmed that in the decision and awarded Gottlieb damages. The purpose of the employment agreement was to set forth the terms of the employment relationship. Since the employment relationship no longer exists, the employment agreement is largely moot. Nevertheless, any claims arising out of or relating to the employment relationship that were not resolved in the previous arbitration are still required to be arbitrated, per the arbitration clause in the employment agreement.

The court does not, however, find that the purported consulting agreement imposes some requirement to arbitrate, as there is no evidence that the parties ever entered into that agreement. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>AT & T Techs.</u>, 475 U.S. at 648 (quotations and citations omitted). Accordingly, when the court receives a request to compel arbitration of a dispute, the threshold inquiry is whether the parties entered into a valid and enforceable written agreement to arbitrate. <u>Wagner v. Stratton Oakmont, Inc.</u>, 83 F.3d 1046, 1048 (9th Cir. 1996).

Here, the agreement was not signed, and regardless of whatever discussions may have occurred between Gottlieb and Goldenberg in connection with Nacio's retention of Gottlieb as a consultant, there is no evidence that the parties actually entered into the

14

agreement.  Thus, the arbitration clause in the purported consulting agreement is without effect.

As to the question whether SWIdent can be considered a party to the employment agreement, based on the provision that the agreement "shall be binding upon, and inure to the benefit of, the successors and personal representatives of the respective parties thereto," the court is unaware of any authority holding that a limited liability company <u>cannot</u> be a successor to an individual.  Gottlieb asserts in his declaration in support of the motion that SWIdent, LLC, "is owned, in part, by me," and is his successor.  Nacio, on the other hand, simply claims that SWIdent is simply Gottlieb's "employer."

Neither party has provided any additional evidence bearing on the question, or has cited any relevant legal authority.  In the absence of a showing by Nacio that SWIdent cannot be considered Gottlieb's successor, the court finds that defendants have sufficiently established that Gottlieb is a member (not an employee) of SWIdent, LLC, and that SWIdent is arguably Gottlieb's successor and is bound by the arbitration clause in the employment agreement.  Accordingly, the court finds that the arbitration must go forward as to the claims against SWIdent, in addition to the claims against Gottlieb.

## CONCLUSION

In accordance with the foregoing, the court GRANTS defendants' motion to stay the present action and compel arbitration.

**IT IS SO ORDERED.**

Dated:  October 26, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge